# EXHIBIT 3

WHEN RECORDED, RETURN TO: <br>WE CERTIFY THIS TO BE A TRUE AND CORRECT COPY OF THE ORIGINAL INSTRUMENT. FIDELITY NATIONAL TITLE

WHEN RECORDED, RETURN TO:

Val-Chris Investments Inc
2601 Main Street, Suite 400
Irvine, California 92614

Fidelity National GF# 9120016240036A

Loan No. ▮
Property ID No.: 4400-0000-0001-0▮0

---

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER**

### DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, FIXTURE FILING, AND SECURITY AGREEMENT

| | |
|---|---|
| Note Amount: | $330,000.00 |
| Property Address: | 3001 Kleinmann Avenue, Galveston, Texas 77551 |

THIS DOCUMENT CONSTITUTES A FIXTURE FILING IN ACCORDANCE WITH THE TEXAS UNIFORM COMMERCIAL CODE.

This Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement (the "Security Instrument" or "Deed of Trust") is made as of October 29, 2024, among Daniel P. Higgins, an unmarried man ("Borrower"), whose address is 2130 Winding Springs Drive, League City, Texas 77573; Val-Chris Investments Inc, a California corporation, as trustee ("Trustee") whose address is LENDER ADDRESS; and Val-Chris Investments Inc, a California corporation (CFL License No. 6035063), as beneficiary ("Lender"), whose address is 2601 Main Street, Suite 400, Irvine, California 92614.

**TRANSFER OF RIGHTS IN THE PROPERTY**

To secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations (as defined in this Security Instrument), Borrower GRANTS, BARGAINS, SELLS, AND CONVEYS to Trustee the Mortgaged Property, with power of sale and right of entry, subject only to the Permitted Encumbrances, to have and to hold the Mortgaged Property to Trustee, its successors in trust, and the Trustee's assigns forever, and Borrower does hereby bind itself, its successors, and its assigns to warrant and forever defend the title to the Mortgaged Property to Trustee against anyone lawfully claiming it or any part of it; provided, however, that if the Indebtedness is paid in full as and when it becomes due and payable and the Obligations are performed on or before the date they are to be performed and discharged, then the liens, security interests, estates, and rights granted by the Loan Documents shall terminate; otherwise, they shall remain in full force and effect. As additional security for the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Borrower grants to Lender a security interest in the Personalty, Fixtures, Leases, and Rents under Article Nine of the Uniform Commercial Code in effect in the state where the Mortgaged Property is located. Borrower further grants, bargains, conveys, assigns, transfers, and sets over to Trustee, acting as both a trustee and an agent for Lender under this Security Instrument, a security interest in and to all of Borrower's

---

1

© Lightning Docs™; All Rights Reserved.
Deed of Trust    Loan No. ▮

Borrower's Initials: ___

Val-Chris00150

right, title, and interest in, to, and under the Personalty, Fixtures, Leases, Rents, and Mortgaged Property (to the extent characterized as personal property) to secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations.

Borrower agrees to execute and deliver, from time to time, such further instruments, including, but not limited to, security agreements, assignments, and UCC financing statements, as may be requested by Lender to confirm the lien of this Security Instrument on any of the Mortgaged Property. Borrower further irrevocably grants, transfers, and assigns to Lender the Rents. This assignment of Rents is to be effective to create a present security interest in existing and future Rents of the Mortgaged Property.

TO MAINTAIN AND PROTECT THE SECURITY OF THIS SECURITY INSTRUMENT, TO SECURE THE FULL AND TIMELY PERFORMANCE BY BORROWER OF EACH AND EVERY OBLIGATION, COVENANT, AND AGREEMENT OF BORROWER UNDER THE LOAN DOCUMENTS, AND AS ADDITIONAL CONSIDERATION FOR THE INDEBTEDNESS AND OBLIGATIONS EVIDENCED BY THE LOAN DOCUMENTS, BORROWER HEREBY COVENANTS, REPRESENTS, AND AGREES AS FOLLOWS:

## DEFINITIONS.

1.  **Definitions.** For purposes of this Security Instrument, each of the following terms shall have the following respective meanings:

1.1  "**Attorneys' Fees.**" Any and all attorney fees (including the allocated cost of in-house counsel), paralegal, and law clerk fees, including, without limitation, fees for advice, negotiation, consultation, arbitration, and litigation at the pretrial, trial, and appellate levels, and in any bankruptcy proceedings, and attorney costs and expenses incurred or paid by Lender in protecting its interests in the Mortgaged Property, including, but not limited to, any action for waste, and enforcing its rights under this Security Instrument.

1.2  "**Borrower.**"

    1.2.1. The named Borrower in this Security Instrument;

    1.2.2. The obligor under the Note, whether or not named as Borrower in this Security Instrument; and

    1.2.3. Subject to any limitations of assignment as provided for in the Loan Documents, the heirs, legatees, devisees, administrators, executors, successors in interest to the Mortgaged Property, and the assigns of any such Person.

All references to Borrower in the remainder of the Loan Documents shall mean the obligor under the Note.

1.3  "**Event of Default.**" An Event of Default as defined in the Loan Agreement.

1.4  "**Fixtures.**" All right, title, and interest of Borrower in and to all materials, supplies, equipment, apparatus, and other items now or later attached to, installed on or in the Land or the Improvements, or that in some fashion are deemed to be fixtures to the Land or Improvements under the laws of the state where the Mortgaged Property is located, including the Uniform Commercial Code. "Fixtures" includes, without limitation, all items of Personalty to the extent that they may be deemed Fixtures under Governmental Requirements.

1.5  "**Governmental Authority.**" Any and all courts, boards, agencies, commissions, offices, or authorities of any nature whatsoever for any governmental unit (federal, state, county, district, municipal, city, or otherwise) whether now or later in existence.

1.6  "**Governmental Requirements.**" Any and all laws, statutes, codes, ordinances, regulations, enactments, decrees, judgments, and orders of any Governmental Authority.

1.7  "**Impositions.**" All real estate and personal property taxes, water, gas, sewer, electricity, and other utility rates and charges; charges imposed under any subdivision, planned unit development, or condominium declaration or restrictions; charges for any easement, license, or agreement maintained for the benefit of the Mortgaged Property, and all other taxes, charges, and assessments and any interest, costs,

---

2

© Lightning Docs™; All Rights Reserved.
Deed of Trust    Loan No ▮▮▮

Borrower's Initials: _____

Val-Chris00151

or penalties of any kind and nature that at any time before or after the execution of this Security Instrument may be assessed, levied, or imposed on the Mortgaged Property or on its ownership, use, occupancy, or enjoyment.

1.8 "Improvements." Any and all buildings, structures, improvements, fixtures, and appurtenances now and later placed on the Mortgaged Property, including, without limitation, all apparatus and equipment, whether or not physically affixed to the land or any building, which is used to provide or supply air cooling, air conditioning, heat, gas, water, light, power, refrigeration, ventilation, laundry, drying, dish washing, garbage disposal, or other services; and all elevators, escalators, and related machinery and equipment, fire prevention and extinguishing apparatus, security and access control apparatus, partitions, ducts, compressors, plumbing, ovens, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains, curtain rods, mirrors, cabinets, paneling, rugs, attached floor coverings, furniture, pictures, antennas, pools, spas, pool and spa operation and maintenance equipment and apparatus, and trees and plants located on the Mortgaged Property, all of which, including replacements and additions, shall conclusively be deemed to be affixed to and be part of the Mortgaged Property conveyed to Trustee under this Security Instrument.

1.9 "Indebtedness." The principal of, interest on, and all other amounts and payments due under or evidenced by the following:

1.9.1. The Note (including, without limitation, any prepayment premium, late payment, and other charges payable under the Note);

1.9.2. The Loan Agreement;

1.9.3. This Security Instrument and all other Loan Documents;

1.9.4. All funds later advanced by Lender to or for the benefit of Borrower under any provision of any of the Loan Documents;

1.9.5. Any future loans or amounts advanced by Lender to Borrower when evidenced by a written instrument or document that specifically recites that the Obligations evidenced by such document are secured by the terms of this Security Instrument, including, but not limited to, funds advanced to protect the security or priority of the Security Instrument; and

1.9.6. Any amendment, modification, extension, rearrangement, restatement, renewal, substitution, or replacement of any of the foregoing.

1.10 "Land." The real estate or any interest in it described in Exhibit "A" attached to this Security Instrument and made a part of it, together with all Improvements and Fixtures and all rights, titles, and interests appurtenant to it.

1.11 "Leases." Any and all leases, subleases, licenses, concessions, or other agreements (written or verbal, now or later in effect) that grant a possessory interest in and to, or the right to extract, mine, reside in, sell, or use the Mortgaged Property, and all other agreements, including, but not limited to, utility contracts, maintenance agreements, and service contracts that in any way relate to the use, occupancy, operation, maintenance, enjoyment, or ownership of the Mortgaged Property, except any and all leases, subleases, or other agreements under which Borrower is granted a possessory interest in the Land.

1.12 "Lender." The named Lender in this Security Instrument and the owner and holder (including a pledgee) of any Note, Indebtedness, or Obligations secured by this Security Instrument, whether or not named as Lender in this Security Instrument, and the heirs, legatees, devisees, administrators, executors, successors, and assigns of any such Person.

1.13 "Loan." The extension of credit made by Lender to Borrower under the terms of the Loan Documents.

1.14 "Loan Agreement." The Loan and Security Agreement given by Borrower evidencing the Loan, in such form as is acceptable to Lender, together with any and all rearrangements, extensions, renewals, substitutions, replacements, modifications, restatements, and amendments thereto.

1.15 "Loan Documents." Collectively, this Security Instrument, the Note, and all other instruments and agreements required to be executed by Borrower or any guarantor in connection with the Loan. Notwithstanding the foregoing, when used in the definitions of Indebtedness and Obligations, and

© Lightning Docs™; All Rights Reserved.
Deed of Trust     Loan No. █████     Borrower's Initials: _____

Val-Chris00152

in relation to the discussion of the Obligations and Indebtedness that are secured by this Security Instrument, the term "Loan Documents" specifically excludes any Guaranty and the Environmental Indemnity Agreement dated the date of this Security Instrument, executed by Borrower and/or any guarantor of the Loan, each of which are not secured by this Security Instrument.

    **1.16** "**Mortgaged Property**." The Land, Improvements, Fixtures, Personalty, Leases, and Rents that is described as follows:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF,

commonly known as:     **3001 Kleinmann Avenue, Galveston, Texas 77551**
                        **Property ID No.: 4400-0000-0001-000**

together with:

    1.16.1. All right, title, and interest (including any claim or demand or demand in law or equity) that Borrower now has or may later acquire in or to such Mortgaged Property; all easements, rights, privileges, tenements, hereditaments, and appurtenances belonging or in any way appertaining to the Mortgaged Property; all of the estate, right, title, interest, claim, demand, reversion, or remainder of Borrower in or to the Mortgaged Property, either at law or in equity, in possession or expectancy, now or later acquired; all crops growing or to be grown on the Mortgaged Property; all development rights or credits and air rights; all water and water rights (whether or not appurtenant to the Mortgaged Property) and shares of stock pertaining to such water or water rights, ownership of which affects the Mortgaged Property; all minerals, oil, gas, and other hydrocarbon substances and rights thereto in, on, under, or upon the Mortgaged Property and all royalties and profits from any such rights or shares of stock; all right, title, and interest of Borrower in and to any streets, ways, alleys, strips, or gores of land adjoining the Land or any part of it that Borrower now owns or at any time later acquires and all adjacent lands within enclosures or occupied by buildings partly situated on the Mortgaged Property;

    1.16.2. All intangible Mortgaged Property and rights relating to the Mortgaged Property or its operation or used in connection with it, including, without limitation, permits, licenses, plans, specifications, construction contracts, subcontracts, bids, deposits for utility services, installations, refunds due Borrower, trade names, trademarks, and service marks;

    1.16.3. All of the right, title, and interest of Borrower in and to the land lying in the bed of any street, road, highway, or avenue in front of or adjoining the Land;

    1.16.4. Any and all awards previously made or later to be made by any Governmental Authority to the present and all subsequent owners of the Mortgaged Property that may be made with respect to the Mortgaged Property as a result of the exercise of the right of eminent domain, the alteration of the grade of any street, or any other injury to or decrease of value of the Mortgaged Property, which award or awards are assigned to Lender and Lender, at its option, is authorized, directed, and empowered to collect and receive the proceeds of any such award or awards from the authorities making them and to give proper receipts and acquittances for them;

    1.16.5. All certificates of deposit of Borrower in Lender's possession and all bank accounts of Borrower with Lender and their proceeds, and all deposits of Borrower with any Governmental Authority and/or public utility company that relate to the ownership of the Mortgaged Property;

    1.16.6. All Leases of the Mortgaged Property or any part of it now or later entered into and all right, title, and interest of Borrower under such Leases, including cash or securities deposited by the tenants to secure performance of their obligations under such Leases (whether such cash or securities are to be held until the expiration of the terms of such Leases or applied to one or more of the installments of rent coming due immediately before the expiration of such terms), all rights to all insurance proceeds and unearned insurance premiums arising from or relating to the Mortgaged Property, all other rights and easements of Borrower now or later existing pertaining to the use and enjoyment of the Mortgaged Property,

---

4

© Lightning Docs™; All Rights Reserved.
Deed of Trust     Loan No. ▮▮▮

Borrower's Initials:  

Val-Chris00153
Val-Chris00153

and all right, title, and interest of Borrower in and to all declarations of covenants, conditions, and restrictions as may affect or otherwise relate to the Mortgaged Property;

1.16.7. Any and all proceeds of any insurance policies covering the Mortgaged Property, whether or not such insurance policies were required by Lender as a condition of making the Loan secured by this Security Instrument or are required to be maintained by Borrower as provided below in this Security Instrument; which proceeds are assigned to Lender, and Lender, at its option, is authorized, directed, and empowered to collect and receive the proceeds of such insurance policies from the insurers issuing the same and to give proper receipts and acquittances for such policies, and to apply the same as provided below;

1.16.8. If the Mortgaged Property includes a leasehold estate, all of Borrower's right, title, and interest in and to the lease, more particularly described in Exhibit "A" attached to this Security Instrument (the "Leasehold") including, without limitation, the right to surrender, terminate, cancel, waive, change, supplement, grant subleases of, alter, or amend the Leasehold;

1.16.9. All plans and specifications for the Improvements; all contracts and subcontracts relating to the Improvements; all deposits (including tenants' security deposits; provided, however, that if Lender acquires possession or control of tenants' security deposits Lender shall use the tenants' security deposits only for such purposes as Governmental Requirements permit), funds, accounts, contract rights, instruments, documents, general intangibles, and notes or chattel paper arising from or in connection with the Mortgaged Property; all permits, licenses, certificates, and other rights and privileges obtained in connection with the Mortgaged Property; all soils reports, engineering reports, land planning maps, drawings, construction contracts, notes, drafts, documents, engineering and architectural drawings, letters of credit, bonds, surety bonds, any other intangible rights relating to the Land and Improvements, surveys, and other reports, exhibits, or plans used or to be used in connection with the construction, planning, operation, or maintenance of the Land and Improvements and all amendments and modifications; all proceeds arising from or by virtue of the sale, lease, grant of option, or other disposition of all or any part of the Mortgaged Property (consent to same is not granted or implied); and all proceeds (including premium refunds) payable or to be payable under each insurance policy relating to the Mortgaged Property;

1.16.10. All trade names, trademarks, symbols, service marks, and goodwill associated with the Mortgaged Property and any and all state and federal applications and registrations now or later used in connection with the use or operation of the Mortgaged Property;

1.16.11. All tax refunds, bills, notes, inventories, accounts and charges receivable, credits, claims, securities, and documents of all kinds, and all instruments, contract rights, general intangibles, bonds and deposits, and all proceeds and products of the Mortgaged Property;

1.16.12. All money or other personal property of Borrower (including, without limitation, any instrument, deposit account, general intangible, or chattel paper, as defined in the Uniform Commercial Code) previously or later delivered to, deposited with, or that otherwise comes into Lender's possession;

1.16.13. All accounts, contract rights, chattel paper, documents, instruments, books, records, claims against third parties, money, securities, drafts, notes, proceeds, and other items relating to the Mortgaged Property;

1.16.14. All construction, supply, engineering, and architectural contracts executed and to be executed by Borrower for the construction of the Improvements; and

1.16.15. All proceeds of any of the foregoing.

As used in this Security Instrument, "Mortgaged Property" is expressly defined as meaning all or, when the context permits or requires, any portion of it and all or, when the context permits or requires, any interest in it.

1.17 "Note." The Secured Note payable by Borrower to the order of Lender in the principal amount of **Three Hundred Thirty Thousand and 00/100 Dollars ($330,000.00), which matures on November 1, 2025,** evidencing the Loan, in such form as is acceptable to Lender, together with any and all rearrangements, extensions, renewals, substitutions, replacements, modifications, restatements, and amendments to the Secured Note.

5

© Lightning Docs™; All Rights Reserved.
Deed of Trust        Loan No. ▮▮▮

Borrower's Initials:

Val-Chris00154

**1.18** "**Obligations.**" Any and all of the covenants, warranties, representations, and other obligations (other than to repay the Indebtedness) made or undertaken by Borrower to Lender or Trustee as set forth in the Loan Documents; any lease, sublease, or other agreement under which Borrower is granted a possessory interest in the Land; each obligation, covenant, and agreement of Borrower in the Loan Documents or in any other document executed by Borrower in connection with the loan(s) secured by this Security Instrument whether set forth in or incorporated into the Loan Documents by reference; each and every monetary provision of all covenants, conditions, and restrictions, if any, pertaining to the Mortgaged Property and on Lender's written request, the enforcement by Borrower of any covenant by third parties to pay maintenance or other charges, if they have not been paid, or valid legal steps taken to enforce such payment within 90 days after such written request is made; if the Mortgaged Property consists of or includes a leasehold estate, each obligation, covenant, and agreement of Borrower arising under, or contained in, the instrument(s) creating any such leasehold; all agreements of Borrower to pay fees and charges to Lender whether or not set forth in this Security Instrument; and charges, as allowed by law, when they are made for any statement regarding the obligations secured by this Security Instrument.

The Obligations specifically exclude any Guaranty and the Environmental Indemnity Agreement dated the date of this Security Instrument, executed by Borrower and/or any guarantor of the Loan, which is not secured by this Security Instrument.

**1.19** "**Permitted Encumbrances.**" At any particular time, (a) liens for taxes, assessments, or governmental charges not then due and payable or not then delinquent; (b) liens, easements, encumbrances, and restrictions on the Mortgaged Property that are allowed by Lender to appear in a TLTA title policy to be issued to Lender following recordation of the Security Instrument; and (c) liens in favor of or consented to in writing by Lender.

**1.20** "**Person.**" Natural persons, corporations, partnerships, unincorporated associations, joint ventures, and any other form of legal entity.

**1.21** "**Personalty.**" All of the right, title, and interest of Borrower in and to all tangible and intangible personal property, whether now owned or later acquired by Borrower, including, but not limited to, water rights (to the extent they may constitute personal property), all equipment, inventory, goods, consumer goods, accounts, chattel paper, instruments, money, general intangibles, letter-of-credit rights, deposit accounts, investment property, documents, minerals, crops, and timber (as those terms are defined in the Uniform Commercial Code) and that are now or at any later time located on, attached to, installed, placed, used on, in connection with, or are required for such attachment, installation, placement, or use on the Land, the Improvements, Fixtures, or on other goods located on the Land or Improvements, together with all additions, accessions, accessories, amendments, modifications to the Land or Improvements, extensions, renewals, and enlargements and proceeds of the Land or Improvements, substitutions for, and income and profits from, the Land or Improvements. The Personalty includes, but is not limited to, all goods, machinery, tools, equipment (including fire sprinklers and alarm systems); building materials, air conditioning, heating, refrigerating, electronic monitoring, entertainment, recreational, maintenance, extermination of vermin or insects, dust removal, refuse and garbage equipment; vehicle maintenance and repair equipment; office furniture (including tables, chairs, planters, desks, sofas, shelves, lockers, and cabinets); safes, furnishings, appliances (including ice-making machines, refrigerators, fans, water heaters, and incinerators); rugs, carpets, other floor coverings, draperies, drapery rods and brackets, awnings, window shades, venetian blinds, curtains, other window coverings; lamps, chandeliers, other lighting fixtures; office maintenance and other supplies; loan commitments, financing arrangements, bonds, construction contracts, leases, tenants' security deposits, licenses, permits, sales contracts, option contracts, lease contracts, insurance policies, proceeds from policies, plans, specifications, surveys, books, records, funds, bank deposits; and all other intangible personal property. Personalty also includes any other portion or items of the Mortgaged Property that constitute personal property under the Uniform Commercial Code.

**1.22** "**Rents.**" All rents, issues, revenues, income, proceeds, royalties, profits, license fees, prepaid municipal and utility fees, bonds, and other benefits to which Borrower or the record title owner of the Mortgaged Property may now or later be entitled from or which are derived from the Mortgaged

---

6

© Lightning Docs™; All Rights Reserved.
Deed of Trust       Loan No. ███

Borrower's Initials:

Val-Chris00155

Property, including, without limitation, sale proceeds of the Mortgaged Property; any room or space sales or rentals from the Mortgaged Property; and other benefits paid or payable for using, leasing, licensing, possessing, operating from or in, residing in, selling, mining, extracting, or otherwise enjoying or using the Mortgaged Property.

    **1.23** "**Uniform Commercial Code.**" The uniform commercial code as found in the statutes of the state in which the Mortgaged Property is located.

    **1.24** "**Water Rights.**" All water rights of whatever kind or character, surface or underground, appropriative, decreed, or vested, that are appurtenant to the Mortgaged Property or otherwise used or useful in connection with the intended development of the Mortgaged Property.

    Any terms not otherwise defined in this Security Instrument shall have the meaning given them in the Loan Agreement and Note, dated of even date herewith between Borrower and Lender.

## UNIFORM COVENANTS

**2.**     **Repair and Maintenance of Mortgaged Property.** Borrower shall (a) keep the Mortgaged Property in good condition and repair; (b) not substantially alter, remove, or demolish the Mortgaged Property or any of the Improvements except when incident to the replacement of Fixtures, equipment, machinery, or appliances with items of like kind; (c) restore and repair to the equivalent of its original condition all or any part of the Mortgaged Property that may be damaged or destroyed, including, but not limited to, damage from termites and dry rot, soil subsidence, and construction defects, whether or not insurance proceeds are available to cover any part of the cost of such restoration and repair, and regardless of whether Lender permits the use of any insurance proceeds to be used for restoration under this Security Instrument; (d) pay when due all claims for labor performed, services performed, equipment provided and materials furnished in connection with the Mortgaged Property and not permit any mechanics' or materialman's lien to arise against the Mortgaged Property or furnish a loss or liability bond against such mechanics' or materialman's lien claims; (e) comply with all laws affecting the Mortgaged Property or requiring that any alterations, repairs, replacements, or improvements be made on it; (f) not commit or permit waste on or to the Mortgaged Property, or commit, suffer, or permit any act or violation of law to occur on it; (g) not abandon the Mortgaged Property; (h) cultivate, irrigate, fertilize, fumigate, and prune in accordance with prudent agricultural practices; (i) if required by Lender, provide for management satisfactory to Lender under a management contract approved by Lender; (j) notify Lender in writing of any condition at or on the Mortgaged Property that may have a significant and measurable effect on its market value; (k) if the Mortgaged Property is rental property, generally operate and maintain it in such manner as to realize its maximum rental potential; and (l) do all other things that the character or use of the Mortgaged Property may reasonably render necessary to maintain it in the same condition (reasonable wear and tear expected) as existed at the date of this Security Instrument.

