**In the United States District Court**
**For the Southern District of Texas**
**Galveston Division**

| | |
|---|---|
| **Daniel P. Higgins,**<br>Plaintiff,<br><br>v.<br><br>**Val-Chris Investments, Inc.**<br>Defendant. | **Civil Action No. 3:26-cv-00045** |

**Higgins's Response to Val-Chris Investments' Motion for**
**Summary Judgment (Doc. 26) and Cross-Motion for Summary Judgment**

**Table of Contents**

Table of Contents ..................................................................................................................ii

Table of Authorities ..............................................................................................................iii

Index of Exhibits .................................................................................................................. iv

Introduction .......................................................................................................................... 1

Background ............................................................................................................................ 1

Summary of the Argument .................................................................................................... 2

Argument ............................................................................................................................... 2

I.   The Property is Higgins's homestead ............................................................................. 2

   A.  Texas law does not generally enforce homestead disclaimers ................................. 3

   B.  The Property has been Higgins's homestead for almost two decades ..................... 5

   C.  To the extent it is good law, *Villarreal* does not affect the status of the Property ................................................................................................................... 7

II.  VCI has not complied with Texas's many protections for homesteads ...................... 11

Conclusion .......................................................................................................................... 17

## Table of Authorities

*Case*　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　*Page(s)*

*Alexander v. Wilson*,
　　77 S.W.2d 873 (Tex. 1935) ................................................................. 9

*First Interstate Bank of Bedford v. Bland*,
　　810 S.W.2d 277 (Tex. App.—Fort Worth 1991, no writ) ........................................ 3

*In re Brei*,
　　599 B.R. 880 (N.D. Tex. Bankr. 2019) ................................................................. 4–5

*In re Niland*,
　　825 F.2d 801 (5th Cir. 1987) ....................................................... 3–4, 7–10

*In re Villarreal*,
　　401 B.R. 823 (S.D. Tex. Bankr. 2009) ................................................................. 10

*In re Villarreal*,
　　402 F. App'x 28 (5th Cir. 2010) ........................................................... 7–10

*Lincoln v. Bennett*,
　　156 S.W.2d 504 (Tex. 1941) ................................................................. 9

*Tex. Land & Loan Co. v. Blalock*,
　　13 S.W.12 (Tex. 1890) ............................................................. 3–4, 8–9


*Rule/Statute*　　　　　　　　　　　　　　　　　　　　　　　　　　　　*Page(s)*

Fifth Cir. R. 47.5 ................................................................................. 10

Tex. Const. Art. 16, § 50 ........................................................................ 11–17

**Index of Exhibits**

**Exhibit No. 1:**  Higgins Declaration

**Exhibit No. 2:**  Secured Note

**Exhibit No. 3:**  Deed of Trust

**Exhibit No. 4:**  Loan Agreement

**Exhibit No. 5:**  Closing Statement

**Exhibit No. 6:**  Foreclosure Notice

**Exhibit No. 7:**  Statement of Information

**Exhibit No. 8:**  Driver License

**Exhibit No. 9:**  Insurance Policy

**Introduction**

Plaintiff Daniel Higgins seeks a declaratory judgments that, *inter alia*, (1) the property at issue in this litigation is Higgins's homestead and (2) Defendant Val-Chri Investments, Inc.'s ("VCI") lien against that property fails to comply with Texas's many homestead protections. VCI now seeks summary judgment against that claim based on a legal rule the Fifth Circuit refused to adopt and a disputed set of facts. But the Fifth Circuit is clear that, under these circumstances, Higgins is entitled to the full protections Texas law affords to homestead properties. The Court should deny VCI's motion for summary judgment and instead grant this cross-motion for summary judgment declaring that the Property is Higgins's homestead and that the Lien is not valid.

**Background**

Higgins has lived at 3001 Kliemann Avenue, Galveston, Texas 77551 (the "Property") since approximately 2008. Exhibit 1, Higgins Declaration. Higgins has continuously and openly resided in and occupied the Property since that time. *Id.* Higgins continues to occupy, reside in, and claim the homestead exemption on the Property. *Id.* Higgins's personal property is located in the Property, and he returns to it eat, sleep, and otherwise reside. *Id.* Higgins leased-out the auxiliary dwelling unit on the Property to Knycie Quitta in 2020. *Id.* But, despite this, Higgins has remained in the main residence throughout the lease. *Id.*

In 2024, Higgins owed approximately $270,000 on a loan secured by the Property. *Id.* Higgins sought to perform a cash-out refinancing that would (1) pay-off the existing loan and (2) give Higgins approximately $20,000 in cash in excess of the refinanced

amount. *Id.* To accomplish this, Higgins obtained a loan (the "Loan") from VCI for $313,500. Exhibit 2, Secured Note; Exhibit 3, Deed of Trust; Exhibit 4, Loan Agreement. This loan was secured by a lien against the Property (the "Lien"). *See id.* According to the Closing Statement, Higgins's former lender received $269,134.97 as a payoff and Higgins received $19,183.95 in cash. Exhibit 5, Closing Statement.