**3.**     **Use of Mortgaged Property.** Unless otherwise required by Governmental Requirements or unless Lender otherwise provides prior written consent, Borrower shall not change, nor allow changes in, the use of the Mortgaged Property from the current use of the Mortgaged Property as of the date of this Security Instrument. Borrower shall not initiate or acquiesce in a change in the zoning classification of the Mortgaged Property without Lender's prior written consent.

**4.**     **Condemnation and Insurance Proceeds.**

    **4.1**     **Assignment to Lender.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of or damage or injury to the Mortgaged Property, or any part of it, or for conveyance in lieu of condemnation, are assigned to and shall be paid to Lender, regardless of whether Lender's security is impaired. All causes of action, whether accrued before or after the date of this Security Instrument, of all types for damages or injury to the Mortgaged Property or any part of it, or in connection with any transaction financed by funds lent to Borrower by Lender and secured by this Security Instrument, or in connection with or affecting the Mortgaged Property or any part of it, including, without limitation, causes of action arising in tort or contract

---

7

© Lightning Docs™; All Rights Reserved.
Deed of Trust     Loan No ▮▮▮▮

Borrower's Initials: _____

Val-Chris00156

or in equity, are assigned to Lender as additional security, and the proceeds shall be paid to Lender. Lender, at its option, may appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement of such action. Borrower shall notify Lender in writing immediately on obtaining knowledge of any casualty damage to the Mortgaged Property or damage in any other manner in excess of $2,000.00 or knowledge of the institution of any proceeding relating to condemnation or other taking of or damage or injury to all or any portion of the Mortgaged Property. Lender, in its sole and absolute discretion, may participate in any such proceedings and may join Borrower in adjusting any loss covered by insurance. Borrower covenants and agrees with Lender, at Lender's request, to make, execute, and deliver, at Borrower's expense, any and all assignments and other instruments sufficient for the purpose of assigning the aforesaid award or awards, causes of action, or claims of damages or proceeds to Lender free, clear, and discharged of any and all encumbrances of any kind or nature.

   4.2     **Insurance Payments.** All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments that Borrower may receive or to which Lender may become entitled with respect to the Mortgaged Property if any damage or injury occurs to the Mortgaged Property, other than by a partial condemnation or other partial taking of the Mortgaged Property, shall be paid over to Lender and shall be applied first toward reimbursement of all costs and expenses of Lender in connection with their recovery and disbursement, and shall then be applied as follows:

   4.2.1.   Lender shall consent to the application of such payments to the restoration of the Mortgaged Property so damaged only if Borrower has met all the following conditions (a breach of any one of which shall constitute a default under this Security Instrument, the Loan Agreement, the Note, and any other Loan Documents): (a) Borrower is not in default under any of the terms, covenants, and conditions of the Loan Documents; (b) all then-existing Leases affected in any way by such damage will continue in full force and effect; (c) Lender is satisfied that the insurance or award proceeds, plus any sums added by Borrower, shall be sufficient to fully restore and rebuild the Mortgaged Property under then current Governmental Requirements; (d) within 60 days after the damage to the Mortgaged Property, Borrower presents to Lender a restoration plan satisfactory to Lender and any local planning department, which includes cost estimates and schedules; (e) construction and completion of restoration and rebuilding of the Mortgaged Property shall be completed in accordance with plans and specifications and drawings submitted to Lender within 30 days after receipt by Lender of the restoration plan and thereafter approved by Lender, which plans, specifications, and drawings shall not be substantially modified, changed, or revised without Lender's prior written consent; (f) within 3 months after such damage, Borrower and a licensed contractor satisfactory to Lender enter into a fixed price or guaranteed maximum price contract satisfactory to Lender, providing for complete restoration in accordance with such restoration plan for an amount not to exceed the amount of funds held or to be held by Lender; (g) all restoration of the Improvements so damaged or destroyed shall be made with reasonable promptness and shall be of a value at least equal to the value of the Improvements so damaged or destroyed before such damage or destruction; (h) Lender reasonably determines that there is an identified source (whether from income from the Mortgaged Property, rental loss insurance, or another source) sufficient to pay all debt service and operating expenses of the Mortgaged Property during its restoration as required above; and (i) any and all funds that are made available for restoration and rebuilding under this Section shall be disbursed, at Lender's sole and absolute discretion to Lender, through Lender, the Trustee, or a title insurance or trust company satisfactory to Lender, in accordance with standard construction lending practices, including a reasonable fee payable to Lender from such funds and, if Lender requests, mechanics' lien waivers and title insurance date-downs, and the provision of payment and performance bonds by Borrower, or in any other manner approved by Lender in Lender's sole and absolute discretion; or

   4.2.2.   If fewer than all conditions (a) through (i) above are satisfied, then such payments shall be applied in the sole and absolute discretion of Lender (a) to the payment or prepayment, with any applicable prepayment premium, of any Indebtedness secured by this Security Instrument in such order as Lender may determine, or (b) to the reimbursement of Borrower's expenses incurred in the rebuilding and

8

© Lightning Docs™; All Rights Reserved.
Deed of Trust     Loan No. ██████

Borrower's Initials: _____

Val-Chris00157

restoration of the Mortgaged Property. If Lender elects under this Section to make any funds available to restore the Mortgaged Property, then all of conditions (a) through (i) above shall apply, except for such conditions that Lender, in its sole and absolute discretion, may waive.

4.3 **Material Loss Not Covered**. If any material part of the Mortgaged Property is damaged or destroyed and the loss, measured by the replacement cost of the Improvements according to then current Governmental Requirements, is not adequately covered by insurance proceeds collected or in the process of collection, Borrower shall deposit with Lender, within 30 days after Lender's request, the amount of the loss not so covered.

4.4 **Total Condemnation Payments**. All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments that Borrower may receive or to which Borrower may become entitled with respect to the Mortgaged Property in the event of a total condemnation or other total taking of the Mortgaged Property shall be paid over to Lender and shall be applied first to reimbursement of all Lender's costs and expenses in connection with their recovery, and shall then be applied to the payment of any Indebtedness secured by this Security Instrument in such order as Lender may determine, until the Indebtedness secured by this Security Instrument has been paid and satisfied in full. Any surplus remaining after payment and satisfaction of the Indebtedness secured by this Security Instrument shall be paid to Borrower as its interest may then appear.

4.5 **Partial Condemnation Payments**. All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments ("Awarded Funds") that Borrower may receive or to which Borrower may become entitled with respect to the Mortgaged Property in the event of a partial condemnation or other partial taking of the Mortgaged Property, unless Borrower and Lender otherwise agree in writing, shall be divided into two portions, one equal to the principal balance of the Note at the time of receipt of such Awarded Funds and the other equal to the amount by which such Awarded Funds exceed the principal balance of the Note at the time of receipt of such Awarded Funds. The first such portion shall be applied to the sums secured by this Security Instrument, whether or not then due, including but not limited to principal, accrued interest, and advances, and in such order or combination as Lender may determine, with the balance of the funds paid to Borrower.

4.6 **Cure of Waiver of Default**. Any application of such Awarded Funds or any portion of it to any Indebtedness secured by this Security Instrument shall not be construed to cure or waive any default or notice of default under this Security Instrument or invalidate any act done under any such default or notice.

5. **Taxes and Other Sums Due**. Borrower shall promptly pay, satisfy, and discharge: (a) all Impositions affecting the Mortgaged Property before they become delinquent; (b) such other amounts, chargeable against Borrower or the Mortgaged Property, as Lender reasonably deems necessary to protect and preserve the Mortgaged Property, this Security Instrument, or Lender's security for the performance of the Obligations; (c) all encumbrances, charges, and liens on the Mortgaged Property, with interest, which in Lender's judgment are, or appear to be, prior or superior to the lien of this Security Instrument or all costs necessary to obtain protection against such lien or charge by title insurance endorsement or surety company bond; (d) such other charges as Lender deems reasonable for services rendered by Lender at Borrower's request; and (e) all costs, fees, and expenses incurred by Lender in connection with this Security Instrument, whether or not specified in this Security Instrument.

On Lender's request, Borrower shall promptly furnish Lender with all notices of sums due for any amounts specified in the preceding clauses 5(a) through (e), and, on payment, with written evidence of such payment. If Borrower fails to promptly make any payment required under this Section, Lender may (but is not obligated to) make such payment. Borrower shall notify Lender immediately on receipt by Borrower of notice of any increase in the assessed value of the Mortgaged Property and agrees that Lender, in Borrower's name, may (but is not obligated to) contest by appropriate proceedings such increase in assessment. Without Lender's prior written consent, Borrower shall not allow any lien inferior to the lien of this Security Instrument to be perfected against the Mortgaged Property and shall not permit any improvement bond for any unpaid special assessment to issue.

9

© Lightning Docs™; All Rights Reserved.
Deed of Trust      Loan No. ▉      Borrower's Initials:

Val-Chris00158

6. **Leases of Mortgaged Property by Borrower.** At Lender's request, Borrower shall furnish Lender with executed copies of all Leases of the Mortgaged Property or any portion of it then in force. If Lender so requires, all Leases later entered into by Borrower are subject to Lender's prior review and approval and must be acceptable to Lender in form and content. Each Lease must specifically provide, inter alia, that (a) it is subordinate to the lien of this Security Instrument; (b) the tenant attorns to Lender (and Borrower consents to any such attornment), such attornment to be effective on Lender's acquisition of title to the Mortgaged Property; (c) the tenant agrees to execute such further evidence of attornment as Lender may from time to time request; (d) the tenant's attornment shall not be terminated by foreclosure; and (e) Lender, at Lender's option, may accept or reject such attornment. If Borrower learns that any tenant proposes to do, or is doing, any act that may give rise to any right of setoff against Rent, Borrower shall immediately (i) take measures reasonably calculated to prevent the accrual of any such right of setoff; (ii) notify Lender of all measures so taken and of the amount of any setoff claimed by any such tenant; and (iii) within 10 days after the accrual of any right of setoff against Rent, reimburse any tenant who has acquired such right, in full, or take other measures that will effectively discharge such setoff and ensure that rents subsequently due shall continue to be payable without claim of setoff or deduction.

At Lender's request, Borrower shall assign to Lender, by written instrument satisfactory to Lender, all Leases of the Mortgaged Property, and all security deposits made by tenants in connection with such Leases. On assignment to Lender of any such Lease, Lender shall succeed to all rights and powers of Borrower with respect to such Lease, and Lender, in Lender's sole and absolute discretion, shall have the right to modify, extend, or terminate such Lease and to execute other further leases with respect to the Mortgaged Property that is the subject of such assigned Lease.

Neither Borrower, tenant nor any other occupant of the Mortgaged Property shall use the Mortgaged Property, except in compliance with all applicable federal, state, and local laws, ordinances, rules and regulations; nor shall Borrower, tenant or any other occupant cause the Mortgaged Property to become subject to any use that is not in compliance with all applicable federal, state, and local laws, ordinances, rules and regulations.

If Borrower suspects any tenant or other occupant of the Mortgaged Property is using the Mortgaged Property in a manner that is not in compliance with any Governmental Requirement to which Borrower, tenant, or any other occupant of the Mortgaged Property is subject, Borrower shall immediately take appropriate action to remedy the violation, and shall notify Lender of any potential violation within one (1) day of discovery of any such potential violation. Any potential violation by a tenant or any other occupant of the Mortgaged Property of any Governmental Requirement is an Event of Default under the terms of the Loan Agreement, the Note and this Security Instrument; and upon the occurrence of any such violation, Lender, at Lender's option, may, without prior notice, declare all sums secured by this Security Instrument, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in the Loan Documents.

7. **Right to Collect and Receive Rents.** Despite any other provision of this Security Instrument, Lender grants permission to Borrower to collect and retain the Rents of the Mortgaged Property as they become due and payable; however, such permission to Borrower shall be automatically revoked on default by Borrower in payment of any Indebtedness secured by this Security Instrument or in the performance of any of the Obligations, and Lender shall have the rights set forth in the laws and regulations where the Mortgaged Property is located regardless of whether declaration of default has been delivered, and without regard to the adequacy of the security for the Indebtedness secured by this Security Instrument. Failure of or discontinuance by Lender at any time, or from time to time, to collect any such Rents shall not in any manner affect the subsequent enforcement by Lender at any time, or from time to time, of the right, power, and authority to collect these Rents. The receipt and application by Lender of all such Rents under this Security Instrument, after execution and delivery of declaration of default and demand for sale as provided in this Security Instrument or during the pendency of trustee's sale proceedings under this Security Instrument or judicial foreclosure, shall neither cure such breach or default nor affect such sale proceedings, or any sale made under them, but such Rents, less all costs of operation, maintenance, collection, and

---

10

© Lightning Docs™; All Rights Reserved.
Deed of Trust    Loan No. ▮▮▮

Borrower's Initials: _CB_

Val-Chris00159

Attorneys' Fees, when received by Lender, may be applied in reduction of the entire Indebtedness from time to time secured by this Security Instrument, in such order as Lender may decide. Nothing in this Security Instrument, nor the exercise of Lender's right to collect, nor an assumption by Lender of any tenancy, lease, or option, nor an assumption of liability under, nor a subordination of the lien or charge of this Security Instrument to, any such tenancy, lease, or option, shall be, or be construed to be, an affirmation by Lender of any tenancy, lease, or option.

If the Rents of the Mortgaged Property are not sufficient to meet the costs, if any, of taking control of and managing the Mortgaged Property and collecting the Rents, any funds expended by Lender for such purposes shall become an Indebtedness of Borrower to Lender secured by this Security Instrument. Unless Lender and Borrower agree in writing to other terms of payment, such amounts shall be payable on notice from Lender to Borrower requesting such payment and shall bear interest from the date of disbursement at the rate stated in the Note unless payment of interest at such rate would be contrary to Governmental Requirements, in which event the amounts shall bear interest at the highest rate that may be collected from Borrower under Governmental Requirements.

Borrower expressly understands and agrees that Lender will have no liability to Borrower or any other person for Lender's failure or inability to collect Rents from the Mortgaged Property or for failing to collect such Rents in an amount that is equal to the fair market rental value of the Mortgaged Property. Borrower understands and agrees that neither the assignment of Rents to Lender nor the exercise by Lender of any of its rights or remedies under this Security Instrument shall be deemed to make Lender a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Mortgaged Property or the use, occupancy, enjoyment, or operation of all or any portion of it, unless and until Lender, in person or by agent, assumes actual possession of it. Nor shall appointment of a receiver for the Mortgaged Property by any court at the request of Lender or by agreement with Borrower, or the entering into possession of the Mortgaged Property or any part of it by such receiver be deemed to make Lender a mortgagee-in-possession or otherwise responsible or liable in any manner with respect to the Mortgaged Property or the use, occupancy, enjoyment, or operation of all or any portion of it.

During an Event of Default, any and all Rents collected or received by Borrower shall be accepted and held for Lender in trust and shall not be commingled with Borrower's funds and property, but shall be promptly paid over to Lender.

8.    **Assignment of Causes of Action, Awards, and Damages.** All causes of action, and all sums due or payable to Borrower for injury or damage to the Mortgaged Property, or as damages incurred in connection with the transactions in which the Loan secured by this Security Instrument was made, including, without limitation, causes of action and damages for breach of contract, fraud, concealment, construction defects, or other torts, or compensation for any conveyance in lieu of condemnation, are assigned to Lender, and all proceeds from such causes of action and all such sums shall be paid to Lender for credit against the Indebtedness secured by this Security Instrument. Borrower shall notify Lender immediately on receipt by Borrower of notice that any such sums have become due or payable and, immediately on receipt of any such sums, shall promptly remit such sums to Lender.

After deducting all expenses, including Attorneys' Fees, incurred by Lender in recovering or collecting any sums under this Section, Lender may apply or release the balance of any funds received by it under this Section, or any part of such balance, as it elects. Lender, at its option, may appear in and prosecute in its own name any action or proceeding to enforce any cause of action assigned to it under this Section and may make any compromise or settlement in such action whatsoever. Borrower covenants that it shall execute and deliver to Lender such further assignments of any such compensation awards, damages, or causes of action as Lender may request from time to time. If Lender fails or does not elect to prosecute any such action or proceeding and Borrower elects to do so, Borrower may conduct the action or proceeding at its own expense and risk.

9.    **Defense of Security Instrument; Litigation.** Borrower represents and warrants that this Security Instrument creates a first position lien and security interest against the Mortgaged Property. Borrower shall give Lender immediate written notice of any action or proceeding (including, without limitation, any

---

11

© Lightning Docs™; All Rights Reserved.
Deed of Trust    Loan No. ▮▮▮▮

Borrower's Initials:

Val-Chris00160

judicial, whether civil, criminal, or probate, or nonjudicial proceeding to foreclose the lien of a junior or senior mortgage or deed of trust) affecting or purporting to affect the Mortgaged Property, this Security Instrument, Lender's security for the performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender under the Loan Documents. Despite any other provision of this Security Instrument, Borrower agrees that Lender or Trustee may (but is not obligated to) commence, appear in, prosecute, defend, compromise, and settle, in Lender's or Borrower's name, and as attorney-in-fact for Borrower, and incur necessary costs and expenses, including Attorneys' Fees in so doing, any action or proceeding, whether a civil, criminal, or probate judicial matter, nonjudicial proceeding, arbitration, or other alternative dispute resolution procedure, reasonably necessary to preserve or protect, or affecting or purporting to affect, the Mortgaged Property, this Security Instrument, Lender's security for performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Loan Documents, and that if Lender and Trustee elect not to do so, Borrower shall commence, appear in, prosecute, and defend any such action or proceeding. Borrower shall pay all costs and expenses of Lender and Trustee, including costs of evidence of title and Attorneys' Fees, in any such action or proceeding in which Lender or Trustee may appear or for which legal counsel is sought, whether by virtue of being made a party defendant or otherwise, and whether or not the interest of Lender or Trustee in the Mortgaged Property is directly questioned in such action or proceeding, including, without limitation, any action for the condemnation or partition of all or any portion of the Mortgaged Property and any action brought by Lender to foreclose this Security Instrument or to enforce any of its terms or provisions.

10. **Borrower's Failure to Comply With Security Instrument.** If Borrower fails to make any payment or do any act required by this Security Instrument, or if there is any action or proceeding (including, without limitation, any judicial or nonjudicial proceeding to foreclose the lien of a junior or senior mortgage or deed of trust) affecting or purporting to affect the Mortgaged Property, this Security Instrument, Lender's security for the performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Loan Agreement, the Note or this Security Instrument, Lender or Trustee may (but is not obligated to) (a) make any such payment or do any such act in such manner and to such extent as either deems necessary to preserve or protect the Mortgaged Property, this Security Instrument, or Lender's security for the performance of Borrower's Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Loan Documents, Lender and Trustee being authorized to enter on the Mortgaged Property for any such purpose; and (b) in exercising any such power, pay necessary expenses, retain attorneys, and pay Attorneys' Fees incurred in connection with such action, without notice to or demand on Borrower and without releasing Borrower from any Obligations or Indebtedness.

11. **Sums Advanced to Bear Interest and to Be Secured by Security Instrument.** At Lender's request, Borrower shall immediately pay any sums advanced or paid by Lender or Trustee under any provision of this Security Instrument or the other Loan Documents. Until so repaid, all such sums and all other sums payable to Lender and Trustee shall be added to, and become a part of, the Indebtedness secured by this Security Instrument and bear interest from the date of advancement or payment by Lender or Trustee at the Default Rate provided in the Note, regardless of whether an Event of Default has occurred, unless payment of interest at such rate would be contrary to Governmental Requirements. All sums advanced by Lender under this Security Instrument or the other Loan Documents, shall have the same priority to which the Security Instrument otherwise would be entitled as of the date this Security Instrument is executed and recorded, without regard to the fact that any such future advances may occur after this Security Instrument is executed, and shall conclusively be deemed to be mandatory advances required to preserve and protect this Security Instrument and Lender's security for the performance of the Obligations and payment of the Indebtedness, and shall be secured by this Security Instrument to the same extent and with the same priority as the principal and interest payable under the Note.

12. **Inspection of Mortgaged Property.** In addition to any rights Lender may have under the laws and regulations where the Mortgaged Property is located, Lender may make, or authorize other persons, including, but not limited to, appraisers and prospective purchasers at any foreclosure sale commenced by

---

12

© Lightning Docs™; All Rights Reserved.
Deed of Trust      Loan No. ███

Borrower's Initials:

Val-Chris00161 Val-Chris00161

Lender, to enter on or inspect the Mortgaged Property at reasonable times and for reasonable durations. Borrower shall permit all such entries and inspections to be made as long as Lender has given Borrower written notice of such inspection at least 24 hours before the entry and inspection.

13.     **Uniform Commercial Code Security Agreement.** This Security Instrument is intended to be and shall constitute a security agreement under the Uniform Commercial Code for any of the Personalty specified as part of the Mortgaged Property that, under Governmental Requirements, may be subject to a security interest under the Uniform Commercial Code, and Borrower grants to Lender a security interest in those items. Borrower authorizes Lender to file financing statements in all states, counties, and other jurisdictions as Lender may elect, without Borrower's signature if permitted by law. Borrower agrees that Lender may file this Security Instrument, or a copy of it, in the real estate records or other appropriate index or in the Office of the Secretary of State and such other states as the Lender may elect, as a financing statement for any of the items specified above as part of the Mortgaged Property. Any reproduction of this Security Instrument or executed duplicate original of this Security Instrument, or a copy certified by a County Recorder in the state where the Mortgaged Property is located, or of any other security agreement or financing statement, shall be sufficient as a financing statement. In addition, Borrower agrees to execute and deliver to Lender, at Lender's request, any UCC financing statements, as well as any extensions, renewals, and amendments, and copies of this Security Instrument in such form as Lender may require to perfect a security interest with respect to the Personalty. Borrower shall pay all costs of filing such financing statements and any extensions, renewals, amendments, and releases of such statements, and shall pay all reasonable costs and expenses of any record searches for financing statements that Lender may reasonably require. Without the prior written consent of Lender, Borrower shall not create or suffer to be created any other security interest in the items, including any replacements and additions.

On any Event of Default, Lender shall have the remedies of a secured party under the Uniform Commercial Code and, at Lender's option, may also invoke the remedies provided in the Non-Uniform Covenants section of this Security Instrument as to such items. In exercising any of these remedies, Lender may proceed against the items of Mortgaged Property and any items of Personalty separately or together and in any order whatsoever, without in any way affecting the availability of Lender's remedies under the Uniform Commercial Code or of the remedies provided in the Non-Uniform Covenants section of this Security Instrument.