## Summary of the Argument

As interpreted by the Fifth Circuit, Texas law is so protective of homesteads that courts will not enforce a written homestead disclaimer if, at the time of the disclaimer, the debtor actually used the property as his or her homestead. There is no factual dispute that Higgins actually used the Property as his homestead at the time of the Loan. This alone means that Higgins is entitled to full homestead protections. In such event, there appears to be no dispute that the Loan and the Lien fail to comply with Texas law regarding homestead protections. The Court should deny summary judgment for VCI and grant cross summary judgment for Higgins.

## Argument

### I.    The Property is Higgins's homestead.

The Property is Higgins's homestead. Exhibit 1, Higgins Declaration. As such, the Property is covered by Texas's many protections against foreclosure. VCI argues that Higgins is estopped from claiming the Property as his homestead because he purportedly disclaimed residing at the Property when applying for the Loan. This argument fails because (1) Texas does not enforce a disclaimer of homestead when the borrower actually

resides at the property at the time of the loan and (2) the evidence amply shows that the Property was, in fact, Higgins's homestead at the time.

### A. Texas law does not generally enforce homestead disclaimers.

It is true that, "[m]isrepresentations by a homestead claimant may, under the proper circumstances, create an estoppel to claim the homestead exemption." *First Interstate Bank of Bedford v. Bland*, 810 S.W.2d 277, 283 (Tex. App.—Fort Worth 1991, no writ). But, "[a] homestead claimant may not preclude himself from claiming the homestead exemption solely by the act of disclaiming property as his homestead, however." *Id.* In *Niland*, Niland owned a house on Miron Drive and a condominium at Hollows North. *See In re Niland*, 825 F.2d 801, 803 (5th Cir. 1987). Niland lived at the Miron Drive property but not the condominium. *Id.* Despite this, Niland borrowed money secured by a lien against the Miron Drive property. *Id.* As part of this transaction, Niland "executed an affidavit stating that the condominium was his homestead." *Id.* The Fifth Circuit ruled that, despite this sworn affidavit, the debtor was not estopped from claiming the Miron Drive property as his exempt homestead:

> Deason argues that the numerous sworn misrepresentations on Niland's part to the effect that the condominium, and not the property, was his homestead should estop him from invoking his state constitutional and statutory homestead rights. **We think that Texas law is clear that a homestead claimant is not estopped to assert his homestead rights in property on the basis of declarations made to the contrary if, at the time of the declarations, the claimant was in actual use and possession of the property.** As the Texas Supreme Court stated nearly a century ago:
>
> > The Constitution forbidding the fixing on the homestead of liens other than such as are thereby expressly permitted, no estoppel can arise in favor of a lender who has attempted to secure a lien on homestead in actual use and possession of the

3

> family, based on declarations of the husband and wife made orally or in writing contrary to the fact. To hold otherwise would practically abrogate the Constitution.
>
> **If property be homestead in fact and law, lenders must understand that liens can not be fixed upon it, and that declarations of husband and wife to the contrary, however made, must not be relied upon.** They must further understand that no designation of homestead contrary to the fact will enable parties to evade the law and encumber homesteads with liens forbidden by the Constitution.
>
> This rule applies even if, as in the case sub judice, the homestead claimant has executed, acknowledged, and filed in the deed records an instrument designating a contrary homestead.

*Id.* at 808–09 (quoting *Tex. Land & Loan Co. v. Blalock*, 13 S.W.12, 13 (Tex. 1890)) (emphasis added, citations omitted). The purpose of this rule is because, if signing a form were enough to waive a homestead's protections, then "many lenders will simply have the borrower execute a form affidavit stating that the property is not claimed as homestead," a process that would "render[] the constitutional homestead protection nugatory." *Id.* at 809.

VCI distinguishes *Niland* on the basis that "the owner's use of the property was not contested, which is different than the case at bar." Motion at ¶ 10. But there is no actual dispute as to Higgins's use. Higgins declares that he used the Property as his homestead and states facts in support. VCI offers nothing to the contrary. Thus, Higgins's use of the Property as his homestead is as uncontested as Niland's use in *Niland*.