14.     **Fixture Filing.** This Security Instrument constitutes a financing statement filed as a fixture filing under the Uniform Commercial Code, as amended or recodified from time to time, covering any portion of the Mortgaged Property that now is or later may become a fixture attached to the Mortgaged Property or to any Improvement. The addresses of Borrower ("Debtor") and Lender ("Secured Party") are set forth on the first page of this Security Instrument.

15.     **Waiver of Statute of Limitations.** Borrower waives the right to assert any statute of limitations as a defense to the Loan Documents and the Obligations secured by this Security Instrument, to the fullest extent permitted by Governmental Requirements.

16.     **Default.** Any Event of Default, as defined in the Loan Agreement, shall constitute an "Event of Default" as that term is used in this Security Instrument (and the term "Default" shall mean any event which, with any required lapse of time or notice, may constitute an Event of Default, whether or not any such requirement for notice or lapse of time has been satisfied).

17.     **Acceleration on Transfer or Encumbrance.**

17.1     **Acceleration on Transfer or Encumbrance of Mortgaged Property.** If Borrower sells, gives an option to purchase, exchanges, assigns, conveys, encumbers (including, but not limited to PACE/HERO loans, any loans where payments are collected through property tax assessments, and super-voluntary liens which are deemed to have priority over the lien of the Security Instrument) (other than with a Permitted Encumbrance), transfers possession, or alienates all or any portion of the Mortgaged Property, or any of Borrower's interest in the Mortgaged Property, or suffers its title to, or any interest in, the Mortgaged Property to be divested, whether voluntarily or involuntarily; or if there is a sale or transfer of any interests in Borrower; or if Borrower changes or permits to be changed the character or use of the

---

13

© Lightning Docs™; All Rights Reserved.
Deed of Trust     Loan No. ███                                    Borrower's Initials: ____

Val-Chris00162

Mortgaged Property, or drills or extracts or enters into any lease for the drilling or extracting of oil, gas, or other hydrocarbon substances or any mineral of any kind or character on the Mortgaged Property; or if title to such Mortgaged Property becomes subject to any lien or charge, voluntary or involuntary, contractual or statutory, without Lender's prior written consent, then Lender, at Lender's option, may, without prior notice, declare all sums secured by this Security Instrument, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in the Loan Documents. For purposes of this Section "interest in the Mortgaged Property" means any legal or beneficial interest in the Mortgaged Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract, or escrow agreement, the intent of which is the transfer of title by Borrower to a purchaser at a future date.

    **17.2**    **Replacement Personalty.** Notwithstanding anything to the contrary herein, Borrower may from time to time replace Personalty constituting a part of the Mortgaged Property, as long as (a) the replacements for such Personalty are of equivalent value and quality; (b) Borrower has good and clear title to such replacement Personalty free and clear of any and all liens, encumbrances, security interests, ownership interests, claims of title (contingent or otherwise), or charges of any kind, or the rights of any conditional sellers, vendors, or any other third parties in or to such replacement Personalty have been expressly subordinated to the lien of the Security Instrument in a manner satisfactory to Lender and at no cost to Lender; and (c) at Lender's option, Borrower provides at no cost to Lender satisfactory evidence that the Security Instrument constitutes a valid and subsisting lien on and security interest in such replacement Personalty of the same priority as this Security Instrument has on the Mortgaged Property and is not subject to being subordinated or its priority affected under any Governmental Requirements.

    **17.3**    **Junior Liens.** If Lender consents in writing, in Lender's sole and absolute discretion, the due-on-encumbrance prohibition shall not apply to a junior voluntary deed of trust or mortgage lien in favor of another lender encumbering the Mortgaged Property (the principal balance of any such junior encumbrance shall be added to the principal balance of the Indebtedness for purposes of determining compliance with the financial covenants of the Loan Agreement and the Note). Borrower shall reimburse Lender for all out-of-pocket costs and expenses incurred in connection with such encumbrance. Should Borrower fail to obtain Lender's express written consent to any junior voluntary lien, then Lender, at Lender's option, may, without prior notice and subject to Applicable Law, declare all sums secured by this Security Instrument, regardless of any their stated due date(s), immediately due and payable and may exercise all rights and remedies in the Loan Documents.

**18.**    **Waiver of Marshaling.** Despite the existence of interests in the Mortgaged Property other than that created by this Security Instrument, and despite any other provision of this Security Instrument, if Borrower defaults in paying the Indebtedness or in performing any Obligations, Lender shall have the right, in Lender's sole and absolute discretion, to establish the order in which the Mortgaged Property will be subjected to the remedies provided in this Security Instrument and to establish the order in which all or any part of the Indebtedness secured by this Security Instrument is satisfied from the proceeds realized on the exercise of the remedies provided in this Security Instrument. Borrower and any person who now has or later acquires any interest in the Mortgaged Property with actual or constructive notice of this Security Instrument waives any and all rights to require a marshaling of assets in connection with the exercise of any of the remedies provided in this Security Instrument or otherwise provided by Governmental Requirements.

**19.**    **Consents and Modifications; Borrower and Lien Not Released.** Despite Borrower's default in the payment of any Indebtedness secured by this Security Instrument or in the performance of any Obligations under this Security Instrument or Borrower's breach of any obligation, covenant, or agreement in the Loan Documents, Lender, at Lender's option, without notice to or consent from Borrower, any guarantor of the Indebtedness and of Borrower's Obligations under the Loan Documents, or any holder or claimant of a lien or interest in the Mortgaged Property that is junior to the lien of this Security Instrument, and without incurring liability to Borrower or any other person by so doing, may from time to time (a) extend the time for payment of all or any portion of Borrower's Indebtedness under the Loan Documents;

---

14

© Lightning Docs™; All Rights Reserved.
Deed of Trust     Loan No. ███

Borrower's Initials: _CR_

Val-Chris00163    Val-Chris00163

(b) accept a renewal note or notes, or release any person from liability, for all or any portion of such Indebtedness; (c) agree with Borrower to modify the terms and conditions of payment under the Loan Documents; (d) reduce the amount of the monthly installments due under the Note; (e) reconvey or release other or additional security for the repayment of Borrower's Indebtedness under the Loan Documents; (f) approve the preparation or filing of any map or plat with respect to the Mortgaged Property; (g) enter into any extension or subordination agreement affecting the Mortgaged Property or the lien of this Security Instrument; and (h) agree with Borrower to modify the term, the rate of interest, or the period of amortization of the Note or alter the amount of the monthly installments payable under the Note. No action taken by Lender under this Section shall be effective unless it is in writing, subscribed by Lender, and, except as expressly stated in such writing, no such action will impair or affect (i) Borrower's obligation to pay the Indebtedness secured by this Security Instrument and to observe all Obligations of Borrower contained in the Loan Documents; (ii) the guaranty of any Person of the payment of the Indebtedness secured by this Security Instrument; or (iii) the lien or priority of the lien of this Security Instrument. At Lender's request, Borrower shall promptly pay Lender a reasonable service charge, together with all insurance premiums and Attorneys' Fees as Lender may have advanced, for any action taken by Lender under this Section.

Whenever Lender's consent or approval is specified as a condition of any provision of this Security Instrument, such consent or approval shall not be effective unless such consent or approval is in writing, signed by two authorized officers of Lender.

20.     **Future Advances.** On request by Borrower, Lender, at Lender's option, may make future advances to Borrower. All such future advances, with interest, shall be added to and become a part of the Indebtedness secured by this Security Instrument when evidenced by promissory notes reciting that such note(s) are secured by this Security Instrument.

21.     **Prepayment.** If the Loan Documents provide for a fee or charge as consideration for the acceptance of prepayment of principal, Borrower agrees to pay said fee or charge if the Indebtedness or any part of it shall be paid, whether voluntarily or involuntarily, before the due date stated in the Note, even if Borrower has defaulted in payment or in the performance of any agreement under the Loan Documents and Lender has declared all sums secured by this Security Instrument immediately due and payable.

22.     **Governing Law; Consent to Jurisdiction and Venue.** This Loan is made by Lender and accepted by Borrower in the State of California except that at all times the provisions for the creation, perfection, priority, enforcement and foreclosure of the liens and security interests created in the Mortgaged Property under the Loan Documents shall be governed by and construed according to the laws of the state in which the Mortgaged Property is situated. To the fullest extent permitted by the law of the state in which the Mortgaged Property is situated, the law of the State of California shall govern the validity and enforceability of all Loan Documents, and the debt or obligations arising hereunder (but the foregoing shall not be construed to limit Lender's rights with respect to such security interest created in the state in which the Mortgaged Property is situated). The parties agree that jurisdiction and venue for any dispute, claim or controversy arising, other than with respect to perfection and enforcement of Lender's rights against the Mortgaged Property, shall be Orange County, California, or the applicable federal district court that covers said County, and Borrower submits to personal jurisdiction in that forum for any and all purposes. Borrower waives any right Borrower may have to assert the doctrine of forum non conveniens or to object to such venue.

BORROWER'S INITIALS: _____

23.     **Taxation of Security Instrument.** In the event of the enactment of any law deducting from the value of the Mortgaged Property any mortgage lien on it, or imposing on Lender the payment of all or part of the taxes, charges, or assessments previously paid by Borrower under this Security Instrument, or changing the law relating to the taxation of mortgages, debts secured by mortgages, or Lender's interest in the Mortgaged Property so as to impose new incidents of tax on Lender, then Borrower shall pay such taxes or assessments or shall reimburse Lender for them; provided, however, that if in the opinion of Lender's

15

© Lightning Docs™; All Rights Reserved.
Deed of Trust     Loan No. ▮▮▮

Borrower's Initials: _____

Val-Chris00164

counsel such payment cannot lawfully be made by Borrower, then Lender may, at Lender's option, declare all sums secured by this Security Instrument to be immediately due and payable without notice to Borrower. Lender may invoke any remedies permitted by this Security Instrument.

24. **Mechanic's Liens.** Borrower shall pay from time to time when due, all lawful claims and demands of mechanics, materialmen, laborers, and others that, if unpaid, might result in, or permit the creation of, a lien on the Mortgaged Property or any part of it, or on the Rents arising therefrom, and in general shall do or cause to be done everything necessary so that the lien and security interest of this Security Instrument shall be fully preserved, at Borrower's expense, without expense to Lender; provided, however, that if Governmental Requirements empower Borrower to discharge of record any mechanic's, laborer's, materialman's, or other lien against the Mortgaged Property by the posting of a bond or other security, Borrower shall not have to make such payment if Borrower posts such bond or other security on the earlier of (a) 10 days after the filing or recording of same or (b) within the time prescribed by law, so as not to place the Mortgaged Property in jeopardy of a lien or forfeiture.

25. **Liability for Acts or Omissions.** Lender shall not be liable or responsible for its acts or omissions under this Security Instrument, except for Lender's own gross negligence or willful misconduct, or be liable or responsible for any acts or omissions of any agent, attorney, or employee of Lender, if selected with reasonable care.

26. **Notices.** Except for any notice required by Governmental Requirements to be given in another manner, any notice required to be provided in this Security Instrument shall be given in accordance with the Loan Agreement.

27. **Statement of Obligations.** Except as otherwise provided by Governmental Requirements, at Lender's request, Borrower shall promptly pay to Lender such fee as may then be provided by law as the maximum charge for each statement of obligations, Lender's statement, Lender's demand, payoff statement, or other statement on the condition of, or balance owed, under the Note or secured by this Security Instrument.

28. **Remedies Are Cumulative.** Each remedy in this Security Instrument is separate and distinct and is cumulative to all other rights and remedies provided by this Security Instrument or by Governmental Requirements, and each may be exercised concurrently, independently, or successively, in any order whatsoever.

29. **Obligations of Borrower Joint and Several.** If more than one Person is named as Borrower, each obligation of Borrower under this Security Instrument shall be the joint and several obligations of each such Person.

30. **Delegation of Authority.** Whenever this Security Instrument provides that Borrower authorizes and appoints Lender as Borrower's attorney-in-fact to perform any act for or on behalf of Borrower or in the name, place, and stead of Borrower, Borrower expressly understands and agrees that this authority shall be deemed a power coupled with an interest and such power shall be irrevocable.

31. **Funds for Taxes, Insurance, and Impositions.** If Borrower is in default under this Security Instrument or any of the Loan Documents, regardless of whether the default has been cured, then Lender may at any subsequent time, at its option to be exercised on 30 days written notice to Borrower, require Borrower to deposit with Lender or its designee, at the time of each payment of an installment of interest or principal under the Note, an additional amount sufficient to discharge the Impositions as they become due. The calculation of the amount payable and of the fractional part of it to be deposited with Lender shall be made by Lender in its sole and absolute discretion. These amounts shall be held by Lender or its designee not in trust and not as agent of Borrower and shall not bear interest, and shall be applied to the payment of any of the Impositions under the Loan Documents in such order or priority as Lender shall determine. If at any time within 30 days before the due date of these obligations the amounts then on deposit shall be insufficient to pay the obligations under the Note and this Security Instrument in full, Borrower shall deposit the amount of the deficiency with Lender within 10 days after Lender's demand. If the amounts deposited are in excess of the actual obligations for which they were deposited, Lender may refund any such excess, or, at its option, may hold the excess in a reserve account, not in trust and not bearing interest, and reduce

---

16

© Lightning Docs™; All Rights Reserved.
Deed of Trust Loan No. ██

Borrower's Initials:

Val-Chris00165

proportionately the required monthly deposits for the ensuing year. Nothing in this Section shall be deemed to affect any right or remedy of Lender under any other provision of this Security Instrument or under any statute or rule of law to pay any such amount and to add the amount so paid to the Indebtedness secured by this Security Instrument. Lender shall have no obligation to pay insurance premiums or taxes except to the extent the fund established under this Section is sufficient to pay such premiums or taxes, to obtain insurance, or to notify Borrower of any matters relative to the insurance or taxes for which the fund is established under this Section. Notwithstanding the preceding, Borrower and Lender may agree to impounds of taxes and insurance which impounds shall be identified in the Note.

Lender or its designee shall hold all amounts so deposited as additional security for the sums secured by this Security Instrument. Lender may, in its sole and absolute discretion and without regard to the adequacy of its security under this Security Instrument, apply such amounts or any portion of it to any Indebtedness secured by this Security Instrument, and such application shall not be construed to cure or waive any default or notice of default under this Security Instrument.

If Lender requires deposits to be made under this Section, Borrower shall deliver to Lender all tax bills, bond and assessment statements, statements for insurance premiums, and statements for any other obligations referred to above as soon as Borrower receives such documents.

If Lender sells or assigns this Security Instrument, Lender shall have the right to transfer all amounts deposited under this Section to the purchaser or assignee. After such a transfer, Lender shall be relieved and have no further liability under this Security Instrument for the application of such deposits, and Borrower shall look solely to such purchaser or assignee for such application and for all responsibility relating to such deposits.

32. **General Provisions.**

32.1 **Successors and Assigns.** This Security Instrument is made and entered into for the sole protection and benefit of Lender and Borrower and their successors and assigns, and no other Person or Persons shall have any right of action under this Security Instrument. The terms of this Security Instrument shall inure to the benefit of the successors and assigns of the parties, provided, however, that the Borrower's interest under this Security Instrument cannot be assigned or otherwise transferred without the prior consent of Lender. Lender in its sole discretion may transfer this Security Instrument, and may sell or assign participations or other interests in all or any part of this Security Instrument, all without notice to or the consent of Borrower.

32.2 **Meaning of Certain Terms.** As used in this Security Instrument and unless the context otherwise provides, the words "herein," "hereunder" and "hereof" mean and include this Security Instrument as a whole, rather than any particular provision of it.

32.3 **Authorized Agents.** In exercising any right or remedy, or taking any action provided in this Security Instrument, Lender may act through its employees, agents, or independent contractors, as Lender expressly authorizes.

32.4 **Gender and Number.** Wherever the context so requires in this Security Instrument, the masculine gender includes the feminine and neuter, the singular number includes the plural, and vice versa.

32.5 **Captions.** Captions and section headings used in this Security Instrument are for convenience of reference only, are not a part of this Security Instrument, and shall not be used in construing it.

33. **Dispute Resolution: Waiver of Right to Jury Trial.**

33.1 **ARBITRATION.** CONCURRENTLY HEREWITH, BORROWER AND ANY GUARANTOR SHALL EXECUTE THAT CERTAIN ARBITRATION AGREEMENT WHEREBY BORROWER, ANY GUARANTOR, AND LENDER AGREE TO ARBITRATE ANY DISPUTES TO RESOLVE ANY CLAIMS (AS DEFINED IN THE ARBITRATION AGREEMENT).

33.2 **WAIVER OF RIGHT TO JURY TRIAL.** CONCURRENTLY HEREWITH, BORROWER AND ANY GUARANTOR SHALL EXECUTE THAT CERTAIN ARBITRATION AGREEMENT AND WAIVER OF RIGHT TO JURY TRIAL WHEREBY BORROWER, ANY GUARANTOR, AND LENDER AGREE TO WAIVE THEIR RESPECTIVE RIGHTS TO A JURY

17

© Lightning Docs™; All Rights Reserved.
Deed of Trust    Loan No. █

Borrower's Initials:

Val-Chris00166

Val-Chris00166

TRIAL OF ANY CLAIM (AS DEFINED IN THE ARBITRATION AGREEMENT) OR CAUSE OF ACTION BASED ON OR ARISING FROM THE LOAN.

BORROWER'S INITIALS: _____

**33.3** **PROVISIONAL REMEDIES: FORECLOSURE AND INJUNCTIVE RELIEF.** Nothing in the Section above, shall be deemed to apply to or limit the right of Lender to: (a) exercise self-help remedies, (b) foreclose judicially or nonjudicially against any real or personal property collateral, or to exercise judicial or nonjudicial power of sale rights, (c) obtain from a court provisional or ancillary remedies (including, but not limited to, injunctive relief, a writ of possession, prejudgment attachment, a protective order or the appointment of a receiver), (d) pursue rights against Borrower or any other party in a third party proceeding in any action brought against Lender (including, but not limited to, actions in bankruptcy court). Lender may exercise the rights set forth in the foregoing clauses (a) through (d), inclusive, before, during, or after the pendency of any proceeding referred to in the Section above. Neither the exercise of self-help remedies nor the institution or maintenance of an action for foreclosure or provisional or ancillary remedies or the opposition to any such provisional remedies shall constitute a waiver of the right of any Borrower, Lender or any other party, including, but not limited to, the claimant in any such action, to require submission of the dispute, claim or controversy occasioning resort to such remedies to any proceeding referred to in the Section above.

**34.** **Contractual Right to Appoint a Receiver Upon Default.** Upon an Event of Default under this Security Instrument or a breach of any clause of any agreement signed in connection with the Loan to Borrower, Borrower agrees that Lender may appoint a receiver to control the Mortgaged Property within seven (7) days of any default. Borrower agrees to cooperate with the receiver and turn over all control to said receiver and otherwise cooperate with the receiver appointed by Lender.

**35.** **Loan Agreement.** This Security Instrument is subject to the provisions of the Loan Agreement. As specifically provided in the Loan Agreement, if Borrower defaults under this Security Instrument, Lender has the right and option to foreclose against any Collateral provided under the Loan Agreement.

**36.** **Condominium and Planned Unit Developments.** If any of the Mortgaged Property includes a unit or units in, together with an undivided interest in the common elements of, a condominium project (the "Condominium Project") or a Planned Unit Development ("PUD"), the following additional requirements shall be in place.

**36.1** **Additional Security.** If the owners association or other entity which acts for the Condominium Project and/or PUD (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Mortgaged Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**36.2** **Obligations.** Borrower shall perform all of Borrower's obligations under the Condominium Project's and/or PUD Constituent Documents. The "Constituent Documents" are the: (1) condominium declaration and/or any other document which creates the Condominium Project and or PUD; (2) any by-laws; (3) any code or regulations; (4) articles of incorporation, trust instrument or any equivalent document which create the Owners Association; and (5) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**36.3** **Owners Association Policy Proceeds.** If the Owners Association maintains a "master" or "blanket" policy on the Condominium Project or PUD and an event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Mortgaged Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Mortgage, whether or not then due, with any excess paid to Borrower.

**36.4** **Owners Association Liability Coverage.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

18

© Lightning Docs™; All Rights Reserved.
Deed of Trust      Loan No. ███

Borrower's Initials: _____

Val-Chris00167

**36.5** **Consent of Lender.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Mortgaged Property or consent to:

36.5.1. the abandonment and/or termination of the Condominium Project or PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of taking by condemnation or eminent domain;

36.5.2. any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender;

36.5.3. termination of professional management and assumption of self-management of the Owners Association; or

36.5.4. any action which would have the effect of rendering the any insurance coverage maintained by the Owners Association unacceptable to Lender.

## NON-UNIFORM COVENANTS.

Notwithstanding anything to the contrary elsewhere in this Security Instrument, Borrower and Lender further covenant and agree as follows:

37.    **Acceleration and Sale on Default.** If an Event of Default occurs, Lender, at its option, in addition to other remedies provided at law, may declare all sums secured by this Security Instrument immediately due and payable and may, at Lender's option, direct Trustee to foreclose upon the Mortgage Property in accordance with Chapter 51 of the Texas Property Code, as the same may be amended from time to time.

Trustee, when requested to do so by Lender after such an Event of Default as aforesaid, shall sell all or any portion of the Mortgaged Property at public auction, to the highest bidder for cash, at the county courthouse of the county in Texas in which the Mortgaged Property or any part thereof is situated in the area in or about such courthouse designated for real property foreclosure sales in accordance with Applicable Law (or in the absence of such designation, in the area set forth in the notice of sale hereinafter described), between the hours of 10:00 o'clock A.M. and 4:00 o'clock P.M., on the first Tuesday of any month, after giving notice of the time, place and terms of said sale, and of the property to be sold in accordance with Applicable Laws in the State of Texas in effect at the time such notice is given, provided however, such sale shall begin at the time stated in such notice or within three (3) hours thereafter.

Notice of such proposed sale shall be given by posting written notice of the sale at the courthouse, and, except as otherwise permitted or required by Applicable Law, by filing a copy of the notice in the office of the county clerk of the county in which the sale is to be made at least twenty-one (21) days preceding the date of the sale. If the property to be sold is situated in more than one county, a notice shall be posted at the courthouse and filed with the county clerk of each county in which the property to be sold is situated. In addition, Lender shall, at least twenty-one (21) days preceding the date of sale, serve written notice of the proposed sale by certified mail on each debtor obligated to pay the debt secured hereby according to the records of Lender. Service of such notice shall be completed upon deposit of the notice, enclosed in a postpaid wrapper, properly addressed to such debtor at the most recent address as shown by the records of Lender, in a post office or official depository under the care and custody of the United States Postal Service. The affidavit of any person having knowledge of the facts to the effect that such service was completed shall be prima facie evidence of the fact of service.