Cases such as *Niland* prompted one federal court to remark that "case law has also convincingly espoused the **near-futility** of a lender relying upon oral or written statements made by owners as to non-homestead usage—more specifically, these cannot change the character of a true homestead, even if the end result seems to reward a dishonest debtor."

4

*In re Brei*, 599 B.R. 880, 901 (N.D. Tex. Bankr. 2019) (emphasis added). The upshot is that "declarations of a husband and wife of non-homestead usage—however made—must not be relied upon" such that "[l]enders must further understand that no designation of homestead contrary to the fact of actual usage as a homestead will enable parties to evade the law and encumber homesteads with liens forbidden by the Constitution." *Id.*

**B.      The Property has been Higgins's homestead for almost two decades.**

As explained above, Higgins has lived at the Property since approximately 2008. Exhibit 1, Higgins Declaration. Higgins has continuously and openly resided in and occupied the Property since that time. *Id.* Higgins continues to occupy, reside in, and claim the homestead exemption on the Property. *Id.* Higgins's personal property is located in the Property, and he returns to it eat, sleep, and otherwise reside. *Id.* This is enough to end the analysis of estoppel: Higgins resided at the Property at the time, therefore no disclaimer can change the fact that it was his homestead.

Moreover, VCI's own files amply show that it had reason to know that the Property was Higgins's homestead. VCI asked Higgins to identify all of his residences for the last ten years. Higgins identified only the Property:

RESIDENCES IN THE LAST 10 YEARS (NUMBER, STREET, CITY, STATE, ZIP; FROM DATE - TO DATE):
PARTY 1:  3001 KLEINMANN, GALVESTON, TX  77551

PARTY 2:

Exhibit 7, Statement of Information. This matched the copy of Higgins's driver license listing only the Property as his address:



Exhibit 8, Driver License. Higgins provided a copy of his homeowners insurance listing

the Property as his address:

| Policy Number | Effective Date/Time | Expiration Date/Time |
|---|---|---|
| TFPH0700122037 | August 9, 2024 12:01 a.m. | August 9, 2025 12:01 a.m. |
| **Named Insured and Address** | **Agent** | |
| DANIEL P HIGGINS<br>3001 KLEINMANN AVE<br>GALVESTON, TX 77551-1559 | JULIA F SHAW<br>JULIA F SHAW - PRODUCER GROUP<br>1802 BROADWAY ST STE 118<br>GALVESTON, TX 77550-4953<br><br>Phone: (409) 765-9515 | |

Exhibit 9, Insurance Policy.

In short, VCI had ample notice that Higgins resided at the Property—and it would

have had no doubt as to the reality of the situation had it visited the Property at all.

6

### C.      To the extent it is good law, *Villarreal* does not affect the status of the Property.

VCI's only substantive argument against *Niland* and similar cases is based on *In re Villarreal*, 402 F. App'x 28 (5th Cir. 2010) (unpublished). But the unpublished *Villarreal* does not stand for any of the propositions for which VCI cites the case.

In *Villarreal*, two debtors owned a restaurant called "Greg's Ballroom." *Id.* at 29. The debtors "surreptitiously used" the facility as their home, "resid[ing] in the restaurant portion of the building behind a black curtain that concealed their bed and bedroom furniture." *Id.* The debtors "kept secret their residence at Greg's Ballroom" such that "there generally was no clothing, personal effects or home furnishings visible on the property." *Id.* at 29–30. Moreover, "[n]o county or real estate records indicated that Debtors were living on the property." *Id.* at 30. The debtors eventually borrowed money secured by Greg's Ballroom and, in the process, signed a document stating, "[n]o part of the property is used for residential purposes and is not, in whole or in part the homestead of Grantors. Grantors acknowledge and represent that the debt evidenced by the Note is used for business purposes for value received by Grantors." *Id.* The Debtors defaulted, the lender foreclosed, and the Debtors sued for wrongful foreclosure. *Id.*

In the ensuing litigation, the bankruptcy court ruled that a debtor is estopped from relying on homestead protections "if his or her acts were not such as to put a reasonable prudent person on notice that the tract constituted a part of the homestead." *Id.* But the bankruptcy court "acknowledged that this analysis was in tension with the general rule that Texas courts have adopted <u>unanimously</u> in this situation where the claimant owns only one