Any notice that is required or permitted to be given to Borrower may be addressed to Borrower at Borrower's address as stated on the first page hereof. Any notice that is to be given by certified mail to any other debtor may, if no address for such other debtor is shown by the records of Lender, be addressed to such other debtor at the address of Borrower as is shown by the records of Lender. Trustee may appoint any attorney-in-fact or agent to act in his or her stead as Trustee to perform all duties of the Trustee authorized herein. Borrower authorizes and empowers Trustee to sell the Mortgaged Property, together or in lots or parcels, as Trustee shall deem expedient; to receive the proceeds of said sale; and to execute and deliver to the purchaser or purchasers thereof good and sufficient deeds of conveyance thereto by fee simple

© Lightning Docs™; All Rights Reserved.
Deed of Trust      Loan No. ██████

Borrower's Initials: _CC_

Val-Chris00168

title, with covenants of general warranty, and Borrower binds itself, himself or herself to warrant and forever defend the title of such purchaser or purchasers. Trustee may postpone the sale of all or any portion of the Mortgaged Property by public announcement made at the initial time and place of sale, and from time to time later by public announcement made at the time and place of sale fixed by the preceding postponement. Any person, including Borrower, Trustee, or Lender, may purchase at such sale. Lender may offset its bid at such sale to the extent of the full amount owed to Lender under the Loan Documents, including, without limitation, Trustee's fees, expenses of sale, and costs, expenses, and Attorneys' Fees incurred by or on behalf of Lender in connection with collecting, litigating, or otherwise enforcing any right under the Loan Documents.

The proceeds or avails of any sale made under or by virtue of this Security Instrument, together with any other sums secured by this Security Instrument, which then may be held by the Trustee or Lender or any other person, shall be applied as follows: (1) To the payment of the costs and expenses of such sale, including Trustee's fees, costs of title evidence, Attorneys' Fees, and reasonable compensation to Lender and its agents and consultants, and of any judicial proceedings in which the same costs and expenses of sale may be made, and of all expenses, liabilities, and advances made or incurred by the Trustee or Lender under this Security Instrument, together with interest at the rate set forth in the Note on all advances made by the Trustee or Lender and all taxes or assessments, except any taxes, assessments, or other charges subject to which the Mortgaged Property was sold; (2) to the payment of the whole amount then due, owing, or unpaid on the Note for interest and principal, with interest on the unpaid principal at the Default Rate (as defined in the Note), from the due date of any such payment of principal until the same is paid; (3) to the payment of any other Indebtedness required to be paid by Borrower under any provision of this Security Instrument, the Note, or any of the other Loan Documents; and (4) to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive it.

38.    **Trustee.** The Trustee shall be deemed to have accepted the terms of this trust when this Security Instrument, duly executed and acknowledged, is made a public record as provided by law. The Trustee shall not be obligated to notify any party to this Security Instrument of any pending sale under any other Security Instrument or of any action or proceeding in which Borrower, Lender, or Trustee is a party, unless such sale relates to or reasonably might affect the Mortgaged Property, this Security Instrument, Lender's security for the payment of the Indebtedness and the performance of the Obligations, or the rights or powers of Lender or Trustee under the Loan Documents, or unless such action or proceeding has been instituted by Trustee against the Mortgaged Property, Borrower, or Lender.

In case of any sale hereunder, all prerequisites to the sale shall be presumed to have been performed, and in conveyance given hereunder, all statements of facts or other recitals made therein as to any of the following, shall be taken in all courts of law or equity as prima facie evidence that the facts so stated or recited are true; *i.e.*, the nonpayment of money secured; the request to Trustee to enforce this trust; the proper and due appointment of any substitute trustee; the advertisement of sale or time, place and manner of sale; or any other preliminary fact or thing. Trustee shall not be liable for any action taken or omitted to be taken by Trustee in good faith and reasonably believed to be within the discretion or power conferred upon Trustee by this Security Instrument and shall be answerable only for losses occurring through his or her gross negligence or willful misconduct. Borrower agrees to save and hold Trustee and Lender harmless from all loss and expense, including reasonable Attorneys' Fee, costs of a title search or abstract, and preparation of survey, incurred by reason of any action, suit or proceeding (including an action, suit or proceeding to foreclose or to collect the debt secured hereby) in and to which Trustee or Lender may be or become a party by reason hereof, including but not limited to, condemnation, bankruptcy and administration proceedings, as well as any other proceeding wherein proof of claim is required by law to be filed or in which it becomes necessary to defend or uphold the terms of this Security Instrument, and in each such instance, all money paid or expended by Trustee or Lender, together with interest thereon from date of such payment at the rate set forth in said Note or at the Default Rate, whichever is higher, shall be so much additional indebtedness secured hereby and shall be immediately due and payable by Borrower.

---

© Lightning Docs™; All Rights Reserved.
Deed of Trust        Loan No ███

Borrower's Initials: ⟨initials⟩

Val-Chris00169

39. **Power of Trustee to Reconvey or Consent.** At any time, without liability and without notice to Borrower, on Lender's written request and presentation of the Note and this Security Instrument to Trustee for endorsement, and without altering or affecting (a) the personal liability of Borrower or any other person for the payment of the Indebtedness secured by this Security Instrument, or (b) the lien of this Security Instrument on the remainder of the Mortgaged Property as security for the repayment of the full amount of the Indebtedness then or later secured by this Security Instrument, (c) or any right or power of Lender or Trustee with respect to the remainder of the Mortgaged Property, Trustee may (i) reconvey or release any part of the Mortgaged Property from the lien of this Security Instrument; (ii) approve the preparation or filing of any map or plat of the Mortgaged Property; (iii) join in the granting of any easement burdening the Mortgaged Property; or (iv) enter into any extension or subordination agreement affecting the Mortgaged Property or the lien of this Security Instrument.

40. **Duty to Reconvey.** On Lender's written request reciting that all sums secured hereby have been paid, surrender of the Note and this Security Instrument to Trustee for cancellation and retention by Trustee, and payment by Borrower of any reconveyance fees customarily charged by Trustee, Trustee shall reconvey, without warranty, the Mortgaged Property then held by Trustee under this Security Instrument. The recitals in such reconveyance of any matters of fact shall be conclusive proof of their truthfulness. The grantee in such reconveyance may be described as "the person or persons legally entitled to the Mortgaged Property." Such request and reconveyance shall operate as a reassignment of the Rents assigned to Lender in this Security Instrument.

41. **Substitution of Trustee.** Lender, at Lender's option, may from time to time, by written instrument, substitute a successor or successors to any Trustee named in or acting under this Security Instrument, which instrument, when executed and acknowledged by Lender and recorded in the office of the Recorder of the county or counties in which the Mortgaged Property is located, shall constitute conclusive proof of the proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the predecessor Trustee, succeed to all right, title, estate, powers, and duties of such predecessor Trustee, including, without limitation, the power to reconvey the Mortgaged Property. To be effective, the instrument must contain the names of the original Borrower, Trustee, and Lender under this Security Instrument, the book and page or instrument or document number at which, and the county or counties in which, this Security Instrument is recorded, and the name and address of the substitute Trustee. If any notice of default has been recorded under this Security Instrument, this power of substitution cannot be exercised until all costs, fees, and expenses of the then acting Trustee have been paid. On such payment, the then acting Trustee shall endorse receipt of the payment on the instrument of substitution. The procedure provided in this Section for substitution of Trustees is not exclusive of other provisions for substitution provided by Governmental Requirements.

42. **Collection of Rents.** During an Event of Default, any and all Rents collected or received by Borrower shall be accepted and held for Lender in trust and shall not be commingled with Borrower's funds and property, but shall be promptly paid over to Lender. This instrument constitutes an assignment of rents and a security instrument under Chapter 64, Texas Property Code (SB 889 as enacted June 2011) and affords Lender, as beneficiary hereunder, all rights and remedies of an assignee under Chapter 64, Texas Property Code. This assignment of rents secures the Indebtedness, and a security interest in all rents from the Mortgaged Property is hereby created under Chapter 64 of the Texas Property Code to secure the Obligations.

If the Lender deems it necessary or convenient to have the rents collected by a receiver appointed for that purpose following an event of default, the Lender may apply to a court of competent jurisdiction for the appointment of a receiver of the Mortgaged Property, without notice and without regard for the adequacy of the security for the Indebtedness and without regard for the solvency of Borrower, any guarantor, or of any person, firm or other entity liable for the payment of the Indebtedness and shall have a receiver appointed. The Borrower further hereby consents to the appointment of a receiver should Lender elect to seek such relief.

---

21

© Lightning Docs™; All Rights Reserved.
Deed of Trust     Loan No ▮▮▮

Borrower's Initials:  ▮▮▮

Val-Chris00170 Val-Chris00170

43. **Waiver of Right of Offset; Waiver of Deficiency Statutes.** No portion of the Indebtedness secured by this Security Instrument shall be or be deemed to be offset or compensated by all or any part of any claim, cause of action, counterclaim, or cross-claim, whether liquidated or unliquidated, that Borrower may have or claim to have against Lender. To the extent permitted by law, Borrower expressly waives and relinquishes any and all rights and remedies under Sections 51.003, 51.004 and 51.005 of the Texas Property Code, as amended or re-codified (the "Deficiency Statutes"), including without limitation, the right to seek a credit against or offset of any deficiency judgment based on the fair market value of the Mortgaged Property sold at any judicial or non-judicial foreclosure; and to the extent permitted by law, Borrower agrees that Lender shall be entitled to seek a deficiency judgment from Borrower and/or any other party obligated on the Indebtedness secured hereby equal to the difference between the amount owing on the Indebtedness secured hereby and the foreclosure sales price. Alternatively, in the event the foregoing waiver is determined by a court of competent jurisdiction to be unenforceable, the following shall be the basis for the finder of fact's determination of the fair market value of the Mortgaged Property as of the date of the foreclosure sale in proceedings governed by any of the Deficiency Statues: (a) the Mortgaged Property shall be valued in an "as is" condition as of the date of the foreclosure sale, without any assumption or expectation that the Mortgaged Property will be repaired or improved in any manner before a resale of the Mortgaged Property after foreclosure: (b) the valuation shall be based upon an assumption that the foreclosure purchaser desires a resale of the Mortgaged Property for cash promptly (but not later than twelve (12) months) following the foreclosure sale; (c) all reasonable closing costs customarily borne by the seller in commercial real estate transactions should be deducted from the gross fair market value of the Mortgaged Property, including without limitation, brokerage commissions, title insurance premiums, cost of a survey, tax prorations, Attorneys' Fees, and marketing costs; (d) the gross fair market value of the Mortgaged Property shall be further discounted to account for any estimated holding costs associated with maintaining the Mortgaged Property pending sale, including without limitation, utilities expenses, property management fees, security, taxes and assessments (without duplication), and other maintenance, operational and ownership expenses; and (e) any expert opinion testimony given or considered in connection with a determination of the fair market value of the Mortgaged Property must be given by persons having at least five (5) years' experience in appraising property similar to the Mortgaged Property and who have conducted and prepared a complete written appraisal of the Mortgaged Property and taking into consideration the factors set forth above.

44. **NO SUBORDINATE FINANCING.** NO FURTHER ENCUMBRANCES MAY BE RECORDED AGAINST THE REAL PROPERTY WITHOUT THE PRIOR WRITTEN CONSENT OF LENDER. FAILURE TO COMPLY WITH THIS PROVISION SHALL CONSTITUTE AN EVENT OF DEFAULT AND, AT THE LENDER'S OPTION, THE LOAN SHALL IMMEDIATELY BECOME DUE AND PAYABLE. CONSENT TO ONE FURTHER ENCUMBRANCE SHALL NOT BE DEEMED TO BE A WAIVER OF THE RIGHT TO REQUIRE SUCH CONSENT TO FUTURE OR SUCCESSIVE ENCUMBRANCES.

45. **WAIVER OF NOTICES.** Except as provided in the Note and as otherwise provided herein, unless (and then to the extent not) prohibited by Applicable Law, the Borrower, and each surety, endorser, guarantor and other person liable or to become liable for payment of any of the Indebtedness:

    (i)    waive: opportunity to cure breach or default; grace; all notices, demands and presentments for payment; all notices of dishonor, non-payment, acceleration of maturity or intention to accelerate maturity; protest; dishonor; all other notices whatsoever; and, diligence in taking any action to collect amounts secured hereunder or in the handling of any collateral securing the Obligations at any time; and,

    (ii)    consent and agree (without notice of any of the following): to any substitution, subordination, exchange or release of any security for the Obligations or the release of any party primarily or secondarily liable on the Indebtedness; that the Lender shall not be required first to institute suit or exhaust his remedies against the Borrower or others liable or to become liable on the Obligations or to enforce his rights against them or any security

22

© Lightning Docs™; All Rights Reserved.
Deed of Trust    Loan No. ███

Borrower's Initials:  _CVB_

Val-Chris00171 Val-Chris00171

therefor; and, to any extension, renewal, rearrangement, or postponement of the time or manner of payment of the Indebtedness and to any other indulgence with respect hereto or thereto. Borrower waives any right of redemption.

46. **Usury Savings Provisions.** It is expressly stipulated and agreed to be the intent of Borrower and Lender at all times to comply strictly with the applicable Texas law governing the maximum rate or amount of interest payable on the Indebtedness, or applicable United States federal law to the extent that such law permits Lender to contract for, charge, take, reserve or receive a greater amount of interest than under Texas law. If the Applicable Law is ever judicially interpreted so as to render usurious any amount contracted for, charged, taken, reserved or received in respect of the Indebtedness, including by reason of the acceleration of the maturity or the prepayment thereof, then it is Borrower's and Lender's express intent that all amounts charged in excess of the Maximum Lawful Rate (as hereinafter defined) shall be automatically canceled, *ab initio*, and all amounts in excess of the Maximum Lawful Rate theretofore collected by Lender shall be credited on the principal balance of the Indebtedness (or, if the Indebtedness has been or would thereby be paid in full, refunded to Borrower), and the provisions of the Note and the other Loan Documents shall immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new document, so as to comply with the Applicable Laws, but so as to permit the recovery of the fullest amount otherwise called for hereunder and thereunder; provided, however, if the Note has been paid in full before the end of the stated term hereof, then Borrower and Lender agree that Lender shall, with reasonable promptness after Lender discovers or is advised by Borrower that interest was received in an amount in excess of the Maximum Lawful Rate, either credit such excess interest against the Indebtedness then owing by Borrower to Lender and/or refund such excess interest to Grantor. Borrower hereby agrees that as a condition precedent to any claim seeking usury penalties against Lender, Borrower will provide written notice to Lender, advising Lender in reasonable detail of the nature and amount of the violation, and Lender shall have sixty (60) days after receipt of such notice in which to correct such usury violation, if any, by either refunding such excess interest to Borrower or crediting such excess interest against the Indebtedness then owing by Borrower to Lender. All sums contracted for, charged, taken, reserved or received by Lender for the use, forbearance or detention of the Indebtedness shall, to the extent permitted by Applicable Law, be amortized, prorated, allocated or spread, using the actuarial method, throughout the stated term of the Note (including any and all renewal and extension periods) until payment in full so that the rate or amount of interest on account of the Indebtedness does not exceed the Maximum Lawful Rate from time to time in effect and applicable to the Indebtedness for so long as debt is outstanding. In no event shall the provisions of Chapter 346 of the Texas Finance Code (which regulates certain revolving credit loan accounts and revolving triparty accounts) apply to the Note or any other part of the Indebtedness. Notwithstanding anything to the contrary contained herein or in any of the other Loan Documents, it is not the intention of Lender to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration. The terms and provisions of this Section shall control and supersede every other term, covenant or provision contained herein, in any of the other Loan Documents or in any other document or instrument pertaining to the Indebtedness.

47. **Covenants Running with the Land; Release.** The Obligations contained in this Security Instrument are intended by Borrower, Lender, and Trustee to be, and shall be construed as, covenants running with the Mortgaged Property until the lien of this Security Instrument has been fully released by Lender. If the Indebtedness is paid in full in accordance with the terms of this Security Instrument and the Loan Documents, and if Borrower shall well and truly perform all of the Obligations and Borrower's covenants contained herein, then this conveyance shall become null and void and the liens hereof shall be released upon Borrower's request (as approved by Lender) and at Borrower's expense.

48. **PROPERTY INSURANCE DISCLOSURE. TEXAS FINANCE CODE SECTION 307.052 COLLATERAL PROTECTION INSURANCE NOTICE: (A) BORROWER IS REQUIRED TO (i) KEEP THE MORTGAGED PROPERTY INSURED AGAINST DAMAGE IN THE AMOUNT SPECIFIED HEREIN; (ii) PURCHASE THE INSURANCE FROM AN INSURER THAT IS**

---

23

© Lightning Docs™; All Rights Reserved.
Deed of Trust        Loan No. ███

Borrower's Initials: _____

Val-Chris00172

AUTHORIZED TO DO BUSINESS IN THE STATE OF TEXAS OR AN ELIGIBLE SURPLUS LINES INSURER OR OTHERWISE AS PROVIDED HEREIN; AND (iii) NAME LENDER AS THE PERSON TO BE PAID UNDER THE POLICY IN THE EVENT OF A LOSS AS PROVIDED HEREIN; (B) SUBJECT TO THE PROVISIONS HEREOF, BORROWER MUST, IF REQUIRED BY LENDER, DELIVER TO LENDER A COPY (OR COPIES) OF THE POLICY (OR POLICIES) AND PROOF OF THE PAYMENT OF PREMIUMS; AND (C) SUBJECT TO THE PROVISIONS HEREOF, IF BORROWER FAILS TO MEET ANY REQUIREMENT LISTED IN THE FOREGOING SUBPARTS (A) OR (B), LENDER MAY OBTAIN COLLATERAL PROTECTION INSURANCE ON BEHALF OF BORROWER AT BORROWER'S EXPENSE.

49.     NO ORAL AGREEMENTS. THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

[SIGNATURES FOLLOW]

---

24

Val-Chris00173

IN WITNESS WHEREOF, Borrower has executed and delivered this Security Instrument as of the date first written above.

**BORROWER:**

**DANIEL P. HIGGINS**

Daniel P. Higgins, an individual

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

State of _Texas_ )

County of _Galveston_ )

On _October 29th, 2024_ before me, _Shabrena Lynch-Horton_, Notary Public
Date            *Here Insert Name of the Officer*

Personally Appeared _Daniel P. Higgins_
                    *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

NOTARY PUBLIC
STATE OF TEXAS
SHABRENA LYNCH HORTON
Notary ID #126193821
My Commission Expires
May 27, 2025

I certify under PENALTY OF PERJURY under the laws of the State of _Texas_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Shabrena Lynch-Horton_
           *Signature of Notary Public*

25

© Lightning Docs™; All Rights Reserved.
Deed of Trust     Loan No. Borrower's Initials: _DH_

Val-Chris00174 Val-Chris00174

Lot 1, of KLEIMANN ADDITION, a subdivision in Galveston County, Texas, according to the Map or Plat thereof recorded in Volume 254-A, Page 75 and transferred to Volume 2, Page 6, both of the Map Records of Galveston County, Texas, together with the 20 feet alley adjacent on the North, abandoned by ordinance by the City pf Galveston, recorded in File no. 8132795, in the Office of the County Clerk of Galveston County, Texas.

Commonly known as: 3001 Kleinmann Avenue, Galveston, TX 77551

APN: 4400-0000-0001-000

---

26

© Lightning Docs™; All Rights Reserved.
Deed of Trust     Loan No. ▮▮▮                                Borrower's Initials:

Val-Chris00175

# LOAN AND SECURITY AGREEMENT

THIS LOAN AND SECURITY AGREEMENT (this "Agreement") dated as of October 29, 2024, is entered into by Daniel P. Higgins ("Borrower"), for the benefit of Val-Chris Investments Inc, a California corporation (CFL License No. 6035063) ("Lender").

In consideration of the covenants, conditions, representations, and warranties contained in this Agreement, the parties agree as follows:

1. **DEFINITIONS.** As used herein, the following terms shall have the following meanings (all terms defined in this Section or in any other provision of this Agreement in the singular are to have the plural meanings when used in the plural and vice versa, and whenever the context requires, each gender shall include any other gender):

1.1. **"Agreement"** shall mean this Loan and Security Agreement together with all schedules and exhibits hereto, as amended, supplemented or otherwise modified from time to time.

1.2. **"Applicable Law"** shall mean: (a) with respect to matters relating to the creation, perfection and procedures relating to the enforcement of the liens created pursuant to a Security Instrument (including specifically, without limitation, the manner of establishing the amount of any deficiency for which Borrower is liable after any foreclosure of any Real Property Collateral), the laws of the state where the Real Property Collateral subject to such Security Instrument is located; or (b) with respect to any other Loan Document (including but not limited to the Note and this Agreement) the laws of the State of California (or any other jurisdiction whose laws are mandatorily applicable notwithstanding the parties' choice of California law). In either case, Applicable Law shall refer to such laws, as such laws now exist, or may be changed or amended or come into effect in the future.

1.3. **"Attorneys' Fees."** Any and all attorney fees (including the allocated cost of in-house counsel), paralegal, and law clerk fees, including, without limitation, fees for advice, negotiation, consultation, arbitration, and litigation at the pretrial, trial, and appellate levels, and in any bankruptcy proceedings, and attorney costs and expenses incurred or paid by Lender as provided in the Loan Documents.

1.4. **"Collateral"** shall mean the collateral described in Section 2 below.

1.5. **"Environmental Laws"** shall mean any Governmental Requirements pertaining to health, industrial hygiene, or the environment, including, without limitation, the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA) as amended (42 United States Code ("U.S.C.") §§ 9601-9675); the Resource Conservation and Recovery Act of 1976 (RCRA) (42 U.S.C. §§ 6901-6992k); the Hazardous Materials Transportation Act (49 U.S.C. §§ 5101-5127); the Federal Water Pollution Control Act (33 U.S.C. §§ 1251-1376); the Clean Air Act (42 U.S.C. §§ 7401-7671q); the Toxic Substances Control Act (15 U.S.C. §§ 2601-2692); the Refuse Act (33 U.S.C. §§ 407-426p); the Emergency Planning and Community Right-To-Know Act (42 U.S.C. §§ 11001-11050); the Safe Drinking Water Act (42 U.S.C. §§ 300f-300j), and all present or future environmental quality or protection laws, statutes or codes or other requirements of any federal or state governmental unit, or of any regional or local governmental unit with jurisdiction over the Collateral.

1.6. **"Event of Default"** shall mean any event specified in the Event of Default heading below.

1.7. **"Governmental Authority"** shall mean any and all courts, boards, agencies, commissions, offices, or authorities of any nature whatsoever for any governmental unit (federal, state, county, district, municipal, city, or otherwise) whether now or later in existence.

1.8. **"Governmental Requirements"** shall mean any and all laws, statutes, codes, ordinances, regulations, enactments, decrees, judgments, and orders of any Governmental Authority.

1.9. **"Hazardous Materials"** means any and all (a) substances defined as "hazardous substances," "hazardous materials," "toxic substances," or "solid waste" in CERCLA, RCRA, and the Hazardous Materials Transportation Act (49 United States Code §§5101-5127), and in the regulations promulgated

---

1

Val-Chris00176

under those laws; (b) substances defined as "hazardous wastes" under Environmental Laws and in the regulations promulgated under that law in the State where the Real Property Collateral is located and in the regulations promulgated under that law; (c) substances defined as "hazardous substances" under Environmental Laws in the State where the Real Property Collateral is located; (d) substances listed in the United States Department of Transportation Table (49 Code of Federal Regulations § 172.101 and amendments); (e) substances defined as "medical wastes" under Environmental Laws in the State where the Real Property Collateral is located; (f) asbestos-containing materials; (g) polychlorinated biphenyl; (h) underground storage tanks, whether empty, filled, or partially filled with any substance; (i) petroleum and petroleum products, including crude oil or any fraction thereof, natural gas, natural gas liquids, liquefied natural gas, or synthetic gas usable for fuel, or any such mixture; and (j) such other substances, materials, and wastes that are or become regulated under applicable local, state, or federal law, or that are classified as hazardous or toxic under any Governmental Requirements or that, even if not so regulated, are known to pose a hazard to the health and safety of the occupants of the Real Property Collateral or of real property adjacent to it.