7

piece of property and occupies it at the time of the mortgage that the claimant is <u>not</u> <u>estopped</u> to set up the homestead exemption notwithstanding the declarations in the mortgage contract." *Id.* at 31 (emphasis added). Following an evidentiary hearing and "[b]ased on this interpretation of Texas law, the bankruptcy court concluded that Debtors could be equitably estopped from protecting their property as their homestead because Debtors had concealed their residence from public view." *Id.*

On appeal, the Fifth Circuit refused to adopt the rule announced by the bankruptcy court.[1] *See generally id.* The Fifth Circuit began by citing "[o]ne of the foundational Texas Supreme Court cases in this are" for the proposition that "'no estoppel can arise in favor of a lender who has attempted to secure a lien on homestead in actual use and possession of the family, based on declarations of the husband and wife made orally or in writing contrary to the fact' that the property was the family's homestead." *Id.* at 32 (quoting *Tex. Land*, 13 S.W. at 13. The Fifth Circuit then noted that the Texas Supreme Court "endorsed [this] statement of the law" in 1902 and again in 1941. *Id.* (citing *Parrish v. Hawes*, 66 S.W. 209, 212 (Tex. 1902); *Rutland Sav. Bank v. Isbell*, 154 S.W.2d 442, 445 (Tex. 1941)). More importantly, the *Villarreal* court cited a prior Fifth Circuit opinion stating "'that a homestead claimant is not estoped to assert his homestead rights in property on the basis

---

[1] Reviewing for clear error, the Fifth Circuit affirmed the bankruptcy court's factual findings about the debtors' concealment of their living at Greg's Ballroom. *In re Villarreal*, 402 F. App'x at 32. This was because "Debtors [did] not contest that they concealed their living quarters on the property and that their visible activities on the property were consistent with the types of business activities that occurred at Greg's Ballroom." *Id.* This is not true in the instant case as there is not even an allegation that Higgins concealed his presence at the Property.

8

of declarations made to the contrary if, at the time of the declarations, the claimant was in actual use and possession of the property.'" *Id.* (quoting *In re Niland*, 825 F.2d at 808).

Against this, the Fifth Circuit noted two distinguishable Texas Supreme Court cases that supported the bankruptcy court's ruling. First, *Alexander* stated that "'unless the visible circumstances existing at the time were of such import as to apprise the mort[g]agee of the fact that the property was the home of the mortgagors, the mortgagors could be estopped from asserting the homestead protection for the property." *Id.* at 33 (quoting *Alexander v. Wilson*, 77 S.W.2d 873, 874 (Tex. 1935)). But the Fifth Circuit distinguished *Alexander* because, unlike in the cases stating the general rule, "the homestead claimants were not living on the property claimed as a homestead at the time that they allegedly disclaimed their homestead rights." *Id.* Second, the Fifth Circuit noted that *Lincoln* "stated that liens could be enforced against homesteads where 'the owners, so using it that its status is dubious at the time the mortgage is executed, represent that it is not their homestead.'" *Id.* (quoting *Lincoln v. Bennett*, 156 S.W.2d 504, 505 (Tex. 1941)). But the Fifth Circuit distinguished *Lincoln* because the case "never applied the doctrine it articulated, as the court found that the claimants were openly using the property as their homestead." *Id.*

Based on the "tension extant in Texas law between *Texas Land* and *Alexander*," the Fifth Circuit asked the Texas Supreme Court to determine whether a homeowner could be estopped from claiming the homestead exemption when "claimants' use of the property as a homestead was surreptitious . . . ." *Id.* at 34. There are no further reported decisions in this matter, and it does not appear that the Texas Supreme Court ever answered the certified question.

9

*Villarreal* is inapposite legally, procedurally, and factually. Legally, *Villarreal* is not precedential and does not have a holding. Whereas *Niland* is a published Fifth Circuit opinion with a clear holding in Higgins's favor, *Villarreal* is an unpublished and non-precedential decision that did not hold anything at all—it merely certified a question that the Texas Supreme Court never answered. *See* Fifth Cir. R. 47.5 ("unpublished opinions . . . are no precedent"). While the Fifth Circuit may be free to second-guess *Niland* if it has doubts about Texas law, this Court is not. *Niland* is binding authority, and the Court must follow it.

Procedurally, *Villarreal* followed an eight-hour evidentiary hearing in which the bankruptcy court determined whether a reasonable observer would have known that Greg's Ballroom was a home and not just a restaurant. *See In re Villarreal*, 401 B.R. 823, 829 (S.D. Tex. Bankr. 2009). Thus, the lack of notice was an established fact based on the resolution of competing witness's testimony. The instant case, by contrast, is in a summary judgment posture where the Court cannot resolve competing factual claims.