1.10.    "**Indebtedness**" means the principal of, interest on, and all other amounts and payments due under or evidenced by the following:

1.10.1. The Note (including, without limitation, any prepayment premium, late payment, and other charges payable under the Note);

1.10.2. This Agreement;

1.10.3. The Security Instrument and all other Loan Documents;

1.10.4. All funds later advanced by Lender to or for the benefit of Borrower under any provision of any of the Loan Documents;

1.10.5. Any future loans or amounts advanced by Lender to Borrower when evidenced by a written instrument or document that specifically recites that the Secured Obligations evidenced by such document are secured by the terms of the Security Agreement, including, but not limited to, funds advanced to protect the security or priority of the Security Agreement; and

1.10.6. Any amendment, modification, extension, rearrangement, restatement, renewal, substitution, or replacement of any of the foregoing.

1.11.    "**Insurance Rating Requirements**" means the requirements for a property insurance policy issued by an insurer having a claims-paying or financial strength rating of any one of the following: (A) at least "A-:VIII" from A.M. Best Company, (B) at least "A3" (or the equivalent) from Moody's Investors Service, Inc. or (C) at least "A-" from Standard & Poor's Ratings Service.

1.12.    "**Lender Retained Funds**" shall mean all of Borrower's right, title and interest in and to any funds retained by the Lender or its agents including but not limited to any Appraisal Holdbacks, Debt Service Holdbacks, Default Reserves, Impounds, Construction Reserves, Construction Completion Holdbacks, Repair Holdbacks, Tax Holdbacks, Capital Expenditure Holdbacks and Insurance Holdbacks.

1.13.    "**Loan**" shall mean the loan and financial accommodations made by the Lender to the Borrower in accordance with the terms of this Agreement and the Loan Documents.

1.14.    "**Loan Amount**" shall mean Three Hundred Thirty Thousand and 00/100 Dollars ($330,000.00).

1.15.    "**Loan Document(s)**" means this Agreement, the Note, Security Agreement, and any other agreement executed in connection therewith, all other documents evidencing, securing or otherwise governing the Loan between Lender, Borrower, any guarantor, pledgor, or debtor, whether now existing or made in the future, and all amendments, modifications, and supplements thereto. Notwithstanding the foregoing, when used in the definitions of Indebtedness, Secured Obligations, and Obligations, and in relation to the discussion of the Secured Obligations, Obligations and Indebtedness that are secured by any Security Agreement, the term "Loan Documents" specifically excludes any

© Lightning Docs™; All Rights Reserved.
Loan and Security Agreement          Loan No. ▮

v188
Borrower's Initials: _DB_

Val-Chris00177

Guaranty and Environmental Indemnity Agreement, each of which are not secured by any Security Agreement unless specifically identified therein.

**1.16.** "**Maturity Date**" shall mean November 1, 2025.

**1.17.** "**Note(s)**" means any and all promissory notes payable by Borrower, as maker to the order of Lender or order, executed concurrently herewith or subsequent to the execution of this Agreement, evidencing a loan from Lender to Borrower, together with any interest thereon at the rate provided in such promissory note and any modifications, extensions or renewals thereof, whether or not any such modification, extension is evidenced by a new or additional promissory note or notes. Note shall include the Secured Note of even date herewith payable by Borrower to the order of Lender in the amount of Three Hundred Thirty Thousand and 00/100 Dollars ($330,000.00), which matures on the Maturity Date, evidencing the Loan, in such form as is acceptable to Lender, together with any and all rearrangements, extensions, renewals, substitutions, replacements, modifications, restatements, and amendments to the Secured Note.

**1.18.** "**Person**" means any natural person, business, corporation, company, and or association, limited liability company, partnership, limited partnership, limited liability partnership, joint venture, business enterprise, trust, government authority or other legal entity.

**1.19.** "**Personal Property Collateral**" shall mean any property pledged to secure the Note that is not Real Property Collateral.

**1.20.** "**Real Property Collateral**" shall mean all Mortgaged Property described in the Security Instrument(s), commonly known as 3001 Kleinmann Avenue, Galveston, Texas 77551.

**1.21.** "**Secured Obligations**" shall have the meaning defined in Section 2 below and shall include all Indebtedness, obligations, and liabilities of the Borrower under the Loan Documents, whether on account of principal, interest, indemnities, fees (including, without limitation, Attorneys' Fees, remarketing fees, origination fees, collection fees, and all other professional fees), costs, expenses, taxes, or otherwise.

**1.22.** "**Security Agreement**" shall mean any and all agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract or otherwise creating, evidencing, governing or representing a security interest of Lender in the Collateral securing the Secured Obligations, including, but not limited to any Collateral Security Agreement, Security Instrument, or Ownership Interest Pledge Agreement, as applicable. The term shall refer to all Security Agreements both individually and collectively.

**1.23.** "**Security Instrument(s)**" shall mean any and all agreements of even date herewith that secure the Real Property Collateral, including but not limited to any (i) Deeds of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement, (ii) Mortgages, Assignment of Leases and Rents, Fixture Filing, and Security Agreement, (iii) Deeds to Secure Debt, Assignment of Leases and Rents, Fixture Filing, and Security Agreement, (iv) Security Deeds, Assignment of Leases and Rents, Fixture Filing, and Security Agreement, and (v) Mortgages.

**1.24.** "**Tenant Affiliate**" shall mean any occupant of the Real Property Collateral, other than Borrower, that is directly or indirectly controlling, controlled by or under common control with, the Borrower.

Capitalized terms not otherwise defined shall have their respective meanings as defined in the Loan Documents.

## 2. GENERAL.

**2.1.** **Amount and Purpose**. In reliance on Borrower's representations and warranties, and subject to the terms and conditions in this Agreement and in the Loan Documents, Lender agrees to make the Loan to Borrower on the terms and conditions set forth in the Note, this Agreement and the other Loan Documents.

---

3

Val-Chris00178 Val-Chris00178

**2.2. Payment.** Borrower shall repay the Loan in accordance with the provisions of the Note. The principal balance outstanding under the Note shall be due and payable in full on the Maturity Date.

**2.3. Loan Documentation and Security.** Borrower shall execute and acknowledge, or obtain the execution and acknowledgment of, and deliver concurrently with this Agreement, the Loan Documents and other documents signed in connection with this Agreement. Any reference to the Loan Documents shall refer to such documents as they may be amended, renewed, or extended from time to time with the written approval of Lender. All of the Loan Documents shall be in form and substance satisfactory to Lender and shall include such consents from third parties as Lender deems necessary or appropriate.

**2.4. Creation of Security Interest: Collateral.** For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and for the purpose of securing the full and timely payment and performance of the Secured Obligations for the benefit of Lender, Borrower hereby irrevocably and unconditionally grants, transfers, bargains, conveys and assigns to the Lender a continuing general, lien on, and security interest in, all the Borrower's estate, right, title, and interest that the Borrower now has or may later acquire in and to the following, which shall be collectively referred to as the "Collateral":

    **2.4.1. Real Property Collateral.** All Real Property Collateral.

    **2.4.2. Personal Property Collateral.** All Personal Property Collateral.

    **2.4.3. Borrower Funds.** All of Borrower's interest in and to the proceeds of the Secured Obligations, whether disbursed or not; all present and future monetary deposits given by Borrower to any public or private utility with respect to utility services furnished to the Real Property Collateral; all Lender Retained Funds; and all accounts maintained by the Borrower with Lender or any subsidiary or affiliate of Lender, including, without limitation, any accounts established in connection with the Secured Obligations regardless of whether or not such accounts are with Lender;

    **2.4.4. Lender Retained Funds.** The Lender Retained Funds shall be subject to the sole and absolute control of Lender during the term of this Agreement. Borrower shall execute such documents and take such other action as may be requested by Lender to ensure in Lender such sole and absolute control. Borrower shall have no right to the Lender Retained Funds except as provided in this Agreement and the Note. Upon the maturity of the Note, any remaining funds in the Lender Retained Funds shall be credited against amounts due under the Note. Upon the occurrence of an Event of Default hereunder, Lender shall have (i) the right to withdraw all or any portion of the Lender Retained Funds and apply the Lender Retained Funds against the amounts owing under the Note, or any other Loan Document in such order of priority as Lender may determine; (ii) all rights and remedies of a secured party under the Uniform Commercial Code; or (iii) the right to exercise all remedies under the Loan Documents or otherwise available in law or in equity. Unless an agreement is made in writing or applicable law requires interest to be paid on the Lender Retained Funds, Lender shall not be required to pay Borrower any interest or earnings on the Lender Retained Funds.

    **2.4.5. Additional Property.** Any additional personal property otherwise set forth in the Loan Documents;

    **2.4.6. Proceeds.** All proceeds of, supporting obligations for, additions and accretions to, substitutions and replacements for, and changes in any of the Collateral described in this Agreement.

**2.5. Secured Obligations.** Borrower grants a security interest in the Collateral for the purpose of securing the following Secured Obligations:

    **2.5.1. Notes.** Payment of all obligations at any time under any and all Notes.

    **2.5.2. Loan Documents.** Payment and/or performance of each and every other obligation of Borrower under the Loan Documents;

    **2.5.3. Related Loan Documents.** Payment and/or performance of each covenant and obligation on the part of Borrower or its affiliates to be performed pursuant to any and all Loan Documents that have been or may be executed by Borrower or its affiliates evidencing or securing one or more present or future loans by Lender or its affiliates to Borrower or its affiliates (each a "Related Loan," and collectively, the "Related Loans"), whether now existing or made in the future, together

---

4

Val-Chris00179
Val-Chris00179

with any and all modifications, extensions and renewals thereof; provided, however, that nothing contained herein shall be construed as imposing an obligation upon Lender, or as evidencing Lender's intention, to make any Related Loan to Borrower or its affiliates;

   2.5.4. **Future Obligations.** Payment to Lender of all future advances, Indebtedness and further sums and/or performance of such further obligations as Borrower may undertake to pay and/or perform (whether as principal, surety or guarantor) for the benefit of Lender, its successors and assigns, (it being contemplated by Borrower and Lender that Borrower may hereafter become indebted to Lender in such further sum or sums), when such borrower and/or obligations are evidenced by a written instrument reciting that it or they are secured by this Agreement and a related Security Instrument or Security Agreement; and

   2.5.5. **Modifications and Payments.** Payment and performance of all modifications, amendments, extensions, and renewals, however evidenced, of any of the Secured Obligations.

2.6. **Application of Payments.** Except as otherwise expressly provided by Governmental Requirements or any other provision of the Loan Documents, all payments received by Lender from Borrower under the Loan Documents shall be applied by Lender in the following order: (a) costs, fees, charges, and advances paid or incurred by Lender or payable to Lender and interest thereon under any provision of this Agreement, the Note, the Security Agreement, or any other Loan Documents, in such order as Lender, in its sole and absolute discretion, elects, (b) interest payable under the Note, and (c) principal under the Note.

2.7. **Termination.** This Agreement shall terminate following the repayment in full of all amounts due under the Note, this Agreement and any other documents evidencing the Loan, so long as no written claim has been made hereunder prior to such expiration date.

3. **BORROWER'S REPRESENTATIONS AND WARRANTIES.** To induce Lender to make the Loan, Borrower represents and warrants as follows, which representations and warranties shall be true and correct as of the execution of this Agreement and shall survive the execution and delivery of the Loan Documents:

3.1. **Capacity.** Borrower and the individuals executing Loan Documents on Borrower's behalf have the full power, authority, and legal right to execute and deliver, and to perform and observe the provisions of this Agreement, the other Loan Documents, and any other document, agreement, certificate, or instrument executed in connection with the Loan, and to carry out the contemplated transactions. All signatures of Borrower and Guarantor, and the individuals executing Loan Documents on their respective behalf, are genuine.

3.2. **Authority and Enforceability.** Borrower's execution, delivery, and performance of this Agreement, the other Loan Documents, and any other document, agreement, certificate, or instrument executed in connection with the Loan, have been duly authorized by all necessary corporate or other business entity action and do not and shall not require any registration with, consent, or approval of, notice to, or any action by any Person or Governmental Authority. Borrower has obtained or will obtain all approvals necessary for Borrower to comply with the Loan Documents. This Agreement, the Note, and the other Loan Documents executed in connection with the Loan, when executed and delivered by Borrower, shall constitute the legal, valid, binding, and joint and several obligations of Borrower enforceable in accordance with their respective terms.

3.3. **Compliance with Other Instruments.** The execution and delivery of this Agreement and the other Loan Documents, and compliance with their respective terms, and the issuance of the Note and other Loan Documents as contemplated in this Agreement, shall not result in a breach of any of the terms or conditions of, or result in the imposition of, any lien, charge, or encumbrance (except as created by this Agreement, the Security Agreement and the other Loan Documents) on any Collateral, or constitute a default (with due notice or lapse of time or both) or result in an occurrence of an event for which any holder

5

© Lightning Docs™; All Rights Reserved.
Loan and Security Agreement      Loan No. ▉

v188

Borrower's Initials: _____

Val-Chris00180

or holders of indebtedness may declare the same due and payable under, any indenture, agreement, order, judgment, or instrument to which Borrower is a party or by which Borrower or its properties may be bound or affected.

**3.4.** **Compliance with Law.** The execution and delivery of this Agreement, the Note, and the other Loan Documents, or any other document, agreement, certificate, or instrument to which Borrower is bound in connection with the Loan, do not conflict with, result in a breach or default under, or create any lien or charge under any provision of any Governmental Requirements to which it is subject and shall not violate any of the Governmental Requirements.

**3.5.** **Adverse Events.** Since the date of the financial statements delivered to Lender before execution of this Agreement, neither the condition (financial or otherwise) nor the business of Borrower and the Collateral have been materially adversely affected in any way.

**3.6.** **Litigation.** There are no actions, suits, investigations, or proceedings pending or, to Borrower's knowledge after due inquiry and investigation, threatened against or affecting Borrower at law or in equity, before or by any Person or Governmental Authority, that, if adversely determined, would have a material adverse effect on the business, properties, or condition (financial or otherwise) of Borrower or on the validity or enforceability of this Agreement, any of the other Loan Documents, or the ability of Borrower to perform under any of the Loan Documents.

**3.7.** **No Untrue Statements.** All statements, representations, and warranties made by Borrower in this Agreement or any other Loan Document and any other agreement, document, certificate, or instrument previously furnished or to be furnished by Borrower to Lender under the Loan Documents (a) are and shall be true, correct, and complete in all material respects at the time they were made and as of the execution of this Agreement, (b) do not and shall not contain any untrue statement of a material fact, and (c) do not and shall not omit to state a material fact necessary to make the information in them neither misleading nor incomplete. Borrower understands that all such statements, representations, and warranties shall be deemed to have been relied on by Lender as a material inducement to make the Loan.

**3.8.** **Policies of Insurance.** Each copy of the insurance policies relating to the Collateral delivered to Lender by Borrower (a) is a true, correct, and complete copy of the respective original policy in effect on the date of this Agreement, and no amendments or modifications of said documents or instruments not included in such copies have been made, and (b) has not been terminated and is in full force and effect. Borrower is not in default in the observance or performance of its material obligations under said documents or instruments and Borrower has done all things required to be done as of the date of this Agreement to keep unimpaired its rights thereunder.

**3.9.** **Financial Statements.** All financial statements furnished to Lender are true and correct in all material respects, are prepared in accordance with generally accepted accounting principles, and do not omit any material fact the omission of which makes such statement or statements misleading. There are no facts that have not been disclosed to Lender by Borrower in writing that materially or adversely affect or could potentially in the future affect the Collateral or the business prospects, profits, or condition (financial or otherwise) of Borrower or any Guarantor or Borrower's abilities to perform the Secured Obligations and pay the Indebtedness.

**3.10.** **Taxes.** Borrower has filed or caused to be filed all tax returns that are required to be filed by Borrower under the Governmental Requirements of each Governmental Authority with taxing power over Borrower, and Borrower has paid, or made provision for the payment of, all taxes, assessments, fees, Impositions (as defined in the Security Instrument), and other governmental charges that have or may have become due under said returns, or otherwise, or under any assessment received by Borrower except that such taxes, if any, as are being contested in good faith and as to which adequate reserves (determined in accordance with generally accepted accounting principles) have been provided.

**3.11.** **Further Acts.** Borrower shall, at its sole cost and expense, and without expense to Lender, do, execute, acknowledge, and deliver all and every such further acts, deeds, conveyances, deeds of trust, mortgages, assignments, notices of assignments, transfers, and assurances as Lender shall from time to time

---

6

© Lightning Docs™; All Rights Reserved.
Loan and Security Agreement          Loan No. ▇

v188

Borrower's Initials: _____

Val-Chris00181
Val-Chris00181

require, for the purpose of better assuring, conveying, assigning, transferring, pledging, mortgaging, warranting, and confirming to Lender the Collateral and rights, and as to Lender the security interest, conveyed or assigned by this Agreement or intended now or later so to be, or for carrying out the intention or facilitating the performance of the terms of this Agreement, or for filing, registering, or recording this Agreement and, on demand, shall execute and deliver, and authorizes Lender to execute in the name of Borrower, to the extent it may lawfully do so, one or more financing statements, chattel mortgages, or comparable security instruments, to evidence more effectively the lien of Lender on the Collateral.

3.12.   **Filing Fees.**   Borrower shall pay all filing, registration, or recording fees, all Governmental Authority stamp taxes and other fees, taxes, duties, imposts, assessments, and all other charges incident to, arising from, or in connection with the preparation, execution, delivery, and enforcement of the Note, this Agreement, the other Loan Documents, or any instrument of further assurance.

3.13.   **Entity Compliance.**   As long as any part of the Secured Obligation is owed by Borrower, Borrower, if a corporation, limited liability company, partnership, or trust shall do all things necessary to preserve and keep in full force and effect its existence, franchises, rights, and privileges as such entity under the laws of the state of its incorporation or formation, and shall comply with all Governmental Requirements of any Governmental Authority applicable to Borrower or to any Collateral or any part of it, and Borrower shall qualify and remain in good standing in each jurisdiction where it is required to be so under any applicable Governmental Requirement.

3.14.   **Improper Financial Transactions.**

3.14.1. Borrower is, and shall remain at all times, in full compliance with all applicable laws and regulations of the United States of America that prohibit, regulate or restrict financial transactions, and any amendments or successors thereto and any applicable regulations promulgated thereunder (collectively, the "Financial Control Laws"), including but not limited to those related to money laundering offenses and related compliance and reporting requirements (including any money laundering offenses prohibited under the Money Laundering Control Act, 18 U.S.C. Section 1956 and 1957 and the Bank Secrecy Act, 31 U.S.C. Sections 5311 et seq.) and the Foreign Assets Control Regulations, 31 C.F.R. Section 500 et seq.

3.14.2. Borrower represents and warrants that: Borrower is not a Barred Person (hereinafter defined); Borrower is not owned or controlled, directly or indirectly, by any Barred Person; and Borrower is not acting, directly or indirectly, for or on behalf of any Barred Person.

3.14.3. Borrower represents and warrants that it understands and has been advised by legal counsel on the requirements of the Financial Control Laws.

3.14.4. Under any provision of the Loan Documents where Lender shall have the right to approve or consent to any particular action, including, without limitation any (A) sale, transfer, assignment of any Collateral, or any direct or indirect ownership interest in Borrower, (B) leasing of any Collateral, or any portion thereof, or (C) incurring any additional financing secured by the Collateral, or any portion thereof, or by any direct or indirect ownership interest in Borrower, Lender shall have the right to withhold such approval or consent, in its sole discretion.

3.14.5. Borrower covenants and agrees that it will upon request provide Lender with (or cooperate with Lender in obtaining) information required by Lender for purposes of complying with any Financial Control Laws. As used in this Agreement, the term "Barred Person" shall mean (A) any person, group or entity named as a "Specially Designated National and Blocked Person" or as a person who commits, threatens to commit, supports, or is associated with terrorism as designated by the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC"), (B) any person, group or entity named in the lists maintained by the United States Department of Commerce (Denied Persons and Entities), (C) any government or citizen of any country that is subject to a United States Embargo identified in regulations promulgated by OFAC, and (D) any person, group or entity named as a denied or blocked person or terrorist in any other list maintained by any agency of the United States government.

---

© Lightning Docs™; All Rights Reserved.
Loan and Security Agreement        Loan No. ▮▮▮

v188

Borrower's Initials: _CHG_

Val-Chris00182
Val-Chris00182

**3.15.** **Representation on Use of Proceeds.** Borrower represents and warrants to Lender that the proceeds of the Loan will be used solely for business, commercial investment, or similar purposes, and that no portion of it will be used for personal, family, or household purposes.

**3.16.** **Made or Arranged by a Real Estate Broker.** Borrower acknowledges that this Loan was made or arranged by a licensed California Real Estate Broker and that the licensee's participation was a material factor in consummating this Loan.

**3.17.** **Made or Arranged by a California Finance Lender.** Borrower acknowledges that this Loan was made or arranged by a licensed California Finance Lender and that the licensee's participation was a material factor in consummating this Loan.

**3.18.** **Brokerage Fees.** Borrower represents and warrants to Lender that Borrower has not dealt with any Person, other than the parties identified in the final settlement statement, who are or may be entitled to any finder's fee, brokerage commission, loan commission, or other sum in connection with the execution of the Loan Documents, the consummation of the transactions contemplated by the Loan Documents, or the making of the Loan by Lender to Borrower, and Borrower indemnifies and agrees to hold Lender harmless from and against any and all loss, liability, or expense, including court costs and Attorneys' Fees, that Lender may suffer or sustain if such warranty or representation proves inaccurate in whole or in part. The provisions of this Section shall survive the expiration and termination of this Agreement and the repayment of the Indebtedness.

**3.19.** **Perfection and Priority of Security Interest.** Borrower represents and warrants that unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any security agreements, or permitted the filing or attachment of any security interests on or affecting any of the Collateral directly or indirectly securing repayment of the Loan, that would be prior or that may in any way be superior to Lender's security interests and rights in and to the Collateral.

**3.20.** **Title to Property.** Borrower represents and warrants that Borrower is the sole owner of and has good marketable title to the fee interest in the Collateral, free from any lien or encumbrance of any kind whatsoever.