Factually, *in Villarreal,* no observer would have known that Greg's Ballroom was a residence at all because the debtors kept that fact "secret" from all others. In this case, however, (1) Higgins listed the Property as his address on the loan application and on his driver license and (2) Higgins' presence on and use of the Property would have been easily visible to anyone who visited. Thus, even if *Villarreal* applied, there is no factual dispute that Higgins did not conceal his presence or otherwise fall within the bankruptcy court's exception to *Niland*.

10

**II.      VCI has not complied with Texas's many protections for homesteads.**

Texas has an almost overwhelming public policy of protecting homesteads from foreclosure. These protections render the Lien itself invalid. The Texas constitution only allows for homestead liens under a limited set of circumstances. This includes certain types of cash-out refinancings:

> (e)    A refinance of debt secured by a homestead and described by any subsection under Subsections (a)(1)–(a)(5) that includes the advance of additional funds may not be secured by a valid lien against the homestead unless:
>
>> (1)    the refinance of the debt is an extension of credit described by Subsection (a)(6) of this section; or
>>
>> (2)    the advance of all the additional funds is for reasonable costs necessary to refinance such debt or for a purpose described by Subsection (a)(2), (a)(3), or (a)(5) of this section.

Tex. Const. Art. 16, § 50(e). The Court should note two requirements here: (1) the refinancing of a loan that itself complied with the Texas Constitution and (2) compliance with section 50(a)(6). *See id.* Assuming without conceding that the Loan met the first of these requirements, it did not meet the second.

Section 50(a)(6) includes the following requirements for a valid loan secured by a lien against a homestead:

> (6)    an extension of credit that:
>
> *        *        *
>
>> (C)    is without recourse for personal liability against each owner and the spouse of each owner, unless the owner or spouse obtained the extension of credit by actual fraud;
>>
>> (D)    is secured by a lien that may be foreclosed upon only by a court order;

11

(E)   does not require the owner or the owner's spouse to pay, in addition to any interest or any bona fide discount points used to buy down the interest rate, any fees to any person that are necessary to originate, evaluate, maintain, record, insure, or service the extension of credit that exceed, in the aggregate, two percent of the original principal amount of the extension of credit, excluding fees for:

   (i)    an appraisal performed by a third party appraiser;

   (ii)   a property survey performed by a state registered or licensed surveyor;

   (iii)  a state base premium for a mortgagee policy of title insurance with endorsements established in accordance with state law; or

   (iv)   a title examination report if its cost is less than the state base premium for a mortgagee policy of title insurance without endorsements established in accordance with state law;

(G)   is payable in advance without penalty or other charge;

*     *     *

(J)   may not be accelerated because of a decrease in the market value of the homestead or because of the owner's default under other indebtedness not secured by a prior valid encumbrance against the homestead;

*     *     *

(L)   is scheduled to be repaid:

   (i)    in substantially equal successive periodic installments, not more often than every 14 days and not less often than monthly, beginning no later than two months from the date the extension of credit is made, each of which equals or exceeds the amount of accrued interest as of the date of the scheduled installment; or

   (ii)   if the extension of credit is a home equity line of credit, in periodic payments described under Subsection (t)(8) of this section;

12

Tex. Const. Art. 16, § 50(a)(6).

The Loan violates each of these restrictions:

- **No Personal Recourse Allowed:** The Loan Agreement does not state that it is without recourse beyond foreclosure on the Lien. *See generally* Exhibit 4, Loan Agreement.

- **Only Judicial Foreclosures Allowed:** The Loan purports to allow non-judicial foreclosure. *See generally* Exhibit 3, Deed of Trust.

- **Maximum 2% Fees:** VCI loaned Higgins $330,000. Of this, $9,205 went to notary fees, underwriting fees, document fees, and a lender commission. That means that VCI charged 2.79% of the total loan amount in predatory fees.

- **No Prepayment Penalty Allowed:** The Loan charges a prepayment penalty of $17,146.80, plus unaccrued interest. Exhibit 2, Secured Note at § 5.1.

- **No Acceleration Due to Valuation Changes Allowed:** The Loan allows acceleration after an Event of Default. Exhibit 4, Loan Agreement at § 7.2.1. An Event of Default includes the occurrence of any Materially Adverse Event. *Id.* at § 7.1.13. A Materially Adverse Event includes "any event that in [VCI's] judgment materially adversely affects . . . the operation or value of the Collateral." *Id.*

- **No Balloon Payment Allowed:** The Loan only allows interest-only payments for twelve months followed by a single "Balloon Payment" consisting of the balance of the Loan. Exhibit 2, Secured Note at §§ 2.2–2.3.