**4.** **INSURANCE.** Lender's obligation to make the Loan and perform its duties under this Agreement shall be subject to the full and complete satisfaction of the following conditions precedent:

**4.1.** **Casualty Insurance.** Borrower shall at all times keep the Collateral insured for the benefit of Lender as follows, despite Governmental Requirements that may detrimentally affect Borrower's ability to obtain or may materially increase the cost of such insurance coverage:

**4.1.1.** Against damage or loss by fire and such other hazards (including lightning, windstorm, hail, explosion, riot, acts of striking employees, civil commotion, vandalism, malicious mischief, aircraft, vehicle, and smoke) as are covered by the broadest form of extended coverage endorsement available from time to time, in an amount not less than the Full Insurable Value (as defined below) of the Collateral, with a deductible amount not to exceed an amount satisfactory to Lender; windstorm coverage is included under the extended coverage endorsement of most hazard policies, but in some states it may be excluded. If the hazard policy excludes the windstorm/hail endorsement a separate windstorm policy must be provided. The coverage amounts must equal that of the hazard policy;

**4.1.2.** Rent loss or business interruption or use and occupancy insurance on such basis and in such amounts and with such deductibles as are satisfactory to Lender;

**4.1.3.** Against damage or loss by flood if the Collateral is located in an area identified by the Secretary of Housing and Urban Development or any successor or other appropriate authority (governmental or private) as an area having special flood hazards and in which flood insurance is available under the National Flood Insurance Act of 1968 or the Flood Disaster Protection Act of 1973, as amended, modified, supplemented, or replaced from time to time, on such basis and in such amounts as Lender may require;

---

8

© Lightning Docs™; All Rights Reserved.
Loan and Security Agreement          Loan No. ▮

v188

Borrower's Initials: _____

Val-Chris00183

**4.1.4.** Against damage or loss from (a) sprinkler system leakage and (b) boilers, boiler tanks, heating and air conditioning equipment, pressure vessels, auxiliary piping, and similar apparatus, on such basis and in such amounts as Lender may require;

**4.1.5.** During any alteration, construction, or replacement of Improvements, or any substantial portion of it, a Builder's All Risk policy with extended coverage with course of construction and completed value endorsements and such other endorsements as may be required by Lender, including stipulations that coverage will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender, for an amount at least equal to the Full Insurable Value of the Improvements, and workers' compensation, in statutory amounts, with provision for replacement with the coverage described herein, without gaps or lapsed coverage, for any completed portion of the Improvements; and

**4.1.6.** If applicable, against damage or loss by earthquake, in an amount and with a deductible satisfactory to Lender, if such insurance is required by Lender in the exercise of its business judgment in light of the commercial real estate practices existing at the time the insurance is issued and in the County where the Collateral is located.

**4.2.** **Liability Insurance.** Borrower shall procure and maintain workers' compensation insurance for Borrower's employees, public liability and comprehensive general liability insurance (owner's and if required by Lender, general contractor's) covering Borrower, and Lender against claims for bodily injury or death or for damage occurring in, on, about, or resulting from the Real Property Collateral, or any street, drive, sidewalk, curb, or passageway adjacent to it, in standard form and with such insurance company or companies and in an amount of at least as Lender may require, which insurance shall include completed operations, product liability, and blanket contractual liability coverage that insures contractual liability under the indemnifications set forth in this Agreement and the Loan Documents (but such coverage or its amount shall in no way limit such indemnification).

**4.3.** **Other Insurance.** Borrower shall procure and maintain such other insurance or such additional amounts of insurance, covering Borrower or the Collateral, as (a) may be required by the terms of any construction contract for construction on the Collateral or by any Governmental Authority, (b) may be specified in any other Loan Documents, or (c) may be required by Lender from time to time.

**4.4.** **Form of Policies.** All insurance policies required under this Section shall be fully paid for and nonassessable. The policies shall contain such provisions, endorsements, and expiration dates as Lender from time to time reasonably requests and shall be in such form and amounts, and be issued by such insurance companies doing business in the State where the Collateral is located, as Lender shall approve in Lender's sole and absolute discretion. Unless otherwise expressly approved in writing by Lender, each insurer shall have a claims-paying or financial strength rating that satisfies the Insurance Rating Requirements. (All policies shall (a) contain a waiver of subrogation endorsement; (b) provide that the policy will not lapse or be canceled, amended, or materially altered (including by reduction in the scope or limits of coverage) without at least 30 days prior written notice to Lender; (c) with the exception of the comprehensive general liability policy, contain a mortgagee's endorsement (438 BFU Endorsement or equivalent), and name Lender as insured; and (d) include such deductibles as Lender may approve. If a policy required under this Section contains a co-insurance or overage clause, the policy shall include a stipulated value or agreed amount endorsement acceptable to Lender.

**4.5.** **Duplicate Originals or Certificates.** Duplicate original policies evidencing the insurance required herein and any additional insurance that may be purchased on the Collateral by or on behalf of Borrower shall be deposited with and held by Lender and, in addition, Borrower shall deliver to Lender (a) receipts evidencing payment of all premiums on the policies and (b) duplicate original renewal policies or a binder with evidence satisfactory to Lender of payment of all premiums at least 30 days before the policy expires. In lieu of the duplicate original policies to be delivered to Lender provided for herein, Borrower may deliver an underlier of any blanket policy, and Borrower may also deliver original certificates from the issuing insurance company, evidencing that such policies are in full force and effect and containing information

9

Val-Chris00184

that, in Lender's reasonable judgment, is sufficient to allow Lender to ascertain whether such policies comply with the requirements herein.

**4.6. Increased Coverage.** If Lender determines that the limits of any insurance carried by Borrower are inadequate or that additional coverage is required, Borrower shall, within 10 days after written notice from Lender, procure such additional coverage as Lender may require in Lender's sole and absolute discretion.

**4.7. No Separate Insurance.** Borrower shall not carry separate or additional insurance concurrent in form or contributing in the event of loss with that required herein unless endorsed in favor of Lender as required by this Section and otherwise approved by Lender in all respects.

**4.8. Transfer of Title.** In the event of foreclosure of any Collateral or other transfer of title or assignment of any Collateral in extinguishment, in whole or in part, of the Secured Obligations and the Indebtedness, all right, title, and interest of Borrower in and to all insurance policies required herein or otherwise then in force with respect to the Collateral and all proceeds payable under, and unearned premiums on, such policies shall immediately vest in the purchaser or other transferee of the Collateral.

**4.9. Replacement Cost.** For purposes of this Agreement, the term "Full Insurable Value" means the actual cost of replacing the Collateral in question, without allowance for depreciation, as calculated from time to time (but not more often than once every calendar year) by the insurance company or companies holding such insurance or, at Lender's request, by appraisal made by an appraiser, engineer, architect, or contractor proposed by Borrower and approved by said insurance company or companies and Lender. Borrower shall pay the cost of such appraisal.

**4.10. No Warranty.** No approval by Lender of any insurer may be construed to be a representation, certification, or warranty of its solvency and no approval by Lender as to the amount, type, or form of any insurance may be construed to be a representation, certification, or warranty of its sufficiency.

**4.11. Lender's Right to Obtain.** Borrower shall deliver to Lender original policies or certificates evidencing such insurance at least 30 days before the existing policies expire. If any such policy is not so delivered to Lender or if any such policy is canceled, whether or not Lender has the policy in its possession, and no reinstatement or replacement policy is received before termination of insurance, Lender, without notice to or demand on Borrower, may (but is not obligated to) obtain such insurance insuring only Lender with such company as Lender may deem satisfactory, and pay the premium for such policies, and the amount of any premium so paid shall be charged to and promptly paid by Borrower or, at Lender's option, may be added to the Indebtedness. Borrower acknowledges that, if Lender obtains insurance, it is for the sole benefit of Lender, and Borrower shall not rely on any insurance obtained by Lender to protect Borrower in any way.

**4.12. Duty to Restore After Casualty.** If any act or occurrence of any kind or nature (including any casualty for which insurance was not obtained or obtainable) results in damage to or loss or destruction of the Collateral, Borrower shall immediately give notice of such loss or damage to Lender and, if Lender so instructs, shall promptly, at Borrower's sole cost and expense, regardless of whether any insurance proceeds will be sufficient for the purpose, commence and continue diligently to completion to restore, repair, replace, and rebuild the Collateral as nearly as possible to its value, condition, and character immediately before the damage, loss, or destruction.

## 5. BORROWER COVENANTS AND REPORTING REQUIREMENTS.

### 5.1. Financial Statements.

**5.1.1. Borrower's Financial Statements.** Borrower shall furnish to Lender the following on receipt of Lender's written request and without expense to Lender: (a) an annual statement of the operation of the Real Property Collateral prepared and certified by Borrower and any Tenant Affiliate, showing in reasonable detail satisfactory to Lender total Rents (as defined in the Security Instrument) received and total expenses together with an annual balance sheet and profit and loss statement, within 90 days after the

---

10

Val-Chris00185

Val-Chris00185

close of each fiscal year of Borrower and any Tenant Affiliate, beginning with the fiscal year first ending after the date of recordation of the Security Instrument; (b) within 30 days after the end of each calendar quarter (March 31, June 30, September 30, December 31) interim statements of the operation of the Real Property Collateral showing in reasonable detail satisfactory to Lender total Rents and other income and receipts received and total expenses for the previous quarter, certified by Borrower; and (c) copies of Borrower's and any Tenant Affiliate's annual state and federal income tax returns within 30 days after filing them. Borrower shall keep accurate books and records, and allow Lender, its representatives and agents, on notice, at any time during normal business hours, access to such books and records regarding acquisition, construction, development, and operations of the Real Property Collateral, including any supporting or related vouchers or papers, shall allow Lender to make extracts or copies of any such papers, and shall furnish to Lender and its agents convenient facilities for the audit of any such statements, books, and records.

    **5.1.2. Recordkeeping.** Borrower shall keep adequate records and books of account in accordance with generally accepted accounting principles and practices applied consistently throughout the period reported and shall permit Lender, by its agents, accountants, and attorneys, to examine Borrower's records and books of account and to discuss the affairs, finances, and accounts of Borrower with the officers of Borrower, at such reasonable times as Lender may request.

    **5.1.3. Additional Financial Statements.** Except to the extent already required herein, Borrower, its controlling shareholders, all Tenant Affiliates and all Guarantors of the Indebtedness, if any, shall deliver to Lender with reasonable promptness after the close of their respective fiscal years a balance sheet and profit and loss statement, prepared by the principal of the Borrower or an independent certified public accountant satisfactory to Lender, setting forth in each case, in comparative form, figures for the preceding year, which statements shall be accompanied by the unqualified opinion of the principal of the Borrower or such accountant as to their accuracy. Throughout the term of the Loan, Borrower, any Tenant Affiliate and any Guarantor shall deliver, with reasonable promptness, to Lender such other information with respect to Borrower, Tenant Affiliate or Guarantor as Lender may from time to time request. All financial statements of Borrower, Tenant Affiliate or Guarantor shall be prepared using reasonably accepted accounting practices applied on a consistent basis and shall be delivered in duplicate. Documents and information submitted by Borrower to Lender are submitted confidentially, and Lender shall not disclose them to third parties and shall limit access to them to what is necessary to service the Loan, accomplish the normal administrative, accounting, tax-reporting, and other necessary functions, to sell all or any part of the Loan and to report such information as required to the Comptroller of the Currency, the Federal Deposit Insurance Corporation, the Internal Revenue Service, and similar entities.

    **5.1.4. No Waiver of Default or Rights.** Lender's exercise of any right or remedy provided for herein shall not constitute a waiver of, or operate to cure, any default by Borrower under this Agreement, or preclude any other right or remedy that is otherwise available to Lender under this Agreement or Governmental Requirements.

**5.2. Borrower's Obligation to Notify Lender.**

    **5.2.1. Bankruptcy, Insolvency, Transfer, or Encumbrance.** Borrower shall notify Lender in writing, at or before the time of the occurrence of any Event of Default, of such event and shall promptly furnish Lender with any and all information on such event that Lender may request.

    **5.2.2. Government Notice.** Borrower shall give immediate written notice to Lender of any notice, proceeding or inquiry by any Governmental Authority. Borrower shall provide such notice to Lender within five (5) days of Borrower's knowledge, constructive or actual, of any such notice, proceeding or inquiry by any Government Authority.

**5.3. Funds for Taxes, Insurance, and other Impositions.** If Borrower is in default under this Agreement or any of the Loan Documents, regardless of whether the default has been cured, then Lender may at any subsequent time, at its option to be exercised on 30 days written notice to Borrower, require Borrower to deposit with Lender or its designee, at the time of each payment of an installment of interest

© Lightning Docs™; All Rights Reserved.
Loan and Security Agreement    Loan No. ▮

v188

Borrower's Initials: _____

Val-Chris00186

or principal under the Note, an additional amount sufficient to discharge the Impositions (as defined in the Security Instrument) as they become due. The calculation of the amount payable and of the fractional part of it to be deposited with Lender shall be made by Lender in its sole and absolute discretion. These amounts shall be held by Lender or its designee not in trust and not as agent of Borrower and shall not bear interest, and shall be applied to the payment of any of the Impositions (as defined in the Security Instrument) under the Loan Documents in such order or priority as Lender shall determine. If at any time within 30 days before the due date of these obligations the amounts then on deposit shall be insufficient to pay the obligations under the Note and this Agreement in full, Borrower shall deposit the amount of the deficiency with Lender within 10 days after Lender's demand. If the amounts deposited are in excess of the actual obligations for which they were deposited, Lender may refund any such excess, or, at its option, may hold the excess in a reserve account, not in trust and not bearing interest, and reduce proportionately the required monthly deposits for the ensuing year. Nothing in this Section shall be deemed to affect any right or remedy of Lender under any other provision of this Agreement or under any statute or rule of law to pay any such amount and to add the amount so paid to the Indebtedness secured by the Security Instrument. Lender shall have no obligation to pay insurance premiums or taxes except to the extent the fund established under this Section is sufficient to pay such premiums or taxes, to obtain insurance, or to notify Borrower of any matters relative to the insurance or taxes for which the fund is established under this Section.

Lender or its designee shall hold all amounts so deposited as additional security for the sums secured by the Security Instrument. Lender may, in its sole and absolute discretion and without regard to the adequacy of its security under the Security Instrument, apply such amounts or any portion of it to any Indebtedness secured by the Security Instrument, and such application shall not be construed to cure or waive any default or notice of default under this Agreement, or any other Loan Document.

If Lender requires deposits to be made under this Section, Borrower shall deliver to Lender all tax bills, bond and assessment statements, statements for insurance premiums, and statements for any other obligations referred to above as soon as Borrower receives such documents.

If Lender sells or assigns the Loan, Lender shall have the right to transfer all amounts deposited under this Section to the purchaser or assignee. After such a transfer, Lender shall be relieved and have no further liability under this Agreement for the application of such deposits, and Borrower shall look solely to such purchaser or assignee for such application and for all responsibility relating to such deposits.

**5.4.** **Compliance with Law.** Borrower shall: (a) maintain a yearly accounting cycle; (b) maintain in full force and effect all material licenses, permits, governmental authorizations, bonds, franchises, leases, trademarks, patents, contracts, and other rights necessary or desirable to the conduct of its business, or related to the Collateral; (c) continue in, and limit its operations to, substantially the same general lines of business as those presently conducted by it; (d) pay when due all taxes, license fees, and other charges upon the Collateral or upon Borrower's business, property or the income therefrom; and (e) comply with all Governmental Requirements.

**5.5.** **Care of Collateral.** Borrower shall: (a) keep the Collateral in good condition and repair; (b) restore and repair to the equivalent of its original condition all or any part of any Collateral that may be damaged or destroyed, whether or not insurance proceeds are available to cover any part of the cost of such restoration and repair, and regardless of whether Lender permits the use of any insurance proceeds to be used for restoration under this Agreement, Security Instrument, and Collateral Security Agreement; (c) comply with all laws affecting the Collateral or requiring that any alterations, repairs, replacements, or improvements be made thereon; (d) not commit or permit waste on or to any Collateral, or commit, suffer, or permit any act or violation of law to occur on it; (e) not abandon any Collateral; (f) notify Lender in writing of any condition of any Collateral that may have a significant and measurable effect on its market value; (g) do all other things that the character or use of the Collateral may reasonably render necessary to maintain it in the same condition (reasonable wear and tear expected) as existed at the date of this Agreement; (h) at all times warrant and defend Borrower's

---

© Lightning Docs™; All Rights Reserved.
Loan and Security Agreement    Loan No. ███

v188

Borrower's Initials: ___

Val-Chris00187
Val-Chris00187

ownership and possession of the Collateral; and (i) keep the Collateral free from all liens, claims, encumbrances and security interests.

**5.6.** **Transfer of Collateral.** Borrower will not, without obtaining the prior written consent of Lender, transfer or permit any transfer of any Collateral or any part thereof to be made, or any interest therein to be created by way of a sale (except as expressly permitted herein), or by way of a grant of a security interest, or by way of a levy or other judicial process.

**5.7.** **Indemnify Lender.** Borrower shall indemnify and hold the Lender and its successors and assigns harmless from and against any and all losses, cost, expense (including, without limitation Attorneys' Fees, consulting fees and court costs), demand, claim or lawsuit arising out of or related to or in any way connected with or arising out of Borrower's breach of the provisions of this Agreement or any of the other Loan Documents. Lender may commence, appear in, or defend any action or proceeding purporting to affect the rights, duties, or liabilities of the parties to this Agreement, or the Collateral, and Borrower shall pay all of Lender's reasonable costs and expenses so incurred on demand. If Borrower fails to provide such indemnity as the same accrues and as expenses are incurred, the amount not paid shall be added to the principal amount of the Note and bear interest thereon at the same rate then in effect (including any default rate in effect) and shall be secured by the same collateral as securing the Note and Loan Documents. This Section shall survive execution, delivery, performance, and termination of this Agreement and the other Loan Documents.

**5.8.** **Estoppel Certificates.** Within 10 days after Lender's request for such information, Borrower shall execute and deliver to Lender, and to any third party designated by Lender, in recordable form, a certificate of the principal financial or accounting officer of Borrower ("Estoppel Certificate"), dated within 3 days after delivery of such statements, or the date of such request, as the case may be, reciting that the Loan Documents are unmodified and in full force and effect, or that the Loan Documents are in full force and effect as modified and specifying all modifications asserted by Borrower. Such certificate shall also recite the amount of the Indebtedness and cover other matters with respect to the Indebtedness or Secured Obligations as Lender may reasonably require, the date(s) through which payments due on the Indebtedness have been paid and the amount(s) of any payments previously made on the Indebtedness. The certificate shall include a detailed statement of any right of setoff, counterclaim, or other defense that Borrower contends exists against the Indebtedness or the Secured Obligations; a statement that such Person knows of no Event of Default or prospective Event of Default that has occurred and is continuing, or, if any Event of Default or prospective Event of Default has occurred and is continuing, a statement specifying the nature and period of its existence and what action Borrower has taken or proposes to take with respect to such matter; and, except as otherwise specified, a statement that Borrower has fulfilled all Secured Obligations that are required to be fulfilled on or before the date of such certificate.

**5.8.1.** **Failure to Deliver Estoppel Certificate.** If Borrower fails to execute and deliver the Estoppel Certificate within such 10-day period, (a) the Loan Documents shall, as to Borrower, conclusively be deemed to be either in full force and effect, without modification, or in full force and effect, modified in the manner and to the extent specified by Lender, whichever Lender reasonably and in good faith may represent; (b) the Indebtedness shall, as to Borrower, conclusively be deemed to be in the amount specified by Lender and no setoffs, counterclaims, or other defenses exist against the Indebtedness; and (c) Borrower shall conclusively be deemed to have irrevocably constituted and appointed Lender as Borrower's special attorney-in-fact to execute and deliver such certificate to any third party.

**5.8.2.** **Reliance on Estoppel Certificate.** Borrower and Lender expressly agree that any certificate executed and delivered by Borrower, or any representation in lieu of a certificate made by Lender as provided for above, may be relied on by any prospective purchaser or any prospective assignee of any interest of Lender in the Note and other Indebtedness secured by the Security Instrument or in the Real Property Collateral, and by any other Person, without independent investigation or examination, to verify the accuracy, reasonableness, or good faith of the recitals in the certificate or representation.

---

13

© Lightning Docs™; All Rights Reserved.
Loan and Security Agreement     Loan No. ▮

v188

Borrower's Initials: _EC_

Val-Chris00188
Val-Chris00188

**5.9.    Appraisal and Inspections.** In addition to any other right to require an appraisal or inspection of the Real Property Collateral provided in the Loan Documents, Lender may from time to time, at Borrower's expense, order an appraisal or inspection of any Real Property Collateral where:

**5.9.1.** There has been a change in any market conditions or other circumstances that in Lender's sole and absolute discretion would make a prior appraisal no longer accurate;

**5.9.2.** The occurrence of any fact or circumstance which in Lender's belief would alter the value or prior evaluated condition of any Real Property Collateral.

## 6.    ENVIRONMENTAL MATTERS.

**6.1.    Environmental Indemnity Agreement.** Concurrently with the execution of this Agreement, Borrower shall execute and deliver to Lender a separate Environmental Indemnity Agreement ("Environmental Indemnity") in form and substance satisfactory to Lender, pursuant to which Borrower will indemnify, defend, and hold Lender harmless from and against any and all losses, damages, claims, costs, and expenses incurred by Lender as a result of the existence or alleged existence of hazardous or toxic substances on, under, or about the Real Property Collateral in violation of Environmental Laws as provided in the Environmental Indemnity. The obligations of the Borrower under the Environmental Indemnity shall not be secured by the Security Instrument.

**6.2.    Borrower's Representations and Warranties.** Borrower represents and warrants to Lender that each and every representation and warranty in the Environmental Indemnity (collectively "Environmental Representations") is true and correct.

**6.3.    Survival of Representations and Warranties.** The Environmental Representations shall be continuing and shall be true and correct from the date of this Agreement. The provisions of this Section shall survive the expiration and termination of this Agreement and the repayment of the Indebtedness.

**6.4.    Notice to Lender.** Borrower shall give prompt written notice to Lender of:

**6.4.1.** Any proceeding or inquiry by any Governmental Authority regarding the presence or threatened presence of any Hazardous Materials on the Real Property Collateral;

**6.4.2.** All claims made or threatened by any third party against Borrower or the Real Property Collateral relating to any loss or injury resulting from any Hazardous Materials;

**6.4.3.** Any notice given to Borrower under Environmental Laws; and

**6.4.4.** Discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Real Property Collateral that could cause it or any part of it to be subject to any restrictions on the ownership, occupancy, transferability, or use of the Real Property Collateral under any Environmental Laws.

**6.5.    Lender's Right to Join Legal Actions.** Lender shall have the right, at its option, but at Borrower's sole cost and expense, to join and participate in, as a party if it so elects, any legal proceedings or actions initiated by or against Borrower or the Real Property Collateral in connection with any Environmental Laws.

## 7.    DEFAULT AND REMEDIES.

**7.1.    Event of Default.** The occurrence of any of the following events shall constitute an Event of Default under this Agreement:

**7.1.1.    Payment of Indebtedness.** Borrower fails to pay any installment of interest and/or principal under the Note or any other Indebtedness when due and such failure continues for more than ten (10) days after the date such payment was due and payable whether on maturity, the date stipulated in any Loan Document, by acceleration, or otherwise.

**7.1.2.    Performance of Obligations.** The failure, refusal, or neglect to perform and discharge fully and timely any of the Secured Obligations as and when required.

---

14

© Lightning Docs™; All Rights Reserved.
Loan and Security Agreement          Loan No ▮▮▮▮
v188
Borrower's Initials: ___

Val-Chris00189
Val-Chris00189

**7.1.3.** **Judgment.** If any final judgment, order, or decree is rendered against Borrower or a Guarantor and is not paid or executed on, or is not stayed by perfection of an appeal or other appropriate action, such as being bonded, or is not otherwise satisfied or disposed of to Lender's satisfaction within 30 days after entry of the judgment, order, or decree.