Any one of these defects renders the Lien unenforceable. But if that were not enough, VCI failed to comply with *any* of the onerous disclosure requirements under the Texas Constitution. Specifically, VCI had to disclose:

> YOUR EXISTING LOAN THAT YOU DESIRE TO REFINANCE IS A HOME EQUITY LOAN. YOU MAY HAVE THE OPTION TO REFINANCE YOUR HOME EQUITY LOAN AS EITHER A HOME EQUITY LOAN OR AS A NON-HOME EQUITY LOAN, IF OFFERED BY YOUR LENDER. HOME EQUITY LOANS HAVE IMPORTANT CONSUMER PROTECTIONS. A LENDER MAY ONLY FORECLOSE A HOME EQUITY LOAN BASED ON A COURT ORDER. A HOME EQUITY LOAN MUST BE WITHOUT RECOURSE FOR PERSONAL LIABILITY AGAINST YOU AND YOUR SPOUSE. IF YOU HAVE APPLIED TO REFINANCE YOUR EXISTING HOME EQUITY LOAN

13

AS A NON-HOME EQUITY LOAN, YOU WILL LOSE CERTAIN CONSUMER PROTECTIONS. A NON-HOME EQUITY REFINANCED LOAN: (1) WILL PERMIT THE LENDER TO FORECLOSE WITHOUT A COURT ORDER; (2) WILL BE WITH RECOURSE FOR PERSONAL LIABILITY AGAINST YOU AND YOUR SPOUSE; AND (3) MAY ALSO CONTAIN OTHER TERMS OR CONDITIONS THAT MAY NOT BE PERMITTED IN A TRADITIONAL HOME EQUITY LOAN. BEFORE YOU REFINANCE YOUR EXISTING HOME EQUITY LOAN TO MAKE IT A NON-HOME EQUITY LOAN, YOU SHOULD MAKE SURE YOU UNDERSTAND THAT YOU ARE WAIVING IMPORTANT PROTECTIONS THAT HOME EQUITY LOANS PROVIDE UNDER THE LAW AND SHOULD CONSIDER CONSULTING WITH AN ATTORNEY OF YOUR CHOOSING REGARDING THESE PROTECTIONS. YOU MAY WISH TO ASK YOUR LENDER TO REFINANCE YOUR LOAN AS A HOME EQUITY LOAN. HOWEVER, A HOME EQUITY LOAN MAY HAVE A HIGHER INTEREST RATE AND CLOSING COSTS THAN A NON-HOME EQUITY LOAN.

*     *     *

NOTICE CONCERNING EXTENSIONS OF CREDIT DEFINED BY SECTION 50(a)(6), ARTICLE XVI, TEXAS CONSTITUTION: SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION ALLOWS CERTAIN LOANS TO BE SECURED AGAINST THE EQUITY IN YOUR HOME. SUCH LOANS ARE COMMONLY KNOWN AS EQUITY LOANS. IF YOU DO NOT REPAY THE LOAN OR IF YOU FAIL TO MEET THE TERMS OF THE LOAN, THE LENDER MAY FORECLOSE AND SELL YOUR HOME. THE CONSTITUTION PROVIDES THAT: (A) THE LOAN MUST BE VOLUNTARILY CREATED WITH THE CONSENT OF EACH OWNER OF YOUR HOME AND EACH OWNER'S SPOUSE; (B) THE PRINCIPAL LOAN AMOUNT AT THE TIME THE LOAN IS MADE MUST NOT EXCEED AN AMOUNT THAT, WHEN ADDED TO THE PRINCIPAL BALANCES OF ALL OTHER LIENS AGAINST YOUR HOME, IS MORE THAN 80 PERCENT OF THE FAIR MARKET VALUE OF YOUR HOME; (C) THE LOAN MUST BE WITHOUT RECOURSE FOR PERSONAL LIABILITY AGAINST YOU AND YOUR SPOUSE UNLESS YOU OR YOUR SPOUSE OBTAINED THIS EXTENSION OF CREDIT BY ACTUAL FRAUD; (D) THE LIEN SECURING THE LOAN MAY BE FORECLOSED UPON ONLY WITH A COURT ORDER; (E) FEES AND CHARGES TO MAKE THE LOAN MAY NOT EXCEED 2 PERCENT OF THE LOAN AMOUNT, EXCEPT FOR A FEE OR CHARGE FOR AN APPRAISAL PERFORMED BY A THIRD PARTY APPRAISER, A PROPERTY SURVEY PERFORMED