**7.1.4.** **Voluntary Bankruptcy.** If Borrower or its affiliates, or any Guarantor or its affiliates (a) seeks entry of an order for relief as a debtor in a proceeding under the Bankruptcy Code; (b) seeks, consents to, or does not contest the appointment of a receiver or trustee for itself or for all or any part of its property; (c) files a petition seeking relief under the bankruptcy, arrangement, reorganization, or other debtor relief laws of the United States or any state or any other competent jurisdiction; (d) makes a general assignment for the benefit of its creditors; or (e) states in writing its inability to pay its debts as they mature.

**7.1.5.** **Involuntary Bankruptcy.** If (a) a petition is filed against Borrower or any Guarantor seeking relief under any bankruptcy, arrangement, reorganization, or other debtor relief laws of the United States or any state or other competent jurisdiction; or (b) a court of competent jurisdiction enters an order, judgment, or decree appointing, without the consent of Borrower or any Guarantor, a receiver or trustee for it, or for all or any part of its property; and (c) such petition, order, judgment, or decree is not discharged or stayed within 30 days after its entry.

**7.1.6.** **Foreclosure of Other Liens.** If the holder of any lien or security interest on the Collateral (without implying Lender's consent to the existence, placing, creating, or permitting of any lien or security interest) institutes foreclosure or other proceedings to enforce its remedies thereunder and any such proceedings are not stayed or discharged within 30 days after institution of such foreclosure proceedings.

**7.1.7.** **Sale, Encumbrance, or Other Transfer.** If Borrower (a) sells, gives an option to purchase, exchanges, assigns, conveys, encumbers (including, but not limited to PACE/HERO loans, any loans where payments are collected through property tax assessments, and super-voluntary liens which are deemed to have priority over the lien of the Security Instrument) (other than with a Permitted Encumbrance as defined in the Security Instrument), transfers possession, or alienates all or any portion of the Collateral, or any of Borrower's interest in the Collateral, or suffers its title to, or any interest in, the Collateral to be divested, whether voluntarily or involuntarily; or if there is a sale or transfer of any interests in Borrower; or if Borrower changes or permits to be changed the character or use of the Collateral, or drills or extracts or enters into any lease for the drilling or extracting of oil, gas, or other hydrocarbon substances or any mineral of any kind or character on the Real Property Collateral; or (b) if title to the Collateral becomes subject to any lien or charge, voluntary or involuntary, contractual or statutory, without Lender's prior written consent; or (c) if a junior voluntary or involuntary deed of trust or mortgage lien in favor of another lender encumbers the Real Property Collateral (other than a Permitted Encumbrance) without Lender's express prior written consent thereto, which consent may be withheld in Lender's sole and absolute discretion, then Lender, at Lender's option, may, without prior notice and subject to Applicable Law, declare all sums secured by the Security Instrument, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in the Loan Documents.

**7.1.8.** **Title and Lien Priority.** If Borrower's, or any other pledgor of Collateral, as applicable, title to any or all of the Collateral or Lender's security interest on the Collateral or the status of Lender's lien as a lien and security interest in the priority position indicated in any Security Agreement on any Collateral is endangered in any manner, and Borrower fails to cure the same on Lender's demand.

**7.1.9.** **Other Defaults.** The occurrence of an Event of Default or any default, as defined or described in the other Loan Documents, or the occurrence of a default on any Indebtedness or Secured Obligations.

**7.1.10.** **Levy on Assets.** A levy on any of the assets of Borrower or any Guarantor, and such levy is not stayed or abated within 30 days after such levy.

**7.1.11.** **Breach of Representations.** The breach of any representation, warranty, or covenant in this Agreement or other Loan Documents.

---

© Lightning Docs™; All Rights Reserved.
Loan and Security Agreement        Loan No. ▮

v188

Borrower's Initials: _C/b_

Val-Chris00190

**7.1.12. Default Under Prior Security Instrument, or Lien.** The failure to pay on a timely basis, or the occurrence of any other default under any note, deed of trust, contract of sale, lien, charge, encumbrance, or security interest encumbering or affecting the Collateral and having priority over the lien of Lender.

**7.1.13. Materially Adverse Event.** The occurrence of any event that in Lender's judgment materially adversely affects (i) the ability of Borrower to perform any of its obligations under this Agreement or under any of the Loan Documents, including, without limitation, the occurrence of any event of dissolution or termination of Borrower, of any member of Borrower, or of any Guarantor; (ii) the business or financial condition of Borrower, or of any member of Borrower, or of any Guarantor; or (iii) the operation or value of the Collateral.

**7.1.14. Violation of Governmental Requirements.** The failure of Borrower, any tenant, or any other occupant of the Real Property Collateral to comply with any Governmental Requirement. Any potential violation by a tenant or other occupant of the Real Property Collateral of any Governmental Requirement is an Event of Default under the terms of this Agreement; and upon the occurrence of any such violation, Lender, at Lender's option, may, without prior notice, declare all Indebtedness, regardless of the stated due date(s), immediately due and payable and may exercise all rights and remedies in this Agreement, and any other Loan Documents.

7.2.  **Remedies.** On the occurrence of an Event of Default, Lender may, in addition to any other remedies that Lender may have under this Agreement or under the Loan Documents or by law, at its option and without prior demand or notice, take any or all of the following actions:

**7.2.1.** The Lender may, without prejudice to any of its other rights under any Loan Document or by Applicable Law, declare all Secured Obligations to be immediately due and payable without presentment, notice of intent to accelerate, representation, demand of payment or protest, which are hereby expressly waived.

**7.2.2.** The obligation of the Lender, if any, to make additional disbursements, advances (including Construction Disbursements), loans or financial accommodations of any kind to the Borrower shall immediately terminate upon the occurrence of an Event of Default.

**7.2.3.** If an Event of Default shall have occurred and be continuing, the Lender may exercise any remedy provided by any or all Security Agreements. In addition, the Lender may exercise in respect of any Collateral, in addition to other rights and remedies provided for herein (or in any Loan Document) or otherwise available to it, all the rights and remedies of a secured party under the applicable Uniform Commercial Code (the "Code") whether or not the Code applies to the affected Collateral, and also may (i) require the Borrower to, and the Borrower hereby agrees that it will at its expense and upon request of the Lender forthwith, assemble all or part of the Collateral as directed by the Lender and make it available to the Lender at a place to be designated by the Lender that is reasonably convenient to both parties and (ii) without notice except as specified below or by Applicable Law, sell the Collateral or any part thereof in one or more lots at public or private sale, at any of the Lender's offices or elsewhere, for cash, on credit, or for future delivery, and upon such other terms as the Lender may deem commercially reasonable. Borrower agrees that, to the extent notice of sale shall be required by law, at least ten (10) days' notice to the Borrower of the time and place of any public sale or the time after which any private sale is to be made shall constitute reasonable notification. The Lender shall not be obligated to make any sale of the Collateral regardless of notice of sale having been given. The Lender may adjourn any public or private sale from time to time by announcement at the time and place fixed therefore, and such sale may, without further notice, be made at the time and place to which it was so adjourned.

**7.2.4.** Unless otherwise required by Applicable Law, all cash proceeds received by the Lender in respect of any sale of, collection from, or other realization upon all or any part of the Collateral may, in the discretion of the Lender, be held by the Lender as collateral for, or then or at any time thereafter applied in whole or in part by the Lender against all or any part of the Secured Obligations in such

© Lightning Docs™; All Rights Reserved.
Loan and Security Agreement          Loan No. ███

v188

Borrower's Initials: _____

Val-Chris00191

order as the Lender shall elect. Any surplus of such cash or cash proceeds held by the Lender and remaining after the full, and final payment of all the Secured Obligations shall be paid over to the Borrower or to such other Person to which the Lender may be required under Applicable Law, or directed by a court of competent jurisdiction, to make payment of such surplus.

7.3.    **Rights and Remedies Cumulative.** All rights and remedies provided for herein or in any other Loan Document are not exclusive, each shall be cumulative and in addition to any and all other rights and remedies existing at law or in equity, and all such remedies shall survive the acceleration of one or more of the Notes. Lender's exercise or partial exercise of, or failure to exercise, any remedy shall not restrict Lender from further exercise of that remedy or any other available remedy. No extension of time for payment or performance of any obligation shall operate to release discharge, modify, change or affect the original liability of Borrower for any obligations, either in whole or in part.

7.4.    **Waiver of Marshalling.** Despite the existence of interests in the Collateral other than that created by the Security Agreements, and despite any other provision of this Agreement, if Borrower defaults in paying the Indebtedness or in performing any Secured Obligations, Lender shall have the right, in Lender's sole and absolute discretion, to establish the order in which the Collateral will be subjected to the remedies provided in this Agreement and Security Agreement and to establish the order in which all or any part of the Indebtedness secured by the Security Agreement is satisfied from the proceeds realized on the exercise of the remedies provided in the Security Agreement. Borrower and any Person who now has or later acquires any interest in the Collateral with actual or constructive notice of this Agreement and/or any Security Agreement waives any and all rights to require a marshaling of assets in connection with the exercise of any of the remedies provided in this Agreement, any Security Agreement or otherwise provided by Governmental Requirements.

7.5.    **Limitations on Borrower During Cure Period.** For any period during which Borrower has an opportunity to cure an Event of Default in accordance with this Agreement, the Note, the Security Agreement or any other Loan Document, Borrower shall not (a) make any distributions to its members and (b) make any expenditures outside the ordinary course of business, except to cure a Default of this Agreement, the Note, the Security Agreement or any other Loan Document.

7.6.    **Limitation of Liability.** No claim may be made by Borrower, or any other Person against Lender or its affiliates, directors, officers, employees, attorneys or agents of any of such Persons for any special, indirect, consequential or punitive damages in respect of any claim for breach of contract or any other theory of liability arising out of or related to the transactions contemplated by this Agreement or any act, omission or event occurring in connection therewith; and Borrower hereby waives, releases and agrees not to sue upon any claim for any such damages, and waives the damages themselves, whether or not accrued and whether or not known or suspected to exist in its favor.

## 8.    GENERAL TERMS.

8.1.    **No Waiver by Lender.** No waiver by Lender of any right or remedy provided by the Loan Documents or Governmental Requirements shall be effective unless such waiver is in writing and signed by authorized officer(s) of Lender. Waiver by Lender of any right or remedy granted to Lender under the Loan Documents or Governmental Requirements as to any transaction or occurrence shall not be deemed a waiver of any future transaction or occurrence. The acceptance of payment of any sum secured by the Collateral after its due date, or the payment by Lender of any Indebtedness or the performance by Lender of any Secured Obligations of Borrower under the Loan Documents, on Borrower's failure to do so, or the addition of any payment so made by Lender to the Indebtedness secured by the Collateral, or the exercise of Lender's right to enter the Real Property Collateral and receive and collect the Rents from it, or the assertion by Lender of any other right or remedy under the Loan Documents, shall not constitute a waiver of Lender's right to require prompt performance of all other Secured Obligations of Borrower under the Loan Documents and payment of the Indebtedness, or to exercise any other right or remedy under the Loan

---

17

© Lightning Docs™; All Rights Reserved.
Loan and Security Agreement        Loan No ▮▮▮▮

v188

Borrower's Initials: _CVC_

Val-Chris00192
Val-Chris00192

Documents for any failure by Borrower to timely and fully pay the Indebtedness and perform its Secured Obligations under the Loan Documents. Lender may waive any right or remedy under the Loan Documents or Governmental Requirements without notice to or consent from Borrower, any Guarantor of the Indebtedness and of the Secured Obligations under the Loan Documents, or any holder or claimant of a lien or other interest in the Collateral that is junior to the lien of Lender, and without incurring liability to Borrower or any other Person by so doing.

8.2. **Successors and Assigns**. This Agreement is made and entered into for the sole protection and benefit of Lender and Borrower and their successors and assigns, and no other Person or Persons shall have any right of action under this Agreement. The terms of this Agreement shall inure to the benefit of the successors and assigns of the parties, provided, however, that the Borrower's interest under this Agreement cannot be assigned or otherwise transferred without the prior consent of Lender. Lender in its sole discretion may transfer this Agreement, and may sell or assign participations or other interests in all or any part of this Agreement, all without notice to or the consent of Borrower.

8.3. **Notice**. Except for any notice required by Governmental Requirements to be given in another manner, (a) all notices required or permitted by the Loan Documents shall be in writing; (b) each notice shall be sent (i) for personal delivery by a delivery service that provides a record of the date of delivery, the individual to whom delivery was made, and the address where delivery was made; (ii) by certified United States mail, postage prepaid, return receipt requested; or (iii) by nationally recognized overnight delivery service, marked for next-business-day delivery; and (c) all notices shall be addressed to the appropriate party at its address as follows or such other addresses as may be designated by notice given in compliance with this provision:

|        |        |
|--------|--------|
| Lender: | Val-Chris Investments Inc<br>2601 Main Street, Suite 400<br>Irvine, California 92614 |
| Borrower: | Daniel P. Higgins<br>2130 Winding Springs Drive<br>League City, Texas 77573 |

Notices will be deemed effective on the earliest of (a) actual receipt; (b) rejection of delivery; or (c) if sent by certified mail, the third day on which regular United States mail delivery service is provided after the day of mailing or, if sent by overnight delivery service, on the next day on which such service makes next-business-day deliveries after the day of sending.

To the extent permitted by Governmental Requirements, if there is more than one Borrower, notice to any Borrower shall constitute notice to all Borrowers. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address(es).

8.4. **Authority to File Notices**. Borrower irrevocably appoints, designates, and authorizes Lender as its agent (this agency being coupled with an interest) to file or send to any third party any notice or documents or take any other action that Lender reasonably deems necessary or desirable to protect its interest under this Agreement, or under the Loan Documents, and will on request by Lender, execute such additional documents as Lender may require to further evidence the grant of this right to Lender.

8.5. **Attorney-in-Fact**. Borrower irrevocably appoints Lender its true and lawful attorney-in-fact, which appointment is coupled with an interest, for purposes of accomplishing any of the foregoing. Borrower further nominates and appoints Lender as attorney-in-fact to perform all acts and execute all documents deemed necessary by Lender in furtherance of the terms of this Agreement; except, however, for receiving notice on behalf of Borrower.

8.6. **Time**. Time is of the essence in the Loan Documents.

---

© Lightning Docs™; All Rights Reserved.
Loan and Security Agreement     Loan No. ▮

v188

Borrower's Initials:

Val-Chris00193

**8.7.** **Amendments, Termination, Waiver.** No amendment, supplement, termination, or waiver of any provision of this Agreement or of any of the Loan Documents, nor consent to any departure by Borrower from the terms of this Agreement or of any of the other Loan Documents, shall be effective unless it is in writing and signed by Lender and Borrower, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

**8.8.** **Headings.** The article, section and paragraph headings in this Agreement are for reference only and in no way define, limit, extend, or interpret the scope of this Agreement or of any particular article or section.

**8.9.** **Validity.** If any provision of this Agreement is held to be invalid, that holding shall not affect in any respect the validity of the remainder of this Agreement.

**8.10.** **Cross-Default.** Any default under the terms of any loan agreement, promissory note, deed of trust, mortgage, lease, conditional sale contract or other agreement, document or instrument evidencing, governing or securing any indebtedness owing by Borrower or any Affiliate of Borrower to Lender or any Affiliate of Lender; shall, at Lender's option, constitute an Event of Default under this Agreement. Notwithstanding anything contained in the Loan Documents to the contrary, any Loan sold, participated, or otherwise transferred to a third party shall not be cross-defaulted or cross-collateralized with any other loan not sold or transferred to the same third party. The following definitions shall apply to this Section:

"**Affiliate**" means, with respect to any Person, any other Person that is directly or indirectly Controlling, Controlled by or under common Control with, such Person.

"**Control**" and derivative terms means the possession, directly or indirectly, and acting either alone or together with others, of the power or authority to direct or cause the direction of the management, material policies, material business decisions or the affairs of a Person, whether through the ownership of equity securities or interests, by contract or other means.

"**Person**" means any natural person, business, corporation, company, and or association, limited liability company, partnership, limited partnership, limited liability partnership, joint venture, business enterprise, trust, government authority or other legal entity.

BORROWER'S INITIALS:

**8.11.** **Survival of Warranties.** All agreements, representations, and warranties made in this Agreement shall survive the execution and delivery of this Agreement, of the Loan Documents, and the making of the Loan under this Agreement and continue in full force and effect until the Secured Obligations have been fully paid and satisfied.

**8.12.** **Attorney Fees.** Borrower agrees to pay the following costs, expenses, and Attorneys' Fees paid or incurred by Lender, or adjudged by a court: (a) reasonable costs of collection and costs, expenses, and Attorneys' Fees paid or incurred in connection with the collection or enforcement of the Loan Documents, whether or not suit is filed; (b) reasonable costs, expenses, and Attorneys' Fees paid or incurred in connection with representing Lender in any bankruptcy, reorganization, receivership, or other proceedings affecting creditors' rights and involving a claim under the Loan Documents; (c) reasonable costs, expenses, and Attorneys' Fees incurred to protect the lien of the Security Instrument; and (d) costs of suit and such sum as the court may adjudge as Attorneys' Fees in any action to enforce payment of the Loan Documents or any part of it.

In addition to the aforementioned fees, costs, and expenses, Lender in any lawsuit or other dispute shall be entitled to its Attorneys' Fees, and all other fees, costs, and expenses incurred in any

© Lightning Docs™; All Rights Reserved.
Loan and Security Agreement       Loan No.

v188

Borrower's Initials:

Val-Chris00194

Val-Chris00194

post-judgment proceedings to collect or enforce any judgment. This provision for the recovery of post-judgment fees, costs, and expenses is separate and several and shall survive the merger of the Loan Documents into any judgment on the Loan Agreement, Note, Guaranty, Security Instrument, or any other Loan Documents.

**8.13. Governing Law; Consent to Jurisdiction and Venue**. This Agreement is made by Lender and accepted by Borrower in the State of California, except that at all times the provisions for the creation, perfection, priority, enforcement and foreclosure of the liens and security interests created in the Real Property Collateral under the Loan Documents shall be governed by and construed according to the laws of the state in which each Real Property Collateral is situated. To the fullest extent permitted by the law of the state in which each Real Property Collateral is situated, the law of the State of California shall govern the validity and enforceability of all Loan Documents, and the debt or obligations arising hereunder (but the foregoing shall not be construed to limit Lender's rights with respect to such security interest created in the state in which each Real Property Collateral is situated). The parties agree that jurisdiction and venue for any dispute, claim or controversy arising, other than with respect to perfection and enforcement of Lender's rights against the Real Property Collateral, shall be Orange County, California, or the applicable federal district court that covers said County, and Borrower submits to personal jurisdiction in that forum for any and all purposes. Borrower waives any right Borrower may have to assert the doctrine of forum non conveniens or to object to such venue.

BORROWER'S INITIALS: _O/6_

**8.14. Legal Relationships**. The relationship between Borrower and Lender is that of lender and borrower, and no partnership, joint venture, or other similar relationship shall be inferred from this Agreement. Borrower shall not have the right or authority to make representations, to act, or to incur debts or liabilities on behalf of Lender. Borrower is not executing this Agreement as an agent or nominee for an undisclosed principal, and no third-party beneficiaries are or shall be created by the execution of this Agreement.

**8.15. Dispute Resolution; Waiver of Right to Jury Trial**.

**8.15.1. ARBITRATION**. CONCURRENTLY HEREWITH, BORROWER AND ANY GUARANTOR SHALL EXECUTE THAT CERTAIN ARBITRATION AGREEMENT WHEREBY BORROWER, ANY GUARANTOR, AND LENDER AGREE TO ARBITRATE ANY DISPUTES TO RESOLVE ANY CLAIMS (AS DEFINED IN THE ARBITRATION AGREEMENT).

**8.15.2. WAIVER OF RIGHT TO JURY TRIAL**. CONCURRENTLY HEREWITH, BORROWER AND ANY GUARANTOR SHALL EXECUTE THAT CERTAIN ARBITRATION AGREEMENT AND WAIVER OF RIGHT TO JURY TRIAL WHEREBY BORROWER, ANY GUARANTOR, AND LENDER AGREE TO WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM (AS DEFINED IN THE ARBITRATION AGREEMENT) OR CAUSE OF ACTION BASED ON OR ARISING FROM THE LOAN.

BORROWER'S INITIALS: _O/6_

**8.16. Counterparts**. This Agreement may be signed in one or more counterparts, each of which shall be deemed an original. This Agreement shall be deemed fully executed and effective when all Parties have executed at least one of the counterparts, even though no single counterpart bears all such signatures.

**8.17. Severability**. If any provision of the Loan Documents, or the application of them to the circumstances, is held void, invalid, or unenforceable by a court of competent jurisdiction, the Loan Documents, and the applications of such provision to other parties or circumstances, shall not be affected thereby, the provisions of the Loan Documents being severable in any such instance.

**8.18. Cooperation**. Borrower acknowledges that Lender and its successors and assigns may (a) sell, transfer, or assign the Loan Documents to one or more investors as a whole loan, in a rated or unrated public

20

Val-Chris00195

offering or private placement; (b) participate the Loan to one or more investors in a rated or unrated public offering or private placement; (c) deposit the Loan Documents with a trust, which trust may sell certificates to investors evidencing an ownership interest in the trust assets in a rated or unrated public offering or private placement; or (d) otherwise sell the Loan or interest therein to investors in a rated or unrated public offering or private placement. (The transactions referred to in clauses (a)-(d) are hereinafter referred to as "Secondary Market Transactions.") Borrower shall, at Lender's expense, cooperate in good faith with Lender in effecting any such Secondary Market Transaction and shall cooperate in good faith to implement all requirements reasonably imposed by the participants involved in any Secondary Market Transaction (including, without limitation, a rating agency and/or an institutional purchaser, participant, or investor) including, without limitation, all structural or other changes to the Loan Documents, modifications to any documents to the Loan Documents, delivery of opinions of counsel acceptable to the rating agency or such other purchasers, participants or investors, and addressing such matters as the rating agency or such other purchasers, participants, or investors may require; provided, however, that the Borrower shall not be required to modify any documents evidencing or securing the Loan Documents that would modify (i) the interest rate payable under the Note, (ii) the stated Maturity Date, (iii) the amortization of principal of the Note, or (iv) any other material terms or covenants of the Note. Borrower shall provide such information and documents relating to Borrower, the Collateral, any Leases (as defined in the Security Instrument), and any lessees as Lender or the rating agency or such other purchasers, participants, or investors may reasonably request in connection with a Secondary Market Transaction. Lender shall have the right to provide to the rating agency or prospective purchasers, participants, or investors any information in its possession including, without limitation, financial statements relating to Borrower, the Collateral, and any lessee. Borrower acknowledges and agrees that certain information regarding the Loan and the parties thereto and the Real Property Collateral may be included in a private placement memorandum, prospectus, or other disclosure documents and consents to the release of such information to third parties.

**8.19.** **Obligations of Borrower Joint and Several.** If more than one Person is named as Borrower, each obligation of Borrower under this Agreement shall be the joint and several obligations of each such Person.