14

BY A STATE REGISTERED OR LICENSED SURVEYOR, A STATE BASE PREMIUM FOR A MORTGAGEE POLICY OF TITLE INSURANCE WITH ENDORSEMENTS, OR A TITLE EXAMINATION REPORT; (F) THE LOAN MAY NOT BE AN OPEN-END ACCOUNT THAT MAY BE DEBITED FROM TIME TO TIME OR UNDER WHICH CREDIT MAY BE EXTENDED FROM TIME TO TIME UNLESS IT IS A HOME EQUITY LINE OF CREDIT; (G) YOU MAY PREPAY THE LOAN WITHOUT PENALTY OR CHARGE; (H) NO ADDITIONAL COLLATERAL MAY BE SECURITY FOR THE LOAN; (I) (repealed); (J) YOU ARE NOT REQUIRED TO REPAY THE LOAN EARLIER THAN AGREED SOLELY BECAUSE THE FAIR MARKET VALUE OF YOUR HOME DECREASES OR BECAUSE YOU DEFAULT ON ANOTHER LOAN THAT IS NOT SECURED BY YOUR HOME; (K) ONLY ONE LOAN DESCRIBED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION MAY BE SECURED WITH YOUR HOME AT ANY GIVEN TIME; (L) THE LOAN MUST BE SCHEDULED TO BE REPAID IN PAYMENTS THAT EQUAL OR EXCEED THE AMOUNT OF ACCRUED INTEREST FOR EACH PAYMENT PERIOD; (M) THE LOAN MAY NOT CLOSE BEFORE 12 DAYS AFTER YOU SUBMIT A LOAN APPLICATION TO THE LENDER OR BEFORE 12 DAYS AFTER YOU RECEIVE THIS NOTICE, WHICHEVER DATE IS LATER; AND MAY NOT WITHOUT YOUR CONSENT CLOSE BEFORE ONE BUSINESS DAY AFTER THE DATE ON WHICH YOU RECEIVE A COPY OF YOUR LOAN APPLICATION IF NOT PREVIOUSLY PROVIDED AND A FINAL ITEMIZED DISCLOSURE OF THE ACTUAL FEES, POINTS, INTEREST, COSTS, AND CHARGES THAT WILL BE CHARGED AT CLOSING; AND IF YOUR HOME WAS SECURITY FOR THE SAME TYPE OF LOAN WITHIN THE PAST YEAR, A NEW LOAN SECURED BY THE SAME PROPERTY MAY NOT CLOSE BEFORE ONE YEAR HAS PASSED FROM THE CLOSING DATE OF THE OTHER LOAN, UNLESS ON OATH YOU REQUEST AN EARLIER CLOSING DUE TO A DECLARED STATE OF EMERGENCY; (N) THE LOAN MAY CLOSE ONLY AT THE OFFICE OF THE LENDER, TITLE COMPANY, OR AN ATTORNEY AT LAW; (O) THE LENDER MAY CHARGE ANY FIXED OR VARIABLE RATE OF INTEREST AUTHORIZED BY STATUTE; (P) ONLY A LAWFULLY AUTHORIZED LENDER MAY MAKE LOANS DESCRIBED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION; (Q) LOANS DESCRIBED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION MUST: (1) NOT REQUIRE YOU TO APPLY THE PROCEEDS TO ANOTHER DEBT EXCEPT A DEBT THAT IS SECURED BY YOUR HOME OR OWED TO ANOTHER LENDER; (2) NOT REQUIRE THAT YOU ASSIGN WAGES AS SECURITY; (3)