**8.20.** **No Modifications or Amendments; No Waiver.** Except as specified herein, the Loan Documents may not be amended, modified or changed, nor shall any waiver of the provisions hereof be effective, except only by an instrument in writing signed by the party against whom enforcement of any waiver, amendment, change, modification or discharge is sought. Additionally, a waiver of any provision in one event shall not be construed as a waiver of any other provision at any time, as a continuing waiver, or as a waiver of such provision on a subsequent event.

**8.21.** **Integration.** This Agreement and all schedules and exhibits hereto referred to herein, together with the Note and the other Loan Documents, embody the final, entire agreement among the parties and supersede any and all prior commitments, agreements, representations and understandings, whether written or oral, relating to the subject matter hereof and may not be contradicted or varied by evidence of prior, contemporaneous, or subsequent oral agreements or discussions of the parties. There are no oral agreements among the parties. Except as otherwise provided in this Agreement, if any provision contained in this Agreement is in conflict with, or inconsistent with, any provision in any Loan Document, the provision contained in this Agreement shall govern and control.

**8.22.** **REMIC Savings Clause.** Notwithstanding anything to the contrary in this Agreement, if the Loan is held by a "real estate investment conduit" (a "REMIC") within the meaning of Section 860D of the Internal Revenue Code of 1986, as amended (the "IRS Code"), and following the release of any Real Property Collateral the ratio of the outstanding principal balance of the Loan to the value of the Real Property Collateral securing the Loan is greater than 125% (based solely on the value of the real property and excluding personal property or going concern value, if any, as determined by Lender in its sole discretion, using any commercially reasonable method permitted to a REMIC under the IRS Code) (such amount, the "REMIC LTV"), then Borrower shall pay down the principal balance of the

21

Val-Chris00196  
Val-Chris00196

Loan by an amount equal to the greater of (A) the amount of principal required to be paid pursuant to this Section and (B) the least of the following amounts: (1) if the released Real Property Collateral is sold in an arm's length transaction with an unrelated third party, the net proceeds of such sale; (2) the fair market value of the released Real Property Collateral at the time of the release, as determined by Lender in its sole discretion using any commercially reasonable method permitted to a REMIC under the IRS Code; and (3) an amount such that the REMIC LTV does not increase due to the release.

IN WITNESS WHEREOF, Borrower has executed this Agreement as of the date first written above by and through their duly authorized representatives.

**BORROWER:**

DANIEL P. HIGGINS

Daniel P. Higgins, an individual

---

22

© Lightning Docs™; All Rights Reserved.
Loan and Security Agreement      Loan No. █████

v188

Borrower's Initials:

Val-Chris00197  Val-Chris00197

# SECURED NOTE

**$330,000.00**
Date: October 29, 2024<br>Orange County, California

*Property Address:*     *3001 Kleinmann Avenue, Galveston, Texas 77551*

FOR VALUE RECEIVED, the undersigned, Daniel P. Higgins ("Borrower"), whose address is 2130 Winding Springs Drive, League City, Texas 77573, hereby promises to pay to Val-Chris Investments Inc, a California corporation (CFL License No. 6035063), or order ("Lender"), whose address is 2601 Main Street, Suite 400, Irvine, California 92614, the principal sum of Three Hundred Thirty Thousand and 00/100 Dollars ($330,000.00), together with interest on the entire Loan Amount of this Note, as follows:

1.     **Interest.** Interest on the entire loan amount, including any Lender Retained Funds, will accrue from the date any proceeds have been distributed to or on behalf of the Borrower (the "Date of Advance") at an annual rate equal to Twelve and 99/100 Percent (12.99%).

    1.1.     **Computation of Interest.** Interest on this Note is computed on a 30/360 basis; that is, with the exception of odd days before the first full payment cycle, monthly interest is calculated by applying the ratio of the interest rate over a year of 360 days, multiplied by the entire Loan Amount, multiplied by a month of 30 days. Interest for the odd days before the first full month and any partial month in which the loan is repaid in full is calculated on the basis of the actual days and a 360-day year and shall include the day of payoff. All interest payable under this Note is computed using this method.

2.     **Payment Obligations.**

    2.1.     **In General.** Borrower will make a payment each month until the entire indebtedness evidenced by this Note and all accrued and unpaid principal, interest and other charges due hereunder have been paid in full. If Borrower still owes amounts under this Note on November 1, 2025 (the "Maturity Date"), Borrower will pay those amounts in full on that date. Payments due under the Note shall be made in U.S. currency. Lender may charge a non-sufficient funds fee, in Lender's discretion, for each payment that is returned unpaid by the Borrower's bank. This charge may be in addition to any other charges provided for herein. Further, if any check or other instrument received by Lender as payment under the Note or the Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under this Note and the Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; (d) Electronic Funds Transfer; or (e) wire. Lender reserves the right, in its sole and absolute discretion, to require payment in any other manner.

    2.2.     **Interest-Only Payments.** Interest-only payments shall be due and payable in consecutive monthly installments of Three Thousand Five Hundred Seventy-Two and 25/100 Dollars ($3,572.25) commencing with the first payment due on December 1, 2024 and continuing on the first day of every month thereafter for a period of twelve (12) consecutive months.

    2.3.     **Balloon Payment.** The payment schedule for this Loan requires that on the Maturity Date Borrower make a balloon payment of all unpaid principal, interest, charges, fees, costs and any other unpaid amounts due under the Loan Documents.

    2.4.     **Delivery of Payments.** Payments shall be made to Lender at Lender's address, which is provided in the Loan Agreement, or to another address if so designated by Lender.

    2.5.     **Order of Application of Payments.** Each payment under this Note shall be credited in the following order: (a) costs, fees, charges, and advances paid or incurred by Lender or payable to Lender and interest thereon under any provision of this Note, the Loan Agreement, or the Security Instrument, in

---

1

Val-Chris00126
Val-Chris00126

such order as Lender, in its sole and absolute discretion, elects, (b) interest payable under the Note, and (c) principal under the Note.

**2.6.** **Other Terms.** This Note is subject to the following additional terms as provided for in the Loan Agreement. See headings in Loan Agreement sections for applicability.

**2.6.1.** **N/A.**

**3.** **Late Charge.** Borrower acknowledges that default in the payment of any sum due under this Note will result in losses and additional expenses to Lender in servicing the indebtedness evidenced by this Note, handling such delinquent payments, and meeting its other financial obligations. Borrower further acknowledges that the extent of such loss and additional expenses is extremely difficult and impractical to ascertain. Borrower acknowledges and agrees that, if any payment due under this Note is not received by Lender within the later of (i) ten (10) days when due, or (ii) the minimum time past due required by Applicable Law, an amount equal to the lesser of (a) 5 cents ($0.05) for each dollar ($1.00) that is not paid when due, or (b) the maximum charge allowed under Applicable Law would be a reasonable estimate of expenses so incurred (the "Late Charge"). Without prejudicing or affecting any other rights or remedies of Lender, Borrower shall pay the Late Charge to Lender as liquidated damages to cover expenses incurred in handling such delinquent payment.

**4.** **Default.** On (a) Borrower's failure to pay any installment or other sum due under this Note when due and payable (whether by extension, acceleration, or otherwise), (b) an Event of Default (as defined in the Loan Agreement), or (c) any breach of any other promise or obligation in this Note or in any other instrument now or hereafter securing the indebtedness evidenced by this Note, then, and in any such event, Lender may, at its option, declare this Note (including, without limitation, all accrued interest) due and payable immediately regardless of the Maturity Date. Borrower expressly waives notice of the exercise of this option.

**5.** **Prepayment.**

**5.1.** **Prepayment Premium.** If Borrower prepays this Note in whole or in part before March 1, 2025, Borrower will pay a Prepayment Premium equal to (a) Sixteen Thousand Two Hundred Eighty-Nine and 46/100 Dollars ($17,146.80), and (b) the balance of the advance interest which would be due and payable on any amounts prepaid to Lender up to March 1, 2025 ("Prepayment Premium"). Notwithstanding the preceding, no Prepayment Premium shall be due if Borrower prepays less than twenty percent (20%) of the unpaid principal balance during any twelve-month period. After the Prepayment Premium period has elapsed, Borrower may prepay this Note in whole or in part at any time without paying a premium. All prepayments of principal on this Note shall be applied to the most remote principal installment or installments then unpaid.

**5.2.** **Ability to Pay Prepayment.** Borrower shall have no right to prepay and Lender shall have no duty to accept full or partial prepayment of this Note without Borrower giving Lender thirty (30) days prior written notice of his, her or its intention to prepay this Note. Said notice shall include the amount Borrower intends to repay. Borrower shall pay Lender the principal due under this Note together with (a) any Prepayment Premium contemplated in this Note and (b) any accrued but yet unpaid interest and fees.

**5.3.** **Prepayment Waivers.** BORROWER ACKNOWLEDGES AND AGREES THAT BORROWER HAS NO RIGHT TO PREPAY THIS NOTE EXCEPT AS PROVIDED IN THIS SECTION. BORROWER FURTHER ACKNOWLEDGES AND AGREES THAT IF THE MATURITY DATE IS ACCELERATED BY LENDER PURSUANT TO THE LOAN DOCUMENTS (INCLUDING, WITHOUT LIMITATION, A JUNIOR LIEN LENDER OF THE PROPERTY), AND BORROWER OR ANY THIRD PERSON THEREAFTER SEEKS TO PAY OFF SUCH ACCELERATED INDEBTEDNESS OR PURCHASE THE PROPERTY AT A FORECLOSURE SALE (WHETHER JUDICIAL OR NON-JUDICIAL), SUCH PAYOFF OR PURCHASE SHALL CONSTITUTE A PREPAYMENT HEREUNDER AND THE PREPAYMENT PREMIUM SET FORTH ABOVE SHALL BE DUE IN THE EVENT PREPAYMENT OCCURS. BY INITIALING BELOW, BORROWER SPECIFICALLY ACKNOWLEDGES AND AGREES THAT BORROWER SHALL PAY THE

2

© Lightning Docs™; All Rights Reserved.
Note    Loan No ▮▮▮▮

Borrower's Initials:

Val-Chris00127

PREPAYMENT PREMIUM, EVEN IN THE CASE WHERE LENDER HAS ACCELERATED THE MATURITY DATE PURSUANT TO THE LOAN DOCUMENTS; THAT THE CALCULATION OF THE PREPAYMENT PREMIUM IS FAIR AND REASONABLE TO COMPENSATE LENDER FOR THE LOSS WHICH LENDER MAY INCUR AS A RESULT OF PREPAYMENT OF THIS NOTE; THAT BORROWER WAIVES ANY RIGHT BORROWER MAY HAVE OR CLAIM TO HAVE UNDER CALIFORNIA LAW; AND THAT LENDER HAS MADE THE LOAN EVIDENCED BY THIS NOTE IN RELIANCE ON THE AGREEMENTS AND WAIVERS OF BORROWER IN THIS SECTION AND LENDER WOULD NOT HAVE MADE THE LOAN WITHOUT SUCH AGREEMENTS AND WAIVERS.

BORROWER'S INITIALS:

6. **Interest on Default**. If Borrower is in default under the Loan Documents, then at the sole and absolute discretion of Lender and without notice or opportunity to cure, the entire Loan Amount shall immediately bear an annual interest rate equal to the lesser of (a) Eighteen and 99/100 Percent (18.99%); or (b) the maximum interest rate allowed by law (the "Default Rate"). The Loan shall accrue interest at the Default Rate only until all defaults are cured and the Loan is reinstated. Borrower acknowledges, understands and agrees that in connection with any default: (i) Lender's risk of nonpayment of the Loan will be materially increased; (ii) Lender's ability to meet its other obligations and to take advantage of other investment opportunities will be adversely impacted; (iii) Lender may need to set aside funds in a loan loss reserve, repurchase the loan from a credit provider or otherwise impair their capital; (iv) Lender may be unable to raise additional funds from investors, credit facilities or other capital sources due to defaults in its portfolio; (v) the value of the Lender's loan will materially decrease and may become unmarketable altogether; (vi) the value of Lender's business enterprise will be reduced; (vii) Lender will incur additional costs and expenses arising from its loss of the use of the amounts due; (viii) the aforementioned list of risks, losses and damages is not exhaustive and Lender will suffer additional exposure to risk, losses and damages not specifically identified above; (ix) it is extremely difficult and impractical to determine such additional costs and expenses; (x) Lender is entitled to be compensated for such additional risks, costs, and expenses; and (xi) the increase to the Default Rate represents a fair and reasonable estimate of the additional risks, costs, and expenses Lender will incur by reason of Borrower's default and the additional compensation Lender is entitled to receive for the harms incurred by Lender due to Borrower's default. Interest at the Default Rate shall be payable by Borrower without prejudice to the rights of Lender to collect any other amounts to be paid under this Note (including, without limitation, late charges), the Loan Agreement, or the Security Instrument.

7. **Interest on Interest**. If any interest payment under this Note is not paid when due, the unpaid interest shall be added to the principal of this Note, shall become and be treated as principal, and shall thereafter bear like interest.

8. **Due-on-Sale**. If Borrower (a) sells, gives an option to purchase, exchanges, assigns, conveys, encumbers (including, but not limited to PACE/HERO loans, any loans where payments are collected through property tax assessments, and super-voluntary liens which are deemed to have priority over the lien of the Security Instrument) (other than with a Permitted Encumbrance as defined in the Security Instrument), transfers possession, or alienates all or any portion of the Collateral, or any of Borrower's interest in the Collateral, or suffers its title to, or any interest in, the Collateral to be divested, whether voluntarily or involuntarily; or if there is a sale or transfer of any interests in Borrower; or if Borrower changes or permits to be changed the character or use of the Collateral, or drills or extracts or enters into any lease for the drilling or extracting of oil, gas, or other hydrocarbon substances or any mineral of any kind or character on the Real Property Collateral; or (b) if title to the Collateral becomes subject to any lien or charge, voluntary or involuntary, contractual or statutory, without Lender's prior written consent, or (c) if a junior voluntary or involuntary deed of trust or mortgage lien in favor of another lender encumbers the

---

3

© Lightning Docs™; All Rights Reserved.
Note        Loan No. ▮▮▮▮

Borrower's Initials:

Val-Chris00128

Real Property Collateral (other than a Permitted Encumbrance) without Lender's express prior written consent thereto, which consent may be withheld in Lender's sole and absolute discretion, then Lender, at Lender's option, may, without prior notice and subject to Applicable Law, declare all sums secured by the Security Instrument, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in the Loan Documents.

9. **Waiver.** Borrower, endorsers, and all other persons liable or to become liable on this Note waive diligence, presentment, protest and demand, and also notice of protest, demand, nonpayment, dishonor and maturity and consents to any extension of the time or terms of payment hereof, any and all renewals or extensions of the terms hereof, any release of all or any part of the security given for this Note, any acceptance of additional security of any kind and any release of any party liable under this Note. Any such renewals or extensions may be made without notice to Borrower.

10. **Notice.** Any notice required to be provided in this Note shall be given in accordance with the notice requirements provided in the Loan Agreement.

11. **Assignment.** This Note is made and entered into for the sole protection and benefit of Lender and Borrower and their successors and assigns, and no other Person or Persons shall have any right of action under this Note. The terms of this Note shall inure to the benefit of the successors and assigns of the parties, provided, however, that the Borrower's interest under this Note cannot be assigned or otherwise transferred without the prior consent of Lender. Lender in its sole discretion may transfer this Note, and may sell or assign participations or other interests in all or any part of this Note, all without notice to or the consent of Borrower.

12. **Usury Savings Provisions.** It is expressly stipulated and agreed to be the intent of Borrower and Lender at all times to comply strictly with the applicable Texas law governing the maximum rate or amount of interest payable on the Indebtedness (as hereinafter defined), or applicable United States federal law to the extent that such law permits Lender to contract for, charge, take, reserve or receive a greater amount of interest than under Texas law. Borrower acknowledges and agrees that the interest rate set forth in this Note was elected by the parties pursuant to an optional rate ceiling set forth in Subchapter A of Chapter 303 of the Texas Finance Code. For purposes of this Note, "Indebtedness" shall mean all indebtedness evidenced by this Note, and all amounts payable in the performance of any covenant or obligation in any of the other Loan Documents or any other communication or writing by or between Borrower and Lender related to the transaction or transactions that are the subject matter of the Loan Documents, or any part of such indebtedness. If the applicable law is ever judicially interpreted so as to render usurious any amount contracted for, charged, taken, reserved or received in respect of the Indebtedness, including by reason of the acceleration of the maturity or the prepayment thereof, then it is Borrower's and Lender's express intent that all amounts charged in excess of the Maximum Lawful Rate shall be automatically canceled, *ab initio*, and all amounts in excess of the Maximum Lawful Rate theretofore collected by Lender shall be credited on the principal balance of the Indebtedness (or, if the Indebtedness has been or would thereby be paid in full, refunded to Borrower), and the provisions of this Note and the other Loan Documents shall immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new document, so as to comply with the applicable laws, but so as to permit the recovery of the fullest amount otherwise called for hereunder and thereunder; provided, however, if this Note has been paid in full before the end of the stated term hereof, then Borrower and Lender agree that Lender shall, with reasonable promptness after Lender discovers or is advised by Borrower that interest was received in an amount in excess of the Maximum Lawful Rate, either credit such excess interest against the Indebtedness then owing by Borrower to Lender and/or refund such excess interest to Borrower. Borrower hereby agrees that as a condition precedent to any claim seeking usury penalties against Lender, Borrower will provide written notice to Lender, advising Lender in reasonable detail of the nature and amount of the violation, and Lender shall have sixty (60) days after receipt of such notice in which to correct such usury violation, if any, by either refunding such excess interest to Borrower or crediting such excess interest against the Indebtedness then owing by Borrower to Lender. All sums

---

© Lightning Docs™; All Rights Reserved.
Note          Loan No ▮

v188

Borrower's Initials: _____

Val-Chris00129

contracted for, charged, taken, reserved or received by Borrower for the use, forbearance or detention of the Indebtedness shall, to the extent permitted by applicable law, be amortized, prorated, allocated or spread, using the actuarial method, throughout the stated term of this Note (including any and all renewal and extension periods) until payment in full so that the rate or amount of interest on account of the Indebtedness does not exceed the Maximum Lawful Rate from time to time in effect and applicable to the Indebtedness for so long as debt is outstanding. In no event shall the provisions of Chapter 346 of the Texas Finance Code (which regulates certain revolving credit loan accounts and revolving tri-party accounts) apply to this Note or any other part of the Indebtedness. Notwithstanding anything to the contrary contained herein or in any of the other Loan Documents, it is not the intention of Lender to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration. The terms and provisions of this paragraph shall control and supersede every other term, covenant or provision contained herein, in any of the other Loan Documents or in any other document or instrument pertaining to the Indebtedness. Notwithstanding the preceding, this Note is made by Lender and accepted by Borrower in the State of California, except that at all times the provisions for the creation, perfection, priority, enforcement and foreclosure of the liens and security interests created in the Real Property Collateral under the Loan Documents shall be governed by and construed according to the laws of the state in which each Real Property Collateral is situated. To the fullest extent permitted by the law of the state in which each Real Property Collateral is situated, the law of the State of California shall govern the validity and enforceability of all Loan Documents, and the debt or obligations arising hereunder (but the foregoing shall not be construed to limit Lender's rights with respect to such security interest created in the state in which each Real Property Collateral is situated). The parties agree that jurisdiction and venue for any dispute, claim or controversy arising, other than with respect to perfection and enforcement of Lender's rights against the Real Property Collateral, shall be Orange County, California, or the applicable federal district court that covers said County, and Borrower submits to personal jurisdiction in that forum for any and all purposes. Borrower waives any right Borrower may have to assert the doctrine of forum non conveniens or to object to such venue.

13.     **Capitalized Terms.** Capitalized terms used but not defined herein shall have the meaning ascribed to such term in the Loan Documents (as defined in the Loan Agreement).

14.     **Loan Agreement.** This Note is also secured by and is subject to the provisions of that certain Loan and Security Agreement of even date herewith (the "Loan Agreement") between Borrower and Lender, and all Collateral referenced and incorporated in the Loan Agreement. As specifically provided in the Loan Agreement, if Borrower defaults under this Note, Lender has the right and option to foreclose against any Collateral provided under the Loan Agreement.

15.     **Counterparts.** This Note may be signed in one or more counterparts, each of which shall be deemed an original. This Note shall be deemed fully executed and effective when all parties have executed at least one of the counterparts, even though no single counterpart bears all such signatures.

**BORROWER:**

DANIEL P. HIGGINS

_____

Daniel P. Higgins, an individual

5

© Lightning Docs™; All Rights Reserved.
Note        Loan No. ███

v188

Borrower's Initials: _____

Val-Chris00130

## KEY PROVISIONS SUMMARY

| | |
|---|---|
| Document Date: | October 29, 2024 |
| Loan Number: | 20047 |
| Property: | 3001 Kleinmann Avenue, Galveston, Texas 77551 |
| Borrower(s): | Daniel P. Higgins |
| Lender: | Val-Chris Investments Inc, a California corporation (CFL License No. 6035063) |
| Loan Amount: | $330,000.00 |
| Interest Rate: | 12.99% |
| Number of Interest-Only Payments: | 12 months |
| Interest-Only Monthly Payment Amount: | $3,572.25 |
| Maturity Date: | November 1, 2025 |
| Prepayment Premium: | $17,146.80 if paid within 4 Months (and the interest which would accrue through 4 Months) |

Val-Chris00131
Val-Chris00131



**CERTIFICATE OF BUSINESS PURPOSE OF LOAN**

Borrower certifies to LendMe ("Originator") as follows:

1. I have applied to Originator for a trust deed loan of $ $330,000 _____ secured by the real property at 3001 Kleinmann Avenue, Galveston, TX 77551 _____ (the "Loan")

2. Originator has stressed to me the importance of knowing the primary purpose of the Loan. I know that the legal responsibilities of Originator vary considerably depending on whether the Loan is a consumer loan (for personal, household, or family purposes), or a business loan.

3. I have represented to Originator and again represent to Originator that all of the purposes of the loan, exclusive of commissions and loan expenses incurred to obtain the Loan are:

| Purpose | Approximate Amount |
|---|---|
| A. payoff exisiting business purpose loan with Val-Chris | $ 270,000 |
| B. Purchase the necessary equipment that will help me expand my business and in turn generate more revenue. | $ 20,000 |
| C. Closing Costs | $ 30,000 |
| D. | $ |

4. The primary purpose of the Loan is to finance the business enterprise known as DK Contracting & Consulting LLC AKA KDCC,LLC _____ that is in the business of Construction _____ .

5. No part of the Loan proceeds are intended to be used for a nonbusiness (i.e., consumer) purpose except:

| Purpose | Approximate Amount |
|---|---|
| Closing Costs | 30,000 |

The lender, broker, assignees, and successors of the Originator may rely upon this certificate. I declare under penalty of perjury under the laws of the State of California that the foregoing Certificate is true and correct.

| Daniel P Higgins | *Danny Higgins (Oct 28, 2024 14:14 CDT)* | 10/28/2024 |
|---|---|---|
| Borrower (Print Name) | Signature | Date |

| | | |
|---|---|---|
| Borrower (Print Name) | Signature | Date |

Val-Chris00046