15

NOT REQUIRE THAT YOU EXECUTE INSTRUMENTS WHICH HAVE BLANKS FOR SUBSTANTIVE TERMS OF AGREEMENT LEFT TO BE FILLED IN; (4) NOT REQUIRE THAT YOU SIGN A CONFESSION OF JUDGMENT OR POWER OF ATTORNEY TO ANOTHER PERSON TO CONFESS JUDGMENT OR APPEAR IN A LEGAL PROCEEDING ON YOUR BEHALF; (5) PROVIDE THAT YOU RECEIVE A COPY OF YOUR FINAL LOAN APPLICATION AND ALL EXECUTED DOCUMENTS YOU SIGN AT CLOSING; (6) PROVIDE THAT THE SECURITY INSTRUMENTS CONTAIN A DISCLOSURE THAT THIS LOAN IS A LOAN DEFINED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION; (7) PROVIDE THAT WHEN THE LOAN IS PAID IN FULL, THE LENDER WILL SIGN AND GIVE YOU A RELEASE OF LIEN OR AN ASSIGNMENT OF THE LIEN, WHICHEVER IS APPROPRIATE; (8) PROVIDE THAT YOU MAY, WITHIN 3 DAYS AFTER CLOSING, RESCIND THE LOAN WITHOUT PENALTY OR CHARGE; (9) PROVIDE THAT YOU AND THE LENDER ACKNOWLEDGE THE FAIR MARKET VALUE OF YOUR HOME ON THE DATE THE LOAN CLOSES; AND (10) PROVIDE THAT THE LENDER WILL FORFEIT ALL PRINCIPAL AND INTEREST IF THE LENDER FAILS TO COMPLY WITH THE LENDER'S OBLIGATIONS UNLESS THE LENDER CURES THE FAILURE TO COMPLY AS PROVIDED BY SECTION 50(a)(6)(Q)(x), ARTICLE XVI, OF THE TEXAS CONSTITUTION; AND (R) IF THE LOAN IS A HOME EQUITY LINE OF CREDIT: (1) YOU MAY REQUEST ADVANCES, REPAY MONEY, AND REBORROW MONEY UNDER THE LINE OF CREDIT; (2) EACH ADVANCE UNDER THE LINE OF CREDIT MUST BE IN AN AMOUNT OF AT LEAST $4,000; (3) YOU MAY NOT USE A CREDIT CARD, DEBIT CARD, OR SIMILAR DEVICE, OR PREPRINTED CHECK THAT YOU DID NOT SOLICIT, TO OBTAIN ADVANCES UNDER THE LINE OF CREDIT; (4) ANY FEES THE LENDER CHARGES MAY BE CHARGED AND COLLECTED ONLY AT THE TIME THE LINE OF CREDIT IS ESTABLISHED AND THE LENDER MAY NOT CHARGE A FEE IN CONNECTION WITH ANY ADVANCE; (5) THE MAXIMUM PRINCIPAL AMOUNT THAT MAY BE EXTENDED, WHEN ADDED TO ALL OTHER DEBTS SECURED BY YOUR HOME, MAY NOT EXCEED 80 PERCENT OF THE FAIR MARKET VALUE OF YOUR HOME ON THE DATE THE LINE OF CREDIT IS ESTABLISHED; (6) IF THE PRINCIPAL BALANCE UNDER THE LINE OF CREDIT AT ANY TIME EXCEEDS 80 PERCENT OF THE FAIR MARKET VALUE OF YOUR HOME, AS DETERMINED ON THE DATE THE LINE OF CREDIT IS ESTABLISHED, YOU MAY NOT CONTINUE TO REQUEST ADVANCES UNDER THE LINE OF CREDIT UNTIL THE BALANCE IS LESS THAN 80 PERCENT OF THE FAIR

16

MARKET VALUE; AND (7) THE LENDER MAY NOT UNILATERALLY AMEND THE TERMS OF THE LINE OF CREDIT. THIS NOTICE IS ONLY A SUMMARY OF YOUR RIGHTS UNDER THE TEXAS CONSTITUTION. YOUR RIGHTS ARE GOVERNED BY SECTION 50, ARTICLE XVI, OF THE TEXAS CONSTITUTION, AND NOT BY THIS NOTICE.

Tex. Const. Art. 16, § 50(f)–(g) (line breaks omitted). VCI did not provide this information.

Exhibit 1, Higgins Declaration. This, too, is fatal to the Lien.

## Conclusion

VCI has an illegal loan and an unenforceable Lien. The Court should deny VCI's motion for summary judgment and grant Higgins all other relief to which he is entitled.

Respectfully Submitted,

**Meade & Barr LLP**

/s/ *Andrew K. Meade*
Andrew K. Meade
Texas Bar No. 24032854
Leann M. Pinkerton
Texas Bar No. 24038826
Samuel B. Haren
Texas Bar No. 24059899
2118 Smith Street
Houston, Texas 77002
(713) 355-1200
ameade@mnbllp.com
lpinkerton@mnbllp.com
sharen@mnbllp.com

**Attorneys for Plaintiff**

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record by electronic service on June 2, 2026.

/s/ *Samuel B. Haren*
Samuel B. Haren

